**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **IN RE: LIBERTY REFUND** | ) | |
| **ANTICIPATION LOAN LITIGATION** | ) | **MDL NO: 2334** |
| | ) | |
| | ) | **NO: 1:2012-cv-02949 - JBG** |
| **This Document Relates to:** | ) | |
| | ) | **JUDGE JOAN B. GOTTSCHALL** |
| **ALL CASES** | ) | |

**<u>PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT</u>**

# TABLE OF CONTENTS

I.      PARTIES ......................................................................................................1

      A.      Plaintiffs ..........................................................................................1

            Arkansas .........................................................................................1

            California ........................................................................................1

            Florida ...........................................................................................1

            Illinois ...........................................................................................2

            Maryland ........................................................................................2

            Minnesota .......................................................................................2

            New York ........................................................................................2

            North Carolina ................................................................................3

            Wisconsin .......................................................................................3

      B.      Defendant ........................................................................................3

II.     JURISDICTION AND VENUE ...................................................................4

III.    FACTS ........................................................................................................5

      A.      Defendant Aggressively Markets, Facilitates, and Makes Refund
              Application Loan Products at Exorbitant Triple Digit Interest Rates to the
              Working Poor and Minorities ..........................................................5

      B.      Defendant's Illegal Conduct ............................................................6

      C.      Santa Barbara Bank & Trust Period .................................................8

            1.      Refund Transfers ................................................................9

            2.      RALs and RAL Advances ...................................................11

      D.      Republic Bank Period .....................................................................13

            1.      ERCs and ERDs .................................................................14

            2.      Republic RALs ...................................................................16

IV.    STATE SPECIFIC REFUND ANTICIPATION LOAN LAWS .....................18

A.  Arkansas Refund Anticipation Loan Act ............................................................18

B.  California Refund Anticipation Loan Laws ........................................................20

C.  Illinois Tax Refund Anticipation Loan Disclosure Act ....................................22

D.  Maryland Refund Anticipation Loan and Check Act .......................................24

E.  Minnesota Refund Anticipation Loan Laws .....................................................26

F.  New York Refund Anticipation Loan Laws ......................................................30

G.  North Carolina Refund Anticipation Loan Act .................................................33

H.  Wisconsin Refund Anticipation Loan Act ........................................................35

V.  DISCLOSURE REQUIREMENTS UNDER THE TRUTH IN LENDING ACT ...........36

VI.  FACTUAL ALLEGATIONS AS TO NAMED PLAINTIFFS .................................38

A.  Arkansas....................................................................................................38

Zaneta Houston ..........................................................................................38

Daphne Shorter ..........................................................................................39

B.  California ...................................................................................................40

Charles Madubuike .....................................................................................40

George Washington, Jr. and Margaret Washington ...............................41

C.  Florida .......................................................................................................42

Pamela Patterson .......................................................................................42

D.  Illinois .......................................................................................................42

Timothy Rowden ........................................................................................42

E.  Maryland ...................................................................................................43

Keonna Brown ...........................................................................................43

F.  Minnesota ..................................................................................................45

Heather Reyes ............................................................................................45

G.  New York...................................................................................................46

Ronald Topping ........................................................................................46

Kevin and Yolanda Goodwin.................................................................47

H.    North Carolina .......................................................................................49

Douglas Glover .......................................................................................49

Shamira Jones .........................................................................................50

William Reynolds ...................................................................................51

I.    Wisconsin................................................................................................52

Terrance Patterson ................................................................................52

VII.    CLASS ACTION ALLEGATIONS ...................................................................53

A.    Class Definition .....................................................................................53

National Class (Santa Barbara Bank & Trust Period) ...........................53

Arkansas Class .......................................................................................54

California Class.......................................................................................54

Florida Class ..........................................................................................55

Illinois Class...........................................................................................56

Maryland Class .......................................................................................56

Minnesota Class ......................................................................................57

New York Classes ...................................................................................57

North Carolina Class ..............................................................................58

Wisconsin Class......................................................................................59

Multi-State Class.....................................................................................59

B.    Rule 23(a) Prerequisites ........................................................................61

C.    Rule 23(b) Prerequisites ........................................................................64

VIII.    CAUSES OF ACTION .....................................................................................64

A.    National Class .........................................................................................64

1.  First Cause of Action:  Violation of California Refund Anticipation Loan Laws (Cal. Bus. & Prof. Code, §22250, *et seq.*)..............................64

2.  Second Cause of Action:  Violation of Cal. Bus. & Prof. Code, §17500, *et seq.* – False Advertising ............................................................66

3.  Third Cause of Action:  Violation of Cal. Bus. & Prof. Code, §17200, *et seq.* – Unlawful, Fraudulent, and Unfair Business Acts and Practices .......................................................................................67

4.  Fourth Cause of Action:  Violation of California Usury Laws.................68

B.  Arkansas...............................................................................................................70

1.  First Cause of Action:  Violation of Arkansas Refund Anticipation Loan Act (Ark. Code Ann. §§ 4-116-101, *et seq.*) ....................................70

2.  Second Cause of Action:  Violation of the Arkansas Deceptive Trade Practices Act ...........................................................................771

3.  Third Cause of Action:  Violation of Arkansas Usury Laws....................73

C.  California ..............................................................................................................75

1.  First Cause of Action:  Violation of California Refund Anticipation Loan Laws (Cal. Bus. & Prof. Code, §22250, *et seq.*)..............................75

2.  Second Cause of Action:  Violation of Cal. Bus. & Prof. Code, §17500, *et seq.* – False Advertising ............................................................76

3.  Third Cause of Action:  Violation of Cal. Bus. & Prof. Code, §17200, *et seq.* – Unlawful, Fraudulent, and Unfair Business Acts and Practices .......................................................................................77

4.  Fourth Cause of Action:  Violation of California Usury Laws.................79

D.  Florida..................................................................................................................80

1.  First Cause of Action:  Violations of Consumer Protection Statutes.........80

2.  Second Cause of Action:  Violation of Florida Usury Laws ....................82

E.  Illinois .................................................................................................................84

1.  First Cause of Action:  Violation of Illinois Tax Refund Anticipation Loan Disclosure Act (815 ILCS 177/1, *et seq.*)...................84

2.  Second Cause of Action:  Violation of the Illinois Uniform Deceptive Trade Practices Act (815 ILCS 510/1, *et seq.*) ........................85

3.      Third Cause of Action:  Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1, *et seq.*) ............86

4.      Fourth Cause of Action:  Violation of Illinois Usury Laws......................88

F.      Maryland ........................................................................................................89

1.      First Cause of Action:  Violation of Maryland Refund Anticipation Loan and Check Act (MD. Commercial Law Code § 14-3801, *et seq.*)........................................................................................................89

2.      Second Cause of Action:  Violation of the Maryland Consumer Protection Act (MD. Commercial Law Code § 13-301, *et seq.*) ..............92

3.      Third Cause of Action:  Violation of Maryland Usury Laws ...................94

G.      MINNESOTA ................................................................................................96

1.      First Cause of Action:  Violation of the Minnesota Refund Anticipation Loan Laws (Minn. Stat. § 270c.445, *et seq.*) ......................96

2.      Second Cause of Action:  Violation of Unlawful Trade Practices Act (Minn. Stat. § 325D.09, *et seq.*) ...........................................................98

3.      Third Cause of Action:  Violation of the Uniform Deceptive Trade Practices Act (Minn. Stat. § 325D.43, *et seq.*)...........................................99

4.      Fourth Cause of Action:  Violation of Minnesota Usury Laws ..............100

H.      NEW YORK ................................................................................................101

1.      First Cause of Action:  Violation of N.Y. CLS Tax § 32 (On Behalf of the New York State Class)......................................................101

2.      Second Cause of Action:  Violation of N.Y. CLS Gen Bus § 372 (On Behalf of the New York State Subclass) .........................................102

3.      Third Cause of Action:  Violation of New York City Administrative Code §20-739, *et seq.* (On Behalf of the New York City Subclass). ................................................................................103

4.      Fourth Cause of Action:  Violation of New York's Deceptive Trade Practices Laws (NY CLS Gen Bus § 349, *et seq.*) (On Behalf of New York State Class)..........................................................104

5.      Fifth Cause of Action:  Violation of New York Usury Laws .................105

I.      North Carolina ...............................................................................................106

        1.     First Cause of Action:  Violation of North Carolina Refund Anticipation Loan Act (N.C. Gen. Stat. § 53-245, *et seq*.)......................106

        2.     Second Cause of Action:  Violation of North Carolina's Consumer Protection Laws ...................................................................................107

        3.     Third Cause of Action:  Violation of North Carolina Usury Laws..........109

   J.     Wisconsin......................................................................................................110

        1.     First Cause of Action:  Violation of Wisconsin Refund Anticipation Loan Laws (Wis. Stat. §422.310) ......................................110

        2.     Second Cause of Action:  Violation of the Wisconsin Consumer Act...............................................................................................................111

        3.     Third Cause of Action:  Fraudulent Representations and Deceptive Trade Practices in Violation of §100.18(1), Wis. Stats. .........................111

   K.    Multi-State Class Claims ...............................................................................113

IX.   PRAYER FOR RELIEF ..............................................................................................114

COME NOW Plaintiffs, on behalf of themselves and all others similarly situated, and file Plaintiffs' Consolidated Amended Complaint against Defendant, JTH Holding, Inc., and its affiliate and subsidiary JTH Tax, Inc. d/b/a Liberty Tax Services ("Liberty" or "Defendant"). Plaintiffs seek certification of their claims against Defendant as a class action. Plaintiffs allege, based on personal knowledge as to Defendant's actions and upon information and belief as to all other matters, as follows:

I.    **PARTIES.**

     A.    **PLAINTIFFS.**

     **ARKANSAS**

1.    Plaintiffs Zaneta Houston and Daphne Shorter are citizens of Arkansas, residing in the Eastern District of Arkansas, who had their taxes prepared at an office of Defendant located in the Eastern District of Arkansas. Defendant facilitated and made a Refund Anticipation Loan ("RAL") for each Plaintiff during the Class Period.

     **CALIFORNIA**

2.    Plaintiffs Charles Madubuike, George Washington, Jr., and Margaret Washington are citizens of California, residing in the Central District of California, who had their taxes prepared at offices of Defendant located in the Central District of California. Defendant facilitated and made a Refund Anticipation Loan ("RAL") for each Plaintiff during the Class Period.

     **FLORIDA**

3.    Plaintiff Pamela Patterson is a citizen of Florida, residing in the Southern District of Florida, who had her taxes prepared at an office of Defendant located in the Southern District of Florida. Defendant facilitated and made Refund Anticipation Loans ("RALs") for Plaintiff during the Class Period.

1

**ILLINOIS**

4.      Plaintiff Timothy Rowden is a citizen of Illinois, residing in the Northern District of Illinois, who had his taxes prepared at an office of Defendant located in the Northern District of Illinois.  Defendant facilitated and made a Refund Anticipation Loan ("RAL") for Plaintiff during the Class Period.

**MARYLAND**

5.      Plaintiff Keonna Brown is a citizen of Maryland, residing in the District of Maryland, who had her taxes prepared at an office of Defendant in the District of Maryland. Defendant facilitated and made a Refund Anticipation Loan ("RAL") for Plaintiff during the Class Period.

**MINNESOTA**

6.       Plaintiff Heather Reyes is a citizen of Minnesota, residing in the District of Minnesota, who had her taxes prepared at an office of Defendant located in the District of Minnesota.  Defendant facilitated and made a Refund Anticipation Loan ("RAL") for Plaintiff during the Class Period.

**NEW YORK**

7.      Plaintiff Ronald Topping is a citizen of New York, residing in the Southern District of New York, who had his taxes prepared at an office of Defendant located in the Southern District of New York.  Defendant facilitated and made a Refund Anticipation Loan ("RAL") for Plaintiff during the Class Period.

8.      Plaintiffs Kevin and Yolanda Goodwin are citizens of New York, residing in the Southern District of New York, who had their taxes prepared at an office of Defendant located in

the Southern District of New York. Defendant facilitated and made a Refund Anticipation Loan ("RAL") for Plaintiffs during the Class Period.

**NORTH CAROLINA**

9.     Plaintiffs Shamira Jones and William Reynolds are citizens of North Carolina, residing in the Middle District of North Carolina, who had their taxes prepared at an office of Defendant located in the Middle District of North Carolina. Defendant facilitated and made a Refund Anticipation Loan ("RAL") for each Plaintiff during the Class Period.

10.     Plaintiff Douglas Glover is a citizen of North Carolina, residing in the Middle District of North Carolina, who had his taxes prepared at an office of Defendant located in the Middle District of North Carolina. Defendant facilitated and made a Refund Anticipation Loan ("RAL") for Plaintiff during the Class Period.

**WISCONSIN**

11.     Plaintiff Terrance R. Patterson is a citizen of Wisconsin, residing in the Eastern District of Wisconsin, who had his taxes prepared at an office of Defendant located in the Eastern District of Wisconsin. Defendant facilitated and made a Refund Anticipation Loan ("RAL") for Plaintiff during the Class Period.

**B.     DEFENDANT.**

12.     Defendant JTH Holding, Inc. is a holding company engaged through its subsidiaries as a franchisor and operator of a system of income tax preparation offices located in the United States and Canada, and its principal operations are conducted through its largest subsidiary, Defendant JTH Tax, Inc. d/b/a Liberty Tax Services. Defendant provides tax preparation services through more than 3,800 offices in the United States and Canada, all doing business under the name Liberty Tax Service. Both Defendant entities are Delaware corporations with their principal places of business at 1716 Corporate Landing Parkway,

3

Virginia Beach, Virginia 23454. Defendant JTH Holding, Inc. can be served through its registered agent, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801. Defendant JTH Tax, Inc. can be served through its registered agent, Registered Agent Solutions, Inc., 1679 S. DuPont Highway, Suite 100, Dover, Delaware 19901.

## II.     JURISDICTION AND VENUE.

13.     Each case was originally filed in the proper jurisdiction in their respective state courts.

14.     This Court has subject matter jurisdiction over this class action under the Class Action Fairness Act ("CAFA") because there are more than one hundred Class Members from various states, and the aggregate of proposed classes' claims are more than $5 million. 28 U.S.C. § 1332(d).

15.     This Court, created for multidistrict litigation consolidated pre-trial proceedings, has personal jurisdiction over Defendant because Defendant has sufficient contacts with Illinois, either individually or as a member of a single business enterprise with sufficient contacts in Illinois.

16.     Venue is also proper in this judicial district pursuant to the Order of the Judicial Panel on Multidistrict Litigation which transferred and centralized all related actions in this Court for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407.

17.     Without waiver of their respective rights to request that their claims be transferred back to the proper United States District Courts pursuant to 28 U.S.C. § 1407 for trial, Plaintiffs assert venue is proper in this District for pre-trial multidistrict litigation proceedings under 28 U.S.C. §§ 1391 and 1407, as this action was transferred to this District as part of coordinated pre-trial multidistrict litigation proceedings.

4

## III.   FACTS.

### A.   DEFENDANT AGGRESSIVELY MARKETS, FACILITATES, AND MAKES REFUND ANTICIPATION LOAN PRODUCTS AT EXORBITANT TRIPLE-DIGIT INTEREST RATES TO THE WORKING POOR AND MINORITIES.

18.    Refund Anticipation Loans ("RAL") are short-term loans or extensions of credit that are secured and repaid directly from the consumer's IRS tax refunds.   These loans are marketed, arranged, facilitated, and made by for-profit tax preparers such as Defendant in coordination with banking entities.   RALs include exorbitant finance charges that, when properly calculated in accordance with the Truth in Lending Act ("TILA") and relevant state laws, often exceed 100% APR.

19.    Although a significant profit source to Defendant and other for-profit tax preparers, and a fundamental part of their business models, these aggressively marketed loan products provide little to no value to consumers at predatory interest rates and fees, often in conjunction with exorbitant tax preparation fees for straightforward tax filings.   Tax filers can usually get their federal tax refund in 8 to 15 days by direct deposit, without getting a loan or paying any extra fees to companies like Defendant.   The IRS usually issues refunds by check within 21 to 28 days.

20.    The Department of Treasury has determined that RAL usage is highly concentrated in poor and minority communities.[1]   Across the U.S., just 20% of all communities account for nearly 70% of all RALs.[2]   Defendant and other tax preparers target these high-interest-rate loans to minorities and the working poor, particularly those who receive the Earned Income Tax Credit ("EITC").   The EITC is a refundable credit provided through the tax system

---

[1] "Characteristics of User of Refund Anticipation Loans and Refund Anticipation Checks," U.S. Department of Treasury, 2010, at p. 1.
[2] Id. at p. 17-20.

since 1975, with the intent of boosting low-wage workers out of poverty while also encouraging work. It is the largest federal anti-poverty program with over $50 billion provided to 21.7 million families in 2010 alone.[3] It is axiomatic that EITC money is meant to reach the individuals and families who qualify.

21. The median adjusted gross income among RAL consumers is $19,768.[4] In 2008, although only 17% of tax filers received the EITC, EITC claimants comprised 64% of RAL consumers. Viewed another way, 33% of EITC claimants purchased a RAL, compared to only 3% of non-EITC claimants.[5]

22. Defendant aggressively markets RALs to its customers for whom it provides tax preparation services, as these predatory loan products are a critical part of its business model. In 2009, about 74% of Defendant's customers obtained a RAL.[6] Within the general population, by comparison, less than 15% of tax filers opted for these products. This is not mere coincidence. Defendant aggressively markets RALs to the working poor so that a significant portion of the EITC goes to Defendant rather than the intended beneficiaries. Fees from these predatory loan products accounted for 28% of Defendant's revenue in 2009, according to Defendant's Consolidated Financial Statement for 2010.

### B. DEFENDANT'S ILLEGAL CONDUCT.

23. The term "Refund Anticipation Loan" must be construed in the larger context of a federal and state regulatory framework directed at ending predatory loan practices by tax preparers. In addition to the twenty state RAL laws across the country[7], the federal government

---

[3] Internal Revenue Service ("IRS"), *2010 Tax Statistics*
[4] "Characteristics of User of Refund Anticipation Loans and Refund Anticipation Checks," U.S. Department of Treasury, 2010, at p.16.
[5] *Id*. at 13.
[6] National Consumer Law Center/Consumer Federation of America's "2011 Refund Anticipation Loan Report" at p. 22.
[7] National Consumer Law Center/Consumer Federation of America's "2011 Refund Anticipation Loan Report" at p.

also has taken an active role in rooting out predatory practices in the tax preparation context. As discussed below, the Office of the Comptroller of the Currency ("OCC") and the Office of Thrift Supervision ("OTS") have forced Defendant's banking partners out of the RAL market, thus requiring Defendant to find new banking partners for its RAL products.

24.     Specifically, the FDIC has taken a firm position that loan products like Defendant's are RALs; that is, predatory tax loans triggering consumer protections. For example, in May 2011, the FDIC issued a cease-and-desist letter against Republic Bank, lambasting the lender's arrangements with various partners who, like Defendant, are tax preparation electronic refund originators (EROs). *See* U.S. F.D.I.C., Amended Notice of Charges for an Order to Cease and Desist, *In the Matter of Republic Bank & Trust Company, Louisville, Kentucky* (May 3, 2011)].

25.     For example, Defendant partnered with Santa Barbara Bank & Trust ("SBBT") in order to market, facilitate, and make RAL products under the name of Refund Transfers, RALs, and RAL Advances. However, prior to the 2009 tax season, the OCC "withheld approval for the bank [SBBT] to make RALs given their level of troubled assets." Dept. of the Treasury, *Characteristics of Users of Refund Anticipation Loans and Refund Anticipation Checks* 7 (2010). With SBBT out of the RAL business, Defendant partnered with Republic Bank and Trust ("Republic Bank") to assist with RAL Products.

26.     The relationship between Defendant and the banks used to facilitate and make each RAL product for Plaintiffs and Class Members during the Class Period was merely a scheme, device, and contrivance created by Defendant in an attempt to circumvent applicable usury laws.

---

29.

7

### C.    SANTA BARBARA BANK & TRUST PERIOD.

27.    Throughout the Class Period, Defendant has facilitated and made RALs through an arrangement with Santa Barbara Bank & Trust Co. ("SBBT"), a division of the Pacific Capitol Bank, N.A.  Defendant marketed, facilitated, and made various types of loan products through SBBT, including products referred to as:  (a) "Federal Refund Transfers," (b) "State Refund Transfers," (c) "Refund Anticipation Loans," and (d) "RAL Advances" (collectively "SBBT RAL Products").  All of these SBBT RAL Products are RALs for purposes of this Complaint and the relevant state Refund Anticipation Loan laws.

28.    Defendant has a high percentage of low-income customers and customers who receive the EITC.  In addition, as set forth above, Defendant has a high percentage of customers who purchase the SBBT RAL Products.  Many of Defendant's customers cannot afford to pay Defendant's fees for tax preparation services out of pocket.  A key component to Defendant's marketing campaign is that there is no up-front cost to the customer.  Although, generally, Defendant requires fees for tax preparation services to be paid at the time the customer's taxes are prepared, Defendant defers payment of those fees until the tax refund has been received from the IRS if the customer purchases a SBBT RAL Product.  In the case of a SBBT Refund Anticipation Loan or RAL Advance, tax preparation fees are deducted from the loan funds when the loan is provided.  In the case of a Refund Transfer, the tax preparation funds are deducted from the refund amount.  On information and belief, this component of these loan products expands the market for Defendant's tax preparation services, increases the amount that can be charged for tax preparation services, and increases the franchise fees and royalties collected by Defendant.

1.     **Refund Transfers.**

29.     During the Class Period, Defendant, through its offices, facilitated and made Refund Transfers to its tax preparation customers (including Plaintiffs and all Class Members), following common practices and procedures and using uniform forms, applications, and disclosures as described below.  Each RAL product entails the establishment of a "Temporary Deposit Account" in the consumer's name at SBBT.  The Temporary Deposit Account is a non-interest-bearing "account" established for the sole purpose of receiving the consumer's federal and/or tax refund and disbursing those funds in a limited manner established by the loan documentation.

30.     Defendant chooses the bank that will administer the Temporary Deposit Account. The consumers have no choice as to which bank manages their Temporary Deposit Account.

31.     The consumer cannot make any other deposits to this dummy account or direct any other withdrawals.  When the consumer's tax return is sent to the IRS, the dummy account is identified as the destination for any refund to which the consumer may be entitled.  Once the IRS is notified, the refund destination cannot be changed.  If for any reason the consumer's refund is not deposited in the dummy account or if the refund is less than anticipated based upon Defendant's tax preparation services, the consumer is still held liable for the full amount of the loan.

32.     When the consumer's tax refund is deposited into the account, SBBT (as authorized to act on the consumer's behalf, pursuant to the terms of the loan documentation) first disburses the funds to pay, among other things:

(a)     The consumer's debt to Defendant for the tax preparation fees;

(b)     "Account Handling Fees" (*i.e.*, finance charges) to Defendant and SBBT, including $30.95 minimum payment, and in some instances, an additional

9

$10.00 fee if both a federal and a state tax refund is directed to the
Temporary Deposit Account;  and

(c)      Any and all other debts to SBBT or other RAL lenders related to loan
products sold to the consumer in previous tax years.

Any remaining funds are disbursed to the consumer either by check or by direct deposit to the
consumer's personal bank account.

33.      The Refund Transfer loan products are RALs as defined by each of the state RAL
acts and consumer protection statutes. Each product encompasses an extension of credit by
Defendant of the fee for tax preparation services, which otherwise would be due at the time the
services were provided.  With a Refund Transfer, Defendant grants deferral of payment for
approximately 12 days (the time period needed to receive the tax refund).  Defendant provides no
disclosure of the **triple-digit** interest rate or finance charge for the Refund Transfer loan products
in violation of the relevant state RAL laws, consumer protection statutes, and TILA.  *See, e.g*.,
U.S. F.D.I.C. Amended Notice of Charges for an Order to Cease and Desist, *In the Matter of*
*Republic Bank & Trust Company, Louisville Kentucky*, dated May 3, 2011 at ¶ 34 ("By failing to
disclose to taxpayers in the Assisted Refund transactions that the TRAF [Tax Refund
Administration Fees] are finance charges for deferral of the tax preparation fees owed, the EROs
[Defendant and other electronic refund operators] have violated the written disclosure
requirements under TILA on a nationwide basis in each Assisted Refund transaction").

34.      Defendant shoulders the risk of loss that exists if the tax refund funds are
insufficient to cover the tax preparation costs or if no tax refund is issued at all.

35.      Moreover, Defendant receives a portion of the loan fees/finance charge in
violation of the Arkansas, Maryland, New York, and Wisconsin RAL laws and consumer

protection statutes. SBBT's Refund Processing and Refund Anticipation Loan Application and Agreement acknowledges that a portion of the fees from its loan products (Refund Transfers, RALs, and RAL Advances) are shared with tax preparers such as Defendant, and Defendant's consolidated financial statements (prepared by KPMG LLP and available at Defendant's website) confirm receipt of such fees. Indeed, over a quarter of Defendant's revenue in 2009 and 2010 was derived from these loan products.

### 2. RALs and RAL Advances.

36. During the Class Period, Defendant marketed, facilitated, and made SBBT RALs and RAL Advances to its tax preparation customers, following common practices and procedures and using uniform forms, applications and disclosures as described below. As with a Refund Transfer, as described above, a SBBT entails the establishment of a dummy "Temporary Deposit Account" in the consumer's name at SBBT.

37. The SBBT RALs and RAL Advances includes two components: (a) a loan and extension of credit of the fees for Defendant's tax preparation services, just as with a Refund Transfer, and (b) a loan of additional funds also secured by the consumer's tax refund. The consumer receives the RAL loan funds one or two days after their taxes are prepared and filed. With an RAL Advance, the consumer receives the loan funds the same day.

38. When the consumer's tax refund is deposited into the account, SBBT (as authorized to act on the consumer's behalf, pursuant to the terms of the loan documentation) first disburses the funds to pay, among other things:

    (a)    The consumer's debt to Defendant for the tax preparation fees;

    (b)    Any and all other debts for the SBBT RAL and/or RAL Advance;

    (c)    "Account Handling Fees" (*i.e.*, finance charges) to Defendant and SBBT, including $30.95 minimum payment, and, in some instances, an additional

11

$10.00 fee if both a federal and state tax refund is directed to the Temporary Deposit Account, as well as additional fees related to an RAL Advance; and

(d)     Any and all other debts to SBBT or other RAL lenders related to loan products sold to the consumer in previous tax years.

Any remaining funds are disbursed to the consumer either by check or by direct deposit to the consumer's personal bank account.

39.     The SBBT RALs and RAL Advances are RALs, as defined by each of the state RAL acts and consumer protection statutes. Defendant misrepresents the finance charge by not including the Account Handling Fee (and where relevant, the additional fee for state tax refunds) in the calculation of the finance charge, in violation of the relevant state RAL laws, consumer protection statutes and TILA. *See, e.g.*, U.S. F.D.I.C. Amended Notice of Charges for an Order to Cease and Desist, *In the Matter of Republic Bank & Trust Company, Louisville Kentucky*, dated May 3, 2011 at ¶ 34 ("By failing to disclose to taxpayers in the Assisted Refund transactions that the TRAF [Tax Refund Administration Fees] are finance charges for deferral of the tax preparation fees owed, the EROs [Defendant and other electronic refund operators] have violated the written disclosure requirements under TILA on a nationwide basis in each Assisted Refund transaction").

40.     Moreover, Defendant receives a portion of the loan fees/finance charge in violation of the Arkansas, Maryland, New York, and Wisconsin RAL laws and consumer protection statutes.   SBBT's Refund Processing and Refund Anticipation Loan (RAL) Application and Agreement acknowledges that a portion of the fees from its RAL Products are shared with tax preparers such as Defendant, and Defendant's consolidated financial statements

12

(prepared by KPMG LLP and available at Defendant's website) confirm receipt of such fees. Indeed, over a quarter of Defendant's revenue in 2009 and 2010 was derived from these loan products.

### D. REPUBLIC BANK PERIOD.

41. Throughout the Class Period, Defendant has facilitated and made RALs through an arrangement with Republic Bank and Trust Co. ("Republic Bank"), a state-chartered bank based in Kentucky. Defendant marketed, facilitated, and made two types of loan products: (a) Electronic Refund Check ("ERC") or Electronic Refund Deposit ("ERD"), and (b) Refund Anticipation Loan ("Republic RAL"). All of these products are RALs for purposes of this Complaint and the relevant state Refund Anticipation Loan laws.

42. Defendant has a high percentage of low-income customers and customers who receive the EITC. In addition, as set forth above, Defendant has a high percentage of customers who purchase the Republic RAL, ERC, and ERD loan products. Many of Defendant's customers cannot afford to pay Defendant's fees for tax preparation services out of pocket. A key component to Defendant's marketing campaign is that there is no up-front cost to the customer. Although, generally, Defendant requires fees for tax preparation services to be paid at the time the customer's taxes are prepared, Defendant defers payment of those fees until the tax refund has been received from the IRS if the customer purchases Republic RAL, an ERC, or an ERD. In the case of a Republic RAL, tax preparation fees are deducted from the loan funds when the loan is provided. In the case of an ERC or ERD, the tax preparation funds are deducted from the refund amount. On information and belief, this component of these loan products expands the market for Defendant's tax preparation services, increases the amount that can be charged for tax preparation services, and increases the franchise fees and royalties collected by Defendant.

13

### 1. **ERCs/ERDs.**

43.     During the Class period, Defendant, through its offices, facilitated and made ERCs/ERDs to its tax preparation customers (including Plaintiffs and all Class Members), following common practices and procedures and using uniform forms, applications, and disclosures as described below.  Each loan product entails the establishment of a "Deposit Account" in the consumer's name at Republic Bank.  The Deposit Account is a non-interest-bearing "account" established for the sole purpose of receiving the consumer's federal and/or state tax refund and disbursing those funds in a limited manner established by the loan documentation.

44.     Defendant chooses the bank that will administer the Deposit Account.  The consumers have no choice as to which bank manages their Deposit Account.

45.     The consumer cannot make any other deposits to this dummy account or direct any other withdrawals.  When the consumer's tax return is sent to the IRS, the dummy account is identified as the destination for any refund to which the consumer may be entitled.  Once the IRS is notified, the refund destination cannot be changed.  If for any reason the consumer's refund is not deposited in the dummy account or if the refund is less than anticipated based upon Defendant's tax preparation services, the consumer is still held liable for the full amount of the tax preparation fees charged by Defendant.

46.     When the consumer's tax refund is deposited into the account, Republic Bank (as authorized to act on the consumer's behalf, pursuant to the terms of the loan documentation) first disburses the funds to pay, among other things:

(a)     The consumer's debt to Defendant for the tax preparation fees;

(b)     "Bank Fees" (*i.e.*, finance charges) to Defendant and Republic Bank,

including $29.95 minimum payment of a "Tax Refund Administration

14

Fee," and, for the 2009 tax year, an additional $10.00 "Administration Fee" if a state tax refund is directed to the Deposit Account; and

(c)     Any and all other debts to Republic Bank including, for example, debts related to loan products sold to the consumer in previous tax years.

Any remaining funds are disbursed to the consumer either by check (if the consumer purchased an ERC) or by direct deposit to the consumer's personal bank account (if the consumer purchased an ERD).

47.     The ERC/ERD loan products are RALs as defined by each of the state RAL acts and consumer protection statutes.  Each product encompasses an extension of credit by Defendant of the fee for tax preparation services, which otherwise would be due at the time the services were provided.  With an ERC/ERD, Defendant grants deferral of payment for approximately 12 days (the time period needed to receive the tax refund).  Defendant provides no disclosure of the triple-digit interest rate or finance charge for the ERC/ERD loan products in violation of the relevant state RAL laws, consumer protection statutes, and TILA.  *See, e.g*., U.S. F.D.I.C. Amended Notice of Charges for an Order to Cease and Desist, *In the Matter of Republic Bank & Trust Company, Louisville Kentucky*, dated May 3, 2011 at ¶ 34 ("By failing to disclose to taxpayers in the Assisted Refund transactions that the TRAF [Tax Refund Administration Fees] are finance charges for deferral of the tax preparation fees owed, the EROs [Defendant and other electronic refund operators] have violated the written disclosure requirements under TILA on a nationwide basis in each Assisted Refund transaction").

48.     Defendant shoulders the risk of loss that exists if the tax refund funds are insufficient to cover the tax preparation costs or if no tax refund is issued at all.  The bank merely performs an administrative function.

49.     Moreover, Defendant receives a portion of the loan fees/finance charge in violation of the Arkansas, Maryland, New York, and Wisconsin RAL laws and consumer protection statutes.  Republic's Bank Product and Application Agreement acknowledges that a portion of the fees from its loan products (ERC/ERD and Republic RAL) are shared with tax preparers such as Defendant, and Defendant's consolidated financial statements (prepared by KPMG LLP and available at Defendant's website) confirm receipt of such fees.  Indeed, over a quarter of Defendant's revenue in 2009 and 2010 was derived from these loan products.

**2.     Republic RALs.**

50.     During the Class period, Defendant marketed, facilitated, and made Republic RALs to its tax preparation customers, following common practices and procedures and using uniform forms, applications and disclosures as described below.  As with an ERC/ERD, as described above, a Republic RAL entails the establishment of a dummy "Deposit Account" in the consumer's name at Republic Bank.

51.     The Republic RAL includes two components:  (a) a loan and extension of credit of the fees for Defendant's tax preparation services, just as with an ERC or ERD, and (b) a loan of additional funds also secured by the consumer's tax refund. The consumer receives the RAL loan funds one or two days after their taxes are prepared and filed.  For the 2009 tax year, the loans were between $300 and $7,500.  For the 2010 tax year, the loans were for a set amount of $1,561.22.

52.     When the consumer's tax refund is deposited into the account, Republic Bank (as authorized to act on the consumer's behalf, pursuant to the terms of the loan documentation) first disburses the funds to pay, among other things:

      (a)     The consumer's debt to Defendant for the tax preparation fees;

      (b)     The consumer's debt for the advanced funds;

16

(c)    "Bank Fees" (*i.e.*, finance charges) to Defendant and Republic Bank, including: (i) $29.95 minimum payment of the "Tax Refund Administration Fee," (ii) what Republic terms the "finance charge" (0.78% of the loan amount in 2009 and set amount of $16.22 in 2010), (iii) in 2010 only, a $45.00 "Credit Investigation Fee;" and (iv) in some instances a $10.00 "Administrative Fee" for state tax refunds; and

(d)    Any and all other debts to Republic Bank including, for example, debts related to loan products sold to the consumer in previous tax years.

Any remaining funds are disbursed to the consumer either by check (if the consumer purchased an ERC) or by direct deposit to the consumer's personal bank account (if the consumer purchased an ERD).

53.    The Republic RALs are RALs, as defined by each of the state RAL acts and consumer protection statutes. Defendant misrepresents the finance charge by not including the Tax Refund Administration Fee in the calculation of the finance charge, in violation of the relevant state RAL laws, consumer protection statutes and TILA. *See, e.g.*, U.S. F.D.I.C. Amended Notice of Charges for an Order to Cease and Desist, *In the Matter of Republic Bank & Trust Company, Louisville Kentucky*, dated May 3, 2011 at ¶ 34 ("By failing to disclose to taxpayers in the Assisted Refund transactions that the TRAF [Tax Refund Administration Fees] are finance charges for deferral of the tax preparation fees owed, the EROs [Defendant and other electronic refund operators] have violated the written disclosure requirements under TILA on a nationwide basis in each Assisted Refund transaction").

54.    Moreover, Defendant receives a portion of the loan fees and finance charge in violation of the Arkansas, Maryland, New York, and Wisconsin RAL laws and consumer

17

protection statutes. Republic's Bank Product and Application Agreement acknowledges that a portion of the fees from its loan products (ERC/ERD and Republic RAL) are shared with tax preparers such as Defendant, and Defendant's consolidated financial statements (prepared by KPMG LLP and available at Defendant's website) confirm receipt of such fees. Indeed, over a quarter of Defendant's revenue in 2009 and 2010 was derived from these loan products.

## IV.   STATE SPECIFIC REFUND ANTICIPATION LOAN LAWS.

### A.   ARKANSAS REFUND ANTICIPATION LOAN ACT.

55.   Many states, including the state of Arkansas, have passed laws specifically targeting RALs in an effort to eradicate long-standing, deceptive and unconscionable practices in the for-profit tax preparer industry. The Refund Anticipation Loan Act, Ark. Code Ann. §4-116-101 *et seq*. ("ARALA") was enacted in 2009 with the expressed intent of the Arkansas General Assembly to "protect consumers who enter into a refund anticipation loan and a refund anticipation check transaction." Ark. Code Ann. §4-116-101(b). ARALA focuses on the practices of tax preparers like Defendant who market, facilitate, and make RALs.

56.   Under ARALA, a RAL includes any "loan arranged to be paid directly or indirectly from the proceeds of the consumer's income tax refund or tax credits." Ark. Code Ann. §4-116-102(4)(A). A RAL "includes any sale, assignment, or purchase of a consumer's tax refund at a discount or fee, whether or not the consumer is required to repay the buyer or assignee if the Internal Revenue Service denies or reduces the consumer's tax refund." Ark. Code Ann. §4-116-102(4)(B).

57.   ARALA defines a "facilitator" as a person, other than a bank, savings and loan or credit union, who, among other things, "processes, receives or accepts an application or agreement" for a RAL, "services or collects upon" a RAL, or "facilitates the making of" a RAL. Ark. Code Ann. §4-116-102(6). Defendant is a facilitator as defined by ARALA.

18

58.    ARALA prohibits "facilitators" such as Defendant from engaging in certain practices and requires the facilitators to disclose, in writing and orally, certain critical information about RALs including the finance charges and lower-cost alternatives.    Most relevant to this class action are ARALA's disclosure requirements and prohibition on the facilitator/tax preparer charging or imposing any fees for RALs other than fees charged by the creditor or bank.

59.    ARALA requires all facilitators to disclose conspicuously on a "colored paper form separate from the application" and in large type (ranging from "14-point to 18-point") specific information about the interest rate, fees and timing of the RAL, as well as alternative means to receive refunds from the IRS in a timely manner without exorbitant add-on charges. Ark. Code Ann. §4-116-105 (emphasis added).    These written disclosures are required to be separate, conspicuous, in large type and on colored paper so that they are not lost amidst multiple pages of fine print.  *Id.*  Facilitators are also required to make similar disclosures orally to each consumer and to post prominently these disclosures at each office on a document measuring no less than sixteen by twenty inches in 28-point type.  Ark. Code Ann. §4-116-104 & 106.

60.    Perhaps the most critical disclosure required by ARALA is the interest rate for any loan product.  ARALA requires all facilitators to disclose on colored paper in 14-point type face the interest rate as "calculated utilizing the guidelines established under the federal Truth in Lending Act, 15 U.S.C. §1601 *et seq.*, as it existed on January 1, 2009."  Ark. Code Ann. §4-116-105(a)(4).  This same interest rate also must be accurately disclosed in the prominently displayed office posting and in individualized oral disclosures to the consumer.  Ark. Code Ann. §4-116-104(b) & 106(a); *see also* Ark. Code Ann. §4-116-107(5) ("A facilitator shall not

19

misrepresent a material fact or condition of a refund anticipation loan or refund anticipation check").

61.    In addition, ARALA prohibits the tax preparer, or any other entity other than the third-party bank or creditor, from receiving any fee related to an RAL, ERC, or ERD.  Ark. Code Ann. §4-116-107(2)(A) ("A facilitator shall not charge or impose any fee or charge or require consideration in the making or facilitating of a refund anticipation loan or refund anticipation check apart from the fee charged by the creditor or bank that provides the loan or check."). Instead, a tax preparer can only receive the same fees that would be charged to a consumer who did not receive a RAL or other tax-related financial products.   Ark. Code Ann. §4-116-107(2)(B).

62.    A facilitator who violates any provision of ARALA also violates the Arkansas Deceptive Trade Practices Act, Ark. Code Ann. §4-88-101, *et seq.* ("ADTPA"), and a consumer has all rights and remedies provided under the ADTPA for each ARALA violation.  Ark. Code Ann. §4-116-108(a).  In addition, a facilitator who willfully violates any provision of ARALA is liable directly to the consumer for (a) actual and compensatory damages, (b) statutory damages of $1,000, and (c) reasonable attorney's fees and costs of prosecution.  Ark. Code Ann. §4-116-108(b).

**B.    CALIFORNIA REFUND ANTICIPATION LOAN LAWS.**

63.    The California statutes governing RALs and tax preparers, Cal. Bus. & Prof. Code § 22250, *et seq.* ("California RAL laws"), focus on the practices of tax preparers like Defendant who market, facilitate and make RALs.

64.    Under California RAL laws, a RAL includes any "loan, whether provided by the tax preparer or another entity, such as a financial institution, in anticipation of, and whose

20

payment is secured by, a client's federal or state income tax refund or by both."  Cal. Bus. &
Prof. Code § 22251(f).

65.     California RAL laws define a "tax preparer" as a person or business entity, who,
among other things, "assists with or prepares tax returns for another person or who assumes final
responsibility for completed work on a return."  Cal. Bus. & Prof. Code § 22251(a)(1).

66.     Defendant is a "tax preparer," as defined by California RAL laws.

67.     California RAL laws prohibit tax preparers such as Defendant from engaging in
certain practices with regard to marketing, facilitating and making RALs, requiring written
disclosures of certain critical information about RALs, such as the finance charges and lower-
cost alternatives.  Specifically, prior to the client's completion of the RAL application, California
RAL laws require all tax preparers/facilitators to provide the client with "a clear, written
disclosure" conspicuously detailing information about the interest rate, fees and timing of the
RAL, as well as alternative means to receive refunds from the IRS in a timely manner without
exorbitant add-on charges.  Cal. Bus. & Prof. Code § 22253.1(d)(1).

68.     Additionally, prior to the client's consummation of the RAL transaction, a tax
preparer/facilitator must provide a disclosure in either written or electronic form conspicuously
detailing all fees associated with the loan, more cost-effective means of receiving refunds from
the IRS, and the loan's interest rate as calculated by guidelines established in the Truth in
Lending Act (15 U.S.C. § 1601, *et seq*.).  Cal. Bus. & Prof. Code § 22253.1(d)(2).

69.     Tax preparers are also required to post these disclosures prominently at each
office on a document measuring no less than sixteen by twenty inches in 28-point type.  Cal.
Bus. & Prof. Code §§ 22253.1(b)-(c).  These postings and the multiple required written
disclosures presented to clients are purposely meant to be separate, conspicuous, and in large

21

type so that they are not lost amidst multiple pages of fine print. Cal. Bus. & Prof. Code §§ 22253.1(b)-(d).

70.     Perhaps the most critical disclosure required by California RAL laws is the interest rate for any loan product. California RAL laws require all tax preparers to disclose the interest rate for RALs "using the guidelines established under the federal Truth in Lending Act *(15 U.S.C. Sec. 1601* and following)" Cal. Bus. & Prof. Code § 22253.1(d)(2). This same interest rate must also be accurately disclosed in the prominently displayed office posting. Cal. Bus. & Prof. Code § 22251(g); Cal. Bus. & Prof. Code §§ 22253.1(b)-(c); *see also* Cal. Bus. & Prof. Code § 22253.1(f)(2) (A tax preparer who facilitates or offers to facilitate a refund anticipation loan is prohibited from "[m]isrepresenting a material factor or condition of a refund anticipation loan.").

71.     A tax preparer who willfully violates any provision of California RAL laws is liable directly to the consumer for (a) statutory damages of $1,000, and (b) reasonable attorney's fees and costs of prosecution. Cal. Bus. & Prof. Code § 22257.[8]

### C.     ILLINOIS TAX REFUND ANTICIPATION LOAN DISCLOSURE ACT.

72.     The State of Illinois has passed laws specifically targeting RALs. The Tax Refund Anticipation Loan Disclosure Act, 815 ILCS 177/1, *et seq.* ("TRALDA") focuses on the practices of tax preparers like Defendant who market, facilitate, and make RALs.

73.     Under TRALDA, a RAL includes any "loan arranged to be repaid directly from the proceeds of a borrower's income tax refunds." 815 ILCS 177/5.

---

[8] The "Santa Barbara Bank & Trust" (SBBT) Refund Processing and Refund Anticpation Loan (RAL) Application and Agreement" provides in part:

> The enforcement and interpretation of this Application and Agreement and the transactions contemplated therein (including, without limitation, the applicable interest rate) shall be governed by the laws of the State of California applicable to contracts executed and to be performed in the State of California by residents of the State of California, without regard to the conflicts of law, and, to the extent applicable, the laws of the United States of America.

Application of California law to the claims of the National Class is therefore appropriate.

74. TRALDA defines a "facilitator" as a person, other than a bank, savings and loan or credit union, who, among other things, "processes, receives or accepts for delivery an application or agreement" for a RAL, "issues a check in payment of" a RAL, or "in any other manner acts to allow the making of" a RAL. *Id*. Defendant is a facilitator as defined by TRALDA.

75. TRALDA prohibits "facilitators" such as Defendant from engaging in certain practices and requires the facilitators to disclose, in writing, certain critical information about RALs, including the finance charges associated with the loans and lower-cost alternatives. Most relevant to this class action are TRALDA's disclosure requirements.

76. TRALDA requires all facilitators to disclose conspicuously, on a "document that is **separate** from the application," specific information about the interest rate, fees and timing of the RAL, as well as alternative means to receive refunds from the IRS in a timely manner without exorbitant add-on charges. 815 ILCS 177/10 (emphasis added). These written disclosures are required to be separate and conspicuous, so that they are not lost amidst multiple pages of fine print. *Id.*

77. Perhaps the most critical disclosure required by TRALDA is the interest rate for any loan product. TRALDA requires all facilitators to disclose, on a document separate from the loan materials, "the Annual Percentage Rate utilizing a 10-day time period." 815 ILCS 177/10(1.5).

78. A facilitator who violates any provision of TRALDA is liable directly to the aggrieved borrower for: (a) an amount equal to three times the RAL fee, and (b) reasonable attorney's fees and costs of prosecution. 815 ILCS 177/15.

23

### D.    MARYLAND REFUND ANTICIPATION LOAN AND CHECK ACT.

79.    Maryland's RAL law, MD. CODE ANN. COM. LAW §14-3801, *et seq.* (West 2011) focuses on the practices of tax preparers like Defendant who market, facilitate, and make RALs.

*80.*    Under Maryland's RAL law, a RAL includes "a loan arranged to be paid directly or indirectly from the proceeds of a consumer's tax refund." MD. CODE ANN. COM. LAW §14-3801(f)(1) (West 2011). A RAL "includes a sale, assignment, or purchase of a consumer's tax refund at a discount or for a fee, whether or not the consumer is required to repay the buyer or assignee if the Internal Revenue Service denies or reduces the consumer's tax refund. MD. CODE ANN. COM. LAW § 14-3801(f)(2) (West 2011).

81.    Maryland's RAL law defines a "facilitator" as a person, other than a bank, savings and loan association or credit union, who, among other things, "processes, receives, or accepts an application or agreement" for a RAL, "services or collects on" a RAL, or "facilitates the making of" a RAL. MD. CODE ANN. COM. LAW § 14-3801(d) (West 2011). Defendant is a facilitator as defined by Maryland's RAL law.

82.    Maryland's RAL law prohibits "facilitators" such as Defendant from engaging in certain practices and requires the facilitators to disclose, in writing and orally, certain critical information about RALs, the finance charges and lower-cost alternatives. Most relevant to this class action are Maryland's RAL law's disclosure requirements and prohibition on the facilitator/tax preparer charging or imposing any fees for RALs other than fees charged by the creditor or bank.

83.    Maryland's RAL law requires all facilitators to disclose conspicuously on a "form that is separate from the application" and in large type (ranging from "14-point to 18-point") specific information about the interest rate, fees and timing of the RAL, as well as alternative means to receive refunds from the IRS in a timely manner without exorbitant add-on charges.

24

*See* Md. Code Ann. Com. Law § 14-3804 (West 2011). These written disclosures are required to be separate, conspicuous, and in large type so that they are not lost amidst multiple pages of fine print. *See id.* Facilitators are also required to make similar disclosures orally to each consumer and to post prominently these disclosures at each office on a document measuring no less than sixteen by twenty inches in 14-point type. Md. Code Ann. Com. Law §§ 14-3805, 14-3803 (West 2011).

84. Maryland's RAL law requires all facilitators to disclose on a separate sheet of paper in 14-point type face the annual percentage rate (APR) "using the guidelines established under the federal Truth in Lending Act." Md. Code Ann. Com. Law § 14-3804(a), (b) (West 2011). This same interest rate also must be accurately disclosed in a prominently displayed office posting and in individualized oral disclosures to the consumer. Md. Code Ann. Com. Law §§ 14-3803(b), 14-3805(a) (West 2011); *see also* § 14-3806(a)(5) ("A facilitator may not misrepresent a material fact or condition of a refund anticipation loan or refund anticipation check"); § 14-3802 (facilitators may not solicit or facilitate RAL without complying with this subtitle).

85. In addition, Maryland's RAL law prohibits the tax preparer, or any other entity other than the third-party bank or creditor, from receiving any fee related to an RAL. Md. Code Ann. Com. Law § 14-3806(a)(2) (West 2011) (Facilitators may not "[c]harge any fee to a consumer or require any other consideration for making or facilitating a refund anticipation loan or refund anticipation check other than the fee imposed by the creditor or other person that provides the refund anticipation loan or refund anticipation check."). Instead, a tax preparer can only receive the same fees that would be charged to a consumer who did not receive a RAL or other tax-related financial products. Md. Code Ann. Com. Law § 14-3806(b) (West 2011).

86.     A facilitator who violates any provision of Maryland's RAL law commits an unfair or deceptive trade practice and is subject to the remedies provided under the Maryland Consumer Protection Act.   MD. CODE ANN. COM. LAW § 14-3807(a) (West 2011).   Those remedies include attorney's fees and costs.   MD. CODE ANN. COM. LAW § 13-408(b) (West 2011).   In addition, a facilitator who willfully fails to comply with any provision of Maryland's RAL law is liable to the consumer for:   (a) actual and compensatory damages; (b) $1,000 statutory damages; and (c) reasonable attorney's fees and costs.   MD. CODE ANN. COM. LAW § 14-3807(b) (West 2011).

## E.     MINNESOTA REFUND ANTICIPATION LOAN LAWS.

87.     The Minnesota statute governing RALs and tax preparers, Minn. Stat. § 270C.445, ("Minnesota RAL laws"), focuses on the practices of tax preparers like Defendant who market, facilitate, and make RALs.   The legislature amended the statute in 2009 to increase the civil damages available to plaintiffs by providing for statutory damages amounting to twice the sum of (i) the tax preparation fee, and (ii) all interest and fees for any RAL.

88.     Under the Minnesota RAL laws, a RAL includes any "loan or any other extension of credit, whether provided by the tax preparer or another entity such as a financial institution, in anticipation of, and whose payment is secured by, a client's federal or state income tax refund or both." Minn. Stat. § 270C.445, subd. 2(g).

89.     The Minnesota RAL laws define "tax preparer" as "a person providing tax preparation services" as defined in the statute.   Minn. Stat. § 270C.445, subd. 2(h)(i).   "Tax preparation services" include "assist[ing] with preparing or filing state or federal income tax returns" and "facilitat[ing] the provision of refund anticipation loans."   Minn. Stat. § 270C.445, subd. 2(h)(1) and (2).   To "[f]acilitate" means to "offer, arrange, [or] process . . . a refund

anticipation loan." Minn. Stat. § 270C.445, subd. 2(d). "Person" is defined to include corporations such as Defendant. Minn. Stat. § 270C.445, subd. 2(e).

90.     The Minnesota RAL laws prohibit "tax preparers" such as Defendant from engaging in certain practices. The Minnesota RAL laws also require tax preparers who facilitate RALs to disclose, in writing, critical information about RALs, including the finance charges and interest rates associated with the loans and lower cost alternatives to RALs. At issue in this case are the Minnesota RAL laws' disclosure requirements and prohibition of tax preparers' arranging for payment for any service in connection with a RAL other than repayment of the RAL and the tax preparation fees.

91.     The Minnesota RAL laws require all tax preparers who facilitate RALs to conspicuously disclose critical information about the interest rate, fees, and timing of the RAL, as well as alternative means to receive refunds from the IRS in a timely manner without exorbitant add-on charges. Minn. Stat. § 270C.445, subd. 4(a) & 4a(2)(i)-(iv). These disclosures must be "provided to a client in a written notice on single sheet of paper," and be printed in "capital and small font type fonts, in a minimum of 14-point type, with at least a double space between each statement." Minn. Stat. § 270C.445, subd. 4(b)-(c). These written disclosures are required to be separate, conspicuous, and in large type so that they are not lost amidst multiple pages of fine print. The refund anticipation checks provision, which would encompass an ERC or ERD, also requires specific disclosures. Minn. Stat. § 270C.445, subd. 4b.

92.     Perhaps the most critical disclosure required by the Minnesota RAL laws is the interest rate for any loan product. The Minnesota RAL laws require all tax preparers who facilitate RALs to disclose, on a document separate from the loan materials, "[t]he annual percentage rate (APR), based on the estimated payment period" of the loan. Minn. Stat. §

270C.445, subd. 4a(2)(i). The Minnesota RAL laws require tax preparers who facilitate RALs to provide all disclosures required by the federal Truth in Lending Act ("TILA") (15 U.S.C. § 1601 *et. seq.*) and its implementing Regulation Z (12 C.F.R. Part 226). Minn. Stat. § 270C.445, subd. 3(19). Under TILA, all "finance charges" must be included in the calculation of APR. 15 U.S.C. § 1606. "Finance charge" includes any "charges, payable directly or indirectly by the person to whom credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit." 12 C.F.R. § 226.4(a).

93. The Minnesota RAL laws prohibit the tax preparer from inserting into any agreement to facilitate a RAL a provision that arranges for the "deduction from any portion of the refund anticipation loan . . . for . . . the collection of any debt owed to any party for any other good or service other than a debt owed to the facilitator for the repayment of a refund anticipation loan and tax preparation fees…." Minn. Stat. § 270C.445, subd. 3a(a).

94. In addition, the Minnesota RAL laws require that the tax preparer provide a separate written notice to the client in connection with any written agreement facilitating a RAL or a ERC/ERD that contains a mandatory arbitration clause. Minn. Stat. § 270C.445, subd. 3a(b). This notice must state that arbitration is the exclusive means of dispute resolution, that the client has the right to opt out of arbitration within thirty days, and that the arbitration clause does not apply to violations of the Minnesota RAL laws. Minn. Stat. § 270C.445, subd. 3a(b)(1)-(3).

95. A tax preparer who violates any provision of the Minnesota RAL laws is liable to the client for (1) actual damages, (2) incidental and consequential damages, (3) statutory damages of twice the sum of the tax preparation fees charged to the client, (4) reasonable attorney fees, (5) court costs, and (6) any other equitable relief this Court considers appropriate. Minn. Stat. § 270C.445, subd. 7(c). A tax preparer who fails to make the required disclosures in

connection with the facilitation of a RAL, ERC, or ERD violates the prohibition on arrangements for the payment of fees other than repayment of the RAL or the tax preparation fees is additionally liable for statutory damages of twice the sum of all interest and fees for the RAL. Minn. Stat. § 270C.445, subd. 7(c)(3).

96.     According to the Minnesota RAL laws, "[a]ny violation of [the Minnesota RAL laws] is an unfair, deceptive, and unlawful trade practice within the meaning of section 8.31." Minn. Stat. § 270C.445, subd. 7(a).  Subdivision 3a of section 8.31 is the Minnesota Private Attorney General Act and provides a private right of action for damages and attorney's fees for violations of certain laws concerning consumer protections and restraints of trade.  Minn. Stat. § 8.31, subd. 3a.  The Unlawful Trade Practices Act (Minn. Stat. § 325D.09 *et seq.*) ("UTPA") is included in section 8.31 and therefore a violation of Minnesota RAL laws also implicates the UTPA.  Minn. Stat. § 8.31, subd. 1.  Any action taken for violations of the Minnesota RAL laws is in the public interest.  Minn. Stat. § 270C.445, subd. 7(a).

97.     It is a violation of UTPA when, "in connection with the sale of merchandise at retail[,]" a person "misrepresent[s] the true nature of such sale."  Minn. Stat. § 325D.12(2). UTPA defines "[s]ale of merchandise at retail" as any sale to a direct consumer.  Minn. Stat. § 325D.10(d) (excepting "(1) [a] sale for the purpose of resale or (2) a sale of substantial quantity of merchandise for business use only").  UTPA defines "sale" as "any sale, offer, or advertisement thereof or contract for the same."  Minn. Stat. § 325D.10(c).  The UTPA defines "person" to include corporations such as Defendant.  Minn. Stat. § 325D.10(a).

98.     According to UTPA, "[a]ny person damaged . . . by reason of a violation of [UTPA] shall be entitled to sue for and have injunctive relief . . . and for the amount of the actual damages."  Minn. Stat. § 325D.15.

99.     The Uniform Deceptive Trade Practices Act (Minn. Stat. § 325D.43 *et seq*.) (the "UDTPA") also governs the deceptive sales of goods or services in Minnesota.  The UDTPA is violated when a person "represents that . . . services have . . . characteristics . . . that they do not have," or "engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding."  Minn. Stat. § 325D.44, subd. 1(5) & (13).

100.     According to the UDTPA, "[a] person likely to be damaged by a deceptive trade practice of another may be granted an injunction against it."  Minn. Stat. § 325D.45, subd. 1. The UDTPA further provides that "the court may award attorney's fees to the prevailing party if . . . (2) the party charged with a deceptive trade practice has willfully engaged in the trade practice knowing it to be deceptive.  Minn. Stat. § 325D.45, subd. 2.  The remedies provided by the UDTPA are additional to remedies provided by other statutes.  Minn. Stat. § 325D.45, subd. 3.

**F.     NEW YORK REFUND ANTICIPATION LOAN LAWS.**

101.     Regulation of RALs in the State of New York occurs through the interplay of the following laws:

- N.Y. CLS Tax § 32 which governs the facilitation of RALs by tax preparers throughout the State of New York.

- N.Y. Gen. Bus. Law § 372, *et seq.*, which governs the facilitation of RALs by tax preparers throughout the state of New York, except in cities with population of one million or more (*i.e.*, New York City).

- New York City Administrative Code § 20-739 *et seq.,* which governs the facilitation of RALs by tax preparers in New York City and parallels N.Y. Gen. Bus. Law § 372, *et seq*.

Therefore, N.Y. CLS Tax § 32 in tandem with New York City Administrative Code § 20-739, *et seq.*, ("New York City RAL law") governs RALs in the New York City area.  In all other parts of the state, N.Y. CLS Tax § 32 and N.Y. Gen. Bus. Law § 372 ("New York State RAL law")

govern. All of these laws focus on the practices of tax preparers like Defendant who market, facilitate and make RALs.

102.    Under New York State RAL law and New York City RAL law, a RAL includes any "loan that is secured by or that the creditor arranges to be repaid directly or indirectly from the proceeds of an income tax refund or tax credits." N.Y. CLS Gen. Bus. § 371(d); N.Y. CLS Tax § 32(a)(11). A RAL "includes any sale, assignment, or purchase of tax refund at a discount or for a fee, whether or not the amount is required to be repaid to the buyer or assignee if the internal revenue service or the department denies or reduces the amount of the tax refund." *Id*.

103.    New York State RAL law and New York City RAL law define a "facilitator" as a person who, among other things, "processes, receives or accepts an application or agreement" for a RAL, "serves or collects upon" a RAL, or "facilitates the making of" a RAL. N.Y. CLS Gen. Bus. § 371(a); N.Y. CLS Tax § 32(a)(6). Defendant is a facilitator as defined by New York State RAL law and New York City RAL law.

104.    New York State RAL law and New York City RAL law prohibit facilitators such as Defendant from engaging in certain practices and require the facilitators/tax preparers to disclose, in writing and orally, certain critical information about RALs, including the finance charges and lower-cost alternatives. Most relevant to this class action are disclosure requirements of New York State RAL law and New York City RAL law, and the prohibition placed on the facilitator from charging or imposing any fees for RALs other than fees charged by the creditor or bank, imposed by New York State RAL law and New York City RAL law.

105.    New York State RAL law and New York City RAL law each require facilitators to disclose conspicuously and in large type ("at least 14-point") specific information about the interest rate, fees and timing of the RAL, as well as alternative means to receive refunds from the

IRS in a timely manner without exorbitant add-on charges. N.Y. CLS Gen. Bus. § 372(e)(2); New York City Administrative Code § 20-741.1. These written disclosures are required to be separate, conspicuous, in large type and signed by the taxpayer so that they are not lost amidst multiple pages of fine print. *Id.* New York State RAL law and New York City RAL law also require facilitators to make very similar, but not identical, oral disclosures in anticipation of providing a taxpayer with a RAL. N.Y. CLS Gen. Bus. § 372(f); New York City Administrative Code § 20-741.1.

106. Further, New York State RAL law and New York City RAL law require facilitators to provide each taxpayer with an additional flyer, separate from any other tax preparation materials or the above-mentioned disclosure form, titled "Consumer Bill of Rights Regarding Tax Preparers" ("Consumer Bill of Rights"). NY CLS Gen Bus § 372(d); New York City Administrative Code § 20-740.1. The document is generated by the New York Department of Taxation and Finance and must be given to the taxpayer prior to any discussion about tax preparation services. *Id.* Among other items of information provided on the form, the taxpayer is instructed that, if he or she enters into an RAL, the tax preparer must provide, on a sheet of paper separate from any other RAL materials, "the interest rate [of the RAL], expressed as the estimated annual percentage rate (APR) based on the amount of time the loan will be outstanding." NY Dept. of Tax'n. and Fin., Consumer Bill of Rights Regarding Tax Preparers, 2 (http://www.nyc.gov/html/dca/downloads/pdf/consumerbillofrights.pdf); See 20 NYCRR § 2398.2. Thus, prior to the consummation of any RAL, New York State RAL law and New York City RAL law require facilitators to provide taxpayers with not one, but two written disclosures, on two separate sheets of paper, detailing an accurate calculation of the APR and other fees associated with RALs, followed up by oral disclosures covering the same information.

32

107.    In addition, New York State RAL law and New York City RAL law prohibit the facilitator, or any other entity other than the third-party bank or creditor, from receiving any fee related to a RAL.  N.Y. CLS Tax § 32(f)(1)(A) (A facilitator shall not "charge or impose any fee, charge or other consideration in the making or facilitating of a refund anticipation loan or refund anticipation check apart from the fee charged by the creditor or bank that provided the loan or check.").

108.    New York State RAL law and New York City RAL law also prohibit the facilitator from incorporating clauses into contracts with the taxpayer that waive the right to "relief on a class-wide basis."  N.Y. CLS Tax § 32(f)(1)(D).

### G.    NORTH CAROLINA REFUND ANTICIPATION LOAN ACT.

109.    North Carolina's Refund Anticipation Loan Act, N.C. Gen. Stat. § 53-245, *et seq*. ("NC RALA") focuses on the practices of tax preparers like Defendant who market, facilitate, and make RALs.

110.    Under NC RALA, a RAL includes any loan "arrange[d] to be repaid directly from the proceeds of the debtor's income tax refund."  N.C. Gen. Stat. § 53-246(8).  A RAL fee includes "the charges, fees, or other consideration charged or imposed by the creditor or facilitator for the making of a refund anticipation loan."  N.C. Gen. Stat. § 53-246(9).

111.    NC RALA defines a "facilitator" as a person who, among other things, "processes, receives, or accepts for delivery an application" for a RAL, "or in any other manner facilitates the making of a refund anticipation loan."  N.C. Gen. Stat. § 53-246(6).  Defendant is a facilitator as defined by NC RALA.

112.    NC RALA prohibits "facilitators" such as Defendant from engaging in certain practices and requires the facilitators to disclose, in writing, certain critical information about

33

RALs including the finance charges and lower-cost alternatives. Most relevant to this class action are NC RALA's disclosure requirements.

113.    NC RALA requires all facilitators to disclose conspicuously, on a "form **separate** from the application" specific information about the interest rate, fees and timing of the RAL, as well as alternative means to receive refunds from the IRS in a timely manner without exorbitant add-on charges. N.C. Gen. Stat. § 53-249(d) (emphasis added). These written disclosures are required to be separate and conspicuous, so that they are not lost amidst multiple pages of fine print.

114.    In addition to the separate disclosures given to each consumer, facilitators are required to prominently display similar disclosures at each office where RALs are facilitated. N.C. Gen. Stat. § 53-249(c).

115.    Perhaps the most critical disclosure required by NC RALA is the interest rate for any loan product. NC RALA requires all facilitators to disclose, on a document separate from the loan application, "[e]xamples of the annual percentage rates, as defined by the Truth in Lending Act, *15 U.S.C. § 1607* and *12 C.F.R. Section 226.22*," for various RALs ranging between $500.00 and $3,000.00. N.C. Gen. Stat. § 53-249(d)(6). This same interest rate also must be accurately disclosed in the prominently displayed office posting. N.C. Gen. Stat. § 53-249(c); *see also* N.C. Gen. Stat. §§ 53-250(1) (A facilitator shall neither misrepresent "a material factor or condition of a refund anticipation loan.").

116.    A facilitator who makes misrepresentations to the consumer, in violation of N.C. Gen. Stat. § 53-250, is liable directly to the consumer for (a) three times the amount of the RAL fee, (b) the cost of any additional unauthorized charges or fees, and (c) reasonable attorney's fees and costs of prosecution. N.C. Gen. Stat. § 53-251(c).

34

### H.     WISCONSIN REFUND ANTICIPATION LOAN ACT.

117.     The Wisconsin statute governing RALs and tax preparers, Wis. Stat. §422.310 ("Wisconsin RAL laws") was enacted in 1993 and focuses on the practices of tax preparers like Defendant who market, facilitate, and make RALs.  The Wisconsin legislature expressly enacted the Wisconsin Consumer Act, of which the Wisconsin RAL laws are a part, "to protect customers against unfair, deceptive, false, misleading and unconscionable practices by merchants."  Wis. Stat. §421.102(2)(b).

118.     Under Wisconsin RAL laws, a RAL is an "agreement under which a creditor arranges to be repaid for a loan directly from the proceeds of a customer's income tax refund." Wis. Stat. §421.301(37m).  A RAL fee includes "charges, fees or other consideration imposed by a creditor for making a refund anticipation loan."  Wis. Stat. §421.301(37r).

119.     Wisconsin RAL laws define a "creditor" as "a merchant who regularly engages in consumer credit transactions or in arranging for the extension of consumer credit by or procuring consumer credit from third persons."  Wis. Stat. §421.301(16).  Defendant is a creditor as defined by Wisconsin law.

120.     Wisconsin RAL laws prohibit "creditors" such as Defendant from engaging in certain practices and require such creditors to disclose in writing certain critical information about RALs, the finance charges and lower-cost alternatives.  Most relevant to this class action are Wisconsin RAL laws' disclosure requirements and prohibition on the tax preparer charging or imposing any fees for RALs other than fees charged by the creditor or bank.

121.     Wisconsin RAL laws require all tax preparers to disclose specific information about the interest rate, fees and timing of the RAL, as well as alternative means to receive refunds from the IRS in a timely manner.  Wis. Stat. §422.310(1)(e)-(h).

122.   Perhaps the most critical disclosure required by Wisconsin RAL laws is the interest rate for any loan product.  Wisconsin RAL laws require all creditors to disclose the "estimated annual percentage rate, based on the size of the refund anticipation loan, the refund anticipation loan fees and the anticipated maturity date of the refund anticipation loan."  Wis. Stat. §422.310(1)(h).

123.   In addition, Wisconsin RAL laws prohibit creditors from receiving any fee related to a RAL.  Wis. Stat. §422.310(2) ("A creditor may not impose a different fee or charge for electronically filing an income tax return on a customer who obtains a refund anticipation loan than the creditor imposes on a customer who does not obtain a refund anticipation loan.").

124.   A creditor who violates any provision of the Wisconsin RAL laws also violates the Wisconsin Consumer Act, Wis. Stat. §421.101 *et seq.*, and a consumer has all rights and remedies provided under the Wisconsin Consumer Act for each Wisconsin RAL law violation. Wis. Stat. §422.310(3).  In addition, a creditor who violates any provision of the Wisconsin RAL laws is "liable to the customer in an amount equal to the greater of:  (1) Twice the amount of the finance charge in connection with the transaction, except that the liability under this subsection shall not be less than 100 nor greater than 1,000; or (2) The actual damages, including any incidental and consequential damages, sustained by the customer by reason of the violation." Wis. Stat. §425.304.

## V.    DISCLOSURE REQUIREMENTS UNDER THE TRUTH IN LENDING ACT.

125.   TILA, and its implementing Regulation Z, 12 C.F.R. Part 226, establish requirements for accurate disclosure of interest rates and finance charges when creditors provide loans and extensions of credit to consumers.

126.   Defendant is a creditor, in that Defendant, in conjunction with its banking partners, charges fees as a condition for obtaining the extension of credit for tax preparation fees

36

(all loan products) and any advanced funds (Republic RAL) and at least a portion, if not all, of each consumer's debt is payable to Defendant.

127.     Plaintiff and Class Members are consumers for purposes of TILA.

128.     Violations of TILA are determined on an objective standard, based on the representations in the relevant disclosure documents, with no necessity to establish the subjective misunderstanding or reliance of particular consumers.

129.     TILA defines a finance charge as "… the finance charge in connection with any consumer credit transaction shall be determined as the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit." 15 U.S.C. §1605(a).  A "finance charge" is "the cost of consumer credit as a dollar amount," and includes "any charge payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or a condition of the extension of credit." 12 C.F.R. §226.4(a).  Finance charges within the meaning of TILA include fees and amounts charged by third parties where the contracting party requires the use of a third party or where the creditor retains a portion of the third-party charge.

130.     Consumers cannot obtain advanced funds or defer payment of tax preparation services through Defendant's RAL products without paying the Account Handling Fee or the Tax Refund Administration Fee, among other loan fees.

131.     The Account Handling Fee charged to recipients of SBBT RALs, RAL Advances, and Refund Transfers and the Tax Refund Administration Fee charged to recipients of ERCs, ERDs, and Republic RALs constitutes a "finance charge" within the meaning of TILA, 15 U.S.C. § 1605, and Regulation Z, 12 C.F.R. § 226.4.

132.    Defendant failed to disclose to Plaintiffs and the Class an interest rate calculated utilizing the guidelines established under TILA by failing to consider the Account Handling Fee and the Tax Refund Administration Fee a finance charge.

133.    For each Refund Transfer and ERC/ERD customer, Defendant failed to disclose any interest rate or finance charge, thus violating the written disclosure requirements of TILA.

134.    For each SBBT RAL, RAL Advance and Republic RAL customer, Defendant failed to accurately disclose the interest rate, because it did not include the Account Handling Fee or the Tax Refund Administration Fee as part of the finance charge, which violates the written disclosure requirements of TILA.

## VI.    FACTUAL ALLEGATIONS AS TO NAMED PLAINTIFFS.

### A.    ARKANSAS.

### ZANETA HOUSTON

135.    Zaneta Houston has been a customer of Defendant since at least the 2010 tax year. In tax year 2010, Ms. Houston was eligible for and received the EITC.  Defendant prepared tax returns for Ms. Houston and also facilitated a RAL at one of Defendant's offices in Arkansas. Specifically, Defendant facilitated an ERC for Ms. Houston in the 2010 tax year.

136.    Defendant charged Ms. Houston $340 for tax preparation in the 2010 tax year. Ms. Houston did not pay these fees at the time of service, but deferred payment to be taken out of her tax refund.

137.    In tax year 2010, Defendant also charged Ms. Houston a "Tax Refund Administration Fee" of $29.95 to set up a Deposit Account into which the IRS deposited her tax refund.  After the IRS deposited Ms. Houston's tax refund into her Deposit Account, Defendant would then issue a check to Ms. Houston for her refund minus all fees and charges due to Defendant and Republic Bank.

138.    Therefore, Ms. Houston paid Defendant $29.95 in finance charges for a loan to defer payment of her tax preparation fees.  Defendant did not provide Ms. Houston with any disclosures regarding the APR or finance charges for her ERC in violation of ARALA (Ark. Code Ann. §§ 4-116-104; 4-116-105(a); 4-116-103(1) & (2) and 4-116-107(5)).

139.    Defendant received a portion of the loan fees and finance charges on Ms. Houston's ERC in violation of Ark. Code Ann. §§ 4-116-107(2) and 4-116-103(1) & (2).

### DAPHNE SHORTER

140.    Daphne Shorter has been a customer of Defendant since at least the 2010 tax year. In tax year 2010, Ms. Shorter was eligible for and received the EITC.  Defendant prepared tax returns for Ms. Shorter and also facilitated a RAL at Defendant's office in Jacksonville, Arkansas.  Specifically, Defendant facilitated a Republic RAL and an ERD for Ms. Shorter in the 2010 tax year.

141.    Defendant charged Ms. Shorter $279 for tax preparation in the 2010 tax year.  Ms. Shorter did not pay these fees at the time of service, but deferred payment to be taken out of her tax refund.

142.    Additionally, Defendant charged Ms. Shorter what it termed a "finance charge" of $61.22 in the 2010 tax year.

143.    In tax year 2010, Defendant also charged Ms. Shorter a "Tax Refund Administration Fee" of $29.95 to set up a Deposit Account into which the IRS deposited her tax refund.  After the IRS deposited Ms. Shorter's tax refund into her Deposit Account, Defendant would then make a deposit into Ms. Shorter's personal bank account for her refund minus all fees and charges due to Defendant and Republic Bank.

144.    The actual finance charge for the Republic RAL, when properly calculated to include the Tax Refund Administration Fee in accordance with TILA, RALA, and ADTPA, was $91.17, and the APR, properly calculated, was significantly higher than the 124.14% figure represented by Defendant.

145.    Therefore, Ms. Shorter paid Defendant $29.95 in additional finance charges for a loan to defer payment of her tax preparation fees.  Defendant did not provide Ms. Shorter with any disclosures regarding the APR or finance charges for her ERD and provided inaccurate disclosures of APR and finance charges related to the Republic RAL in violation of ARALA (Ark. Code Ann. §§ 4-116-104; 4-116-105(a); 4-116-103(1) & (2) and 4-116-107(5)).

146.    Defendant received a portion of the loan fees and finance charges on Ms. Shorter's ERD and Republic RAL in violation of Ark. Code Ann. §§ 4-116-107(2) and 4-116-103(1) & (2).

**B.    CALIFORNIA.**

**CHARLES MADUBUIKE**

147.    Charles Madubuike has been a customer of Defendant since at least the 2009 tax year.  Defendant prepared tax returns for Mr. Madubuike and also facilitated a RAL at Defendant's office.  Specifically, Defendant facilitated an ERC for Mr. Madubuike in the 2009 and 2010 tax years.

148.    Defendant charged Mr. Madubuike $381 and $404 for tax preparation in the respective 2009 and 2010 tax years.  Mr. Madubuike did not pay these fees at the time of service, but deferred payment to be taken out of his tax refund.

149.    In tax years 2009 and 2010, Defendant also charged Mr. Madubuike a "Tax Refund Administration Fee" of $29.95 to set up a Deposit Account into which the IRS deposited his tax refund.  After the IRS deposited Mr. Madubuike's tax refund into his Deposit Account,

Defendant would then issue a check to Mr. Madubuike for his refund minus all fees and charges due to Defendant and Republic Bank.

150.    Therefore, Mr. Madubuike paid Defendant $29.95 in finance charges for a loan to defer payment of his tax preparation fees.  Defendant did not provide Mr. Madubuike with any disclosures regarding the APR or finance charges for his ERCs in violation of California RAL laws, Cal. Bus. & Prof. Code §§22253.1(b)-(d).

### GEORGE WASHINGTON, JR. AND MARGARET WASHINGTON

151.    George and Margaret Washington have been customers of Defendant since at least the 2010 tax year.  Defendant prepared tax returns for Mr. and Mrs. Washington and also facilitated a RAL at Defendant's office.  Specifically, Defendant facilitated an ERD for Mr. and Mrs. Washington in the 2010 tax year.

152.    Defendant charged Mr. and Mrs. Washington $336 for tax preparation in the 2010 tax year.  Mr. and Mrs. Washington did not pay these fees at the time of service, but deferred payment to be taken out of their tax refund.

153.    In tax year 2010, Defendant also charged Mr. and Mrs. Washington a "Tax Refund Administration Fee" of $29.95 to set up a Deposit Account into which the IRS deposited their tax refund.  After the IRS deposited Mr. and Mrs. Washington's tax refund into their Deposit Account, Defendant would then make a deposit into Mr. and Mrs. Washington's personal bank account for their refund minus all fees and charges due to Defendant and Republic Bank.

154.    Therefore, Mr. and Mrs. Washington paid Defendant $29.95 in finance charges for a loan to defer payment of their tax preparation fees.  Defendant did not provide Mr. and Mrs.

Washington with any disclosures regarding the APR or finance charges for their ERD in violation of California RAL laws, Cal. Bus. & Prof. Code §§22253.1(b)-(d).

C.   FLORIDA.

PAMELA PATTERSON

155.   Pamela Patterson has been a customer of Defendant since at least the 2008 tax year.  In tax years 2008, 2009, and 2010, Ms. Patterson was eligible for and received the EITC. Defendant prepared tax returns for Ms. Patterson and also facilitated a RAL at one of Defendant's offices.  Specifically, Defendant facilitated an ERC for Ms. Patterson in the 2010 tax year.

156.   Defendant charged Ms. Patterson $132, $341, and $371 for tax preparation in the respective 2008, 2009 and 2010 tax years.  Ms. Patterson did not pay these fees at the time of service, but deferred payment to be taken out of her tax refund.

157.   In tax year 2010, Defendant also charged Ms. Patterson a "Tax Refund Administration Fee" of $29.95 to set up a Deposit Account into which the IRS deposited her tax refund.  After the IRS deposited Ms. Patterson's tax refund into her Deposit Account, Defendant would then issue a check to Ms. Patterson for her refund minus all fees and charges due to Defendant and Republic Bank.

158.   Therefore, Ms. Patterson paid Defendant $29.95 in finance charges for a loan to defer payment of her tax preparation fees.  Defendant did not provide Ms. Patterson with any disclosures regarding the APR or finance charges for her ERC.

D.   ILLINOIS.

TIMOTHY ROWDEN

159.   Timothy Rowden has been a customer of Defendant since at least the 2008 tax year.  Defendant prepared tax returns for Mr. Rowden and also facilitated a RAL at one of

42

Defendant's offices. Specifically, Defendant facilitated an ERC and ERD for Mr. Rowden in the respective 2009 and 2010 tax years.

160.     Defendant charged Mr. Rowden $176 and $163 for tax preparation in the respective 2009 and 2010 tax years. Mr. Rowden did not pay these fees at the time of service, but deferred payment to be taken out of his tax refund.

161.     In tax years 2009 and 2010, Defendant also charged Mr. Rowden a "Tax Refund Administration Fee" of $29.95 to set up a Deposit Account into which the IRS deposited his tax refund. In tax year 2009, after the IRS deposited Mr. Rowden's tax refund into his Deposit Account, Defendant then issued a check to Mr. Rowden for his refund minus all fees and charges due to Defendant and Republic Bank. In tax year 2010, after the IRS deposited Mr. Rowden's tax refund into his Deposit Account, Defendant then made a deposit into Mr. Rowden's personal bank account for his refund minus all fees and charges due to Defendant and Republic Bank.

162.     Therefore, Mr. Rowden paid Defendant $29.95 in finance charges for a loan to defer payment of his tax preparation fees. Defendant did not provide Mr. Rowden with any disclosures regarding the APR or finance charges for his ERC and ERD in violation of TRALDA, 815 ILCS 177/10, IUDTPA, 815 ILCS510/1, *et seq*., and ICFA, 815 ILCS 505/1, *et seq*.

### E.     MARYLAND.

### KEONNA BROWN

163.     Keonna Brown has been a customer of Defendant since at least the 2010 tax year. Defendant prepared tax returns for Ms. Brown and also facilitated a RAL at Defendant's office. Specifically, Defendant facilitated a Republic RAL and an ERC for Ms. Brown in the 2010 tax year.

164.    Defendant charged Ms. Brown $354 for tax preparation in the 2010 tax year.  Ms. Brown did not pay these fees at the time of service, but deferred payment to be taken out of her tax refund.

165.    Additionally, Defendant charged Ms. Brown what it termed a "finance charge" of $61.22 in the 2010 tax year.

166.    In tax year 2010, Defendant also charged Ms. Brown a "Tax Refund Administration Fee" of $29.95 to set up a Deposit Account into which the IRS deposited her tax refund.  After the IRS deposited Ms. Brown's tax refund into her Deposit Account, Defendant would then issue a check for Ms. Brown's refund minus all fees and charges due to Defendant and Republic Bank.

167.    The actual finance charge for the Republic RAL, when properly calculated to include the Tax Refund Administration Fee in accordance with TILA, Maryland RAL law, and the Maryland Consumer Protection Act, was $91.17, and the APR, properly calculated, was significantly higher than the 124.14% figure represented by Defendant.

168.    Therefore, Ms. Brown paid Defendant $29.95 in additional finance charges for a loan to defer payment of her tax preparation fees.  Defendant did not provide Ms. Brown with any disclosures regarding the APR or finance charges for her ERC and provided inaccurate disclosures of APR and finance charges related to the Republic RAL in violation of Maryland RAL law, the TILA, and the Maryland Consumer Protection Act.

169.    Defendant received a portion of the loan fees and finance charges on Ms. Brown's ERC and Republic RAL in violation of Maryland RAL law, the TILA, and the Maryland Consumer Protection Act.

F.     MINNESOTA.

HEATHER REYES

170.    Heather Reyes has been a customer of Defendant since at least the 2009 tax year. In the tax years 2009 through 2011, Ms. Reyes was eligible for and received the EITC each year. Each year, Defendant prepared tax returns for Ms. Reyes and also facilitated RALs at Defendant's office.  Specifically, Defendant facilitated a Republic RAL and an ERD for Ms. Reyes in tax year 2010, and a Republic RAL and ERC for Ms. Reyes in tax year 2011.

171.    Defendant charged Ms. Reyes the following amounts for tax preparation in each of the respective tax years 2009 through 2011: $227, $182, and $202.  In each year, Ms. Reyes did not pay these fees at the time of service, but deferred payment to be taken out of her tax refund.

172.    In each of the tax years 2009 through 2011, Defendant charged Ms. Reyes a "Tax Refund Administration Fee" of $29.95 to set up a Deposit Account into which the IRS deposited her tax refund.  After the IRS deposited Ms. Reyes's tax refund into her Refund Account, Defendant would then make a deposit into Ms. Reyes's personal bank account or issue her a check for her refund minus all fees and charges due to Defendant and Republic Bank.

173.    In tax years 2010 and 2011, Ms. Reyes purchased a Republic RAL.  For each of those tax years, Defendant also charged Ms. Reyes what it termed a "finance charge" of $61.22.

174.    Defendant failed to provide Ms. Reyes the disclosures required under the Minnesota RAL laws.  In the tax year 2009, Defendant failed to provide *any* disclosure to Ms. Reyes regarding the APR or finance charges regarding this RAL.  In tax years 2010 and 2011, Defendant failed to accurately disclose the actual finance charges, which, when properly calculated in accordance with TILA, the Minnesota RAL laws, the UTPA, and the UDTPA, include the Tax Refund Administration Fee.  Ms. Reyes was actually charged $91.17 in finance

45

charges in each year, and the respective APRs for each year were significantly higher than the 124.14% figures represented by Defendant in those years. Furthermore, in the tax year 2011, Defendant failed to sign, and also failed to obtain Ms. Reyes's signature on the statutorily required RAL notice.

175.    Defendant failed to provide accurate disclosures to Ms. Reyes regarding the APR or finance charge for the RALs it facilitated in tax years 2009 through 2011, in violation of the Minnesota RAL laws, Minn. Stat. § 270C.445, subd 3(19) &, subd 4a; TILA, 15 U.S.C. § 1606; the UTPA, Minn. Stat. § 325D.12(2); and the UDTPA, Minn. Stat. § 325D.44, subd 1(5) & (13).

176.    Defendant also failed to provide a separate written notice stating that arbitration was the exclusive means of dispute resolution, that Ms. Reyes had the right to opt out of arbitration within thirty days, and that the arbitration clause would not apply to violations of the Minnesota RAL laws, notwithstanding that the RAL facilitation agreement signed by Ms. Reyes contained a mandatory arbitration clause, in violation of Minn. Stat. § 270C.445, subd 3a(b).

G.    **NEW YORK.**

**RONALD TOPPING**

177.    Ronald Topping has been a customer of Defendant since at least the 2011 tax year. In that tax year, Mr. Topping was eligible for and received the EITC. Defendant prepared tax returns for Mr. Topping and also facilitated a RAL at one of Defendant's offices. Specifically, Defendant facilitated an ERC and Republic RAL for Mr. Topping in the 2011 tax year.

178.    Defendant charged Mr. Topping $350 for tax preparation in the 2011 tax year. Mr. Topping did not pay these fees at the time of service, but deferred payment to be taken out of his tax refund.

46

179.    In tax year 2011, Defendant also charged Mr. Topping a "Tax Refund Administration Fee" of $29.95 to set up a Deposit Account into which the IRS deposited his tax refund.  In tax year 2011, after the IRS deposited Mr. Topping's tax refund into his Deposit Account, Defendant then issued a check to Mr. Topping for his refund minus all fees and charges due to Defendant and Republic Bank.

180.    In tax year 2011, Mr. Topping purchased a Republic RAL.  For that tax year, Defendant also charged Mr. Topping what it termed a "finance charge" of $61.22.

181.    In the 2011 tax year, Defendant failed to accurately disclose the actual finance charges, which, when properly calculated in accordance with TILA, the New York State RAL law, and the New York City RAL law, include the Tax Refund Administration Fee.  Mr. Topping was actually charged $91.17 in finance charges in tax year 2011, and the APR for that year was significantly higher than the 124.14% figure represented by Defendant in that year.

182.    Therefore, Mr. Topping paid Defendant $29.95 in additional finance charges for a loan to defer payment of his tax preparation fees.  Defendant did not provide Mr. Topping with any disclosures regarding the APR or finance charges for his ERC and provided inaccurate disclosures for his Republic RAL in violation of New York City RAL laws; N.Y. Gen. Bus. Law §372, *et seq.*; N.Y. CLS Tax §32; and New York City Administration Code §20-739, *et seq*.

183.    Further, Defendant received a portion of the loan fees and finance charges on Mr. Topping's ERC and Republic RAL in violation of New York State RAL law and New York City RAL law.  N.Y.CLS §32(f)(1)(A).

## KEVIN AND YOLANDA GOODWIN

184.    Kevin and Yolanda Goodwin have been customers of Defendant since at least the 2009 tax year.  Defendant prepared tax returns for Mr. and Mrs. Goodwin and also facilitated a

47

RAL at one of Defendant's offices. Specifically, Defendant facilitated a Republic RAL in the 2009 and 2010 tax years, as well as an ERC in the 2011 tax year.

185. Defendant charged Mr. and Mrs. Goodwin $416 and $402 for tax preparation in the respective 2009 and 2011 tax years. Mr. and Mrs. Goodwin did not pay these fees at the time of service, but deferred payment to be taken out of their tax refund.

186. In tax years 2009 and 2011, Defendant also charged Mr. and Mrs. Goodwin a "Tax Refund Administration Fee" of $29.95 to set up a Deposit Account into which the IRS deposited their tax refund. In tax year 2011, after the IRS deposited Mr. and Mrs. Goodwin's tax refund into their Deposit Account, Defendant then issued a check to Mr. and Mrs. Goodwin for their refund minus all fees and charges due to Defendant and Republic Bank.

187. In tax years 2009 and 2010, Mr. and Mrs. Goodwin purchased a Republic RAL. For those tax years, Defendant also charged Mr. and Mrs. Goodwin what it termed a "finance charge" of $40.51 and $61.22 respectively.

188. In the 2009 and 2010 tax years, Defendant failed to accurately disclose the actual finance charges, which, when properly calculated in accordance with TILA, the New York State RAL law, and the New York City RAL law, include the Tax Refund Administration Fee. Mr. and Mrs. Goodwin were actually charged $70.46 and $91.17, respectively, in finance charges, and the APR for tax year 2010 was significantly higher than the 124.14% figure represented by Defendant in that year.

189. Therefore, Mr. and Mrs. Goodwin paid Defendant $29.95 in additional finance charges for a loan to defer payment of their tax preparation fees in the 2009 and 2010 tax years. Defendant did not provide Mr. and Mrs. Goodwin with any disclosures regarding the APR or finance charges for their ERC in tax year 2011 and provided inaccurate disclosures for their

48

Republic RALs in tax years 2009 and 2010 in violation of New York City RAL laws, N.Y. Gen. Bus. Law §372, *et seq.*; N.Y. CLS Tax §32; and New York City Administration Code §20-739, *et seq.*

190. Further, Defendant received a portion of the loan fees and finance charges on Mr. and Mrs. Goodwin's ERC and Republic RALs in violation of New York State RAL law and New York City RAL law. N.Y.CLS §32(f)(1)(A).

### H. NORTH CAROLINA.

### DOUGLAS GLOVER

191. Douglas Glover has been a customer of Defendant since at least the 2008 tax year. Defendant prepared tax returns for Mr. Glover and also facilitated a RAL at one of Defendant's offices. Specifically, Defendant facilitated a Santa Barbara Bank & Trust RAL ("SBBT RAL") for Mr. Glover in the 2008 tax year, as well as a Republic RAL in the 2009 tax year.

192. Defendant charged Mr. Glover $144 and $204 for tax preparation in the respective 2008 and 2009 tax years. Mr. Glover did not pay these fees at the time of service, but deferred payment to be taken out of his tax refund.

193. In tax year 2008, Mr. Glover purchased a SBBT RAL. Defendant charged Mr. Glover an "Account Handling fee" of $30.95 to set up a Temporary Deposit Account into which the IRS deposited his tax refund. Additionally, Defendant also charged Mr. Glover what it termed a "finance charge" of $24.15. In tax year 2008, after the IRS deposited Mr. Glover's tax refund into his Temporary Deposit Account, Defendant then issued a check to Mr. Glover for his refund minus all fees and charges due to Defendant and Santa Barbara Bank and Trust.

194. In the 2008 tax year, Defendant failed to accurately disclose the actual finance charges, which, when properly calculated in accordance with TILA, the California RAL laws, and California's consumer protection laws includes the Tax Refund Administration Fee. Mr.

49

Glover was actually charged $55.10 in finance charges in tax year 2008, and the APR for that year was significantly higher than the 85.08% figure represented by Defendant in that year.

195.    Similarly, in tax year 2009, Mr. Glover purchased a Republic RAL.  Defendant charged Mr. Glover a "Tax Refund Administration Fee" of $29.95 to set up a Deposit Account into which the IRS deposited his tax refund.  Additionally, Defendant also charged Mr. Glover what it termed a "finance charge" of $5.92.  In tax year 2009, after the IRS deposited Mr. Glover's tax refund into his Deposit Account, Defendant then issued a check to Mr. Glover for his refund minus all fees and charges due to Defendant and Republic Bank.

196.    In the 2009 tax year, Defendant failed to accurately disclose the actual finance charges, which, when properly calculated in accordance with TILA, the North Carolina RAL law, and the North Carolina consumer protection laws, includes the Tax Refund Administration Fee.  Mr. Glover was actually charged $35.87 in finance charges in tax year 2009, and the APR for that year was significantly higher than the 23.91% figure represented by Defendant in that year.

197.    Therefore, Mr. Glover paid Defendant $30.95 and $29.95 in additional finance charges for a loan to defer payment of his tax preparation fees in the respective 2008 and 2009 tax years.  Defendant did not provide Mr. Glover accurate disclosures for his SBBT RAL and Republic RAL in violation of California RAL laws, as well as North Carolina RAL laws, N.C. Gen. Stat. §53-249.

**SHAMIRA JONES**

198.    Shamira Jones has been a customer of Defendant since at least the 2009 tax year. Defendant prepared tax returns for Ms. Jones and also facilitated a RAL at one of Defendant's offices.  Specifically, Defendant facilitated a Republic RAL for Ms. Jones in the 2009 tax year.

199. Defendant charged Ms. Jones $285 for tax preparation in the 2009 tax year. Ms. Jones did not pay these fees at the time of service, but deferred payment to be taken out of her tax refund.

200. In tax year 2009, Defendant also charged Ms. Jones a "Tax Refund Administration Fee" of $29.95 to set up a Deposit Account into which the IRS deposited her tax refund. After the IRS deposited Ms. Jones's tax refund into her Deposit Account, Defendant then distributed Ms. Jones's refund to her minus all fees and charges due to Defendant and Republic Bank.

201. In tax year 2009, Ms. Jones purchased a Republic RAL. For that tax year, Defendant also charged Ms. Jones what it termed a "finance charge" of $8.34.

202. Defendant failed to accurately disclose the actual finance charges, which, when properly calculated in accordance with TILA, the North Carolina RAL law, and North Carolina's consumer protection law, include the Tax Refund Administration Fee. Ms. Jones was actually charged $38.29 in finance charges in tax year 2009, and the APR for that year was significantly higher than the 23.92% figure represented by Defendant in that year.

203. Therefore, Ms. Jones paid Defendant $29.95 in additional finance charges for a loan to defer payment of her tax preparation fees. Defendant provided inaccurate disclosures for Ms. Jones's Republic RAL in violation of North Carolina RAL laws, N.C. Gen. Stat. §53-249.

**WILLIAM REYNOLDS**

204. William Reynolds has been a customer of Defendant since at least the 2009 tax year. In that tax year, Mr. Reynolds was eligible for and received the EITC. Defendant prepared tax returns for Mr. Reynolds and also facilitated a RAL at one of Defendant's offices. Specifically, Defendant facilitated an ERC for Mr. Reynolds in the 2009 tax year.

51

205.     Defendant charged Mr. Reynolds $300 for tax preparation in the 2009 tax year. Mr. Reynolds did not pay these fees at the time of service, but deferred payment to be taken out of his tax refund.

206.     In tax year 2009, Defendant also charged Mr. Reynolds a "Tax Refund Administration Fee" of $29.95 to set up a Deposit Account into which the IRS deposited his tax refund. After the IRS deposited Mr. Reynolds's tax refund into his Deposit Account, Defendant then issued an electronic check to Mr. Reynolds for his refund minus all fees and charges due to Defendant and Republic Bank.

207.     Defendant failed to disclose the finance charge, which, when properly calculated in accordance with TILA, the North Carolina RAL law, and North Carolina consumer protection law, includes the Tax Refund Administration Fee. Mr. Reynolds was actually charged $38.29 in finance charges in tax year 2009, and the APR for that year was significantly higher than the 23.92% figure represented by Defendant in that year.

208.     Therefore, Mr. Reynolds paid Defendant $29.95 in finance charges for a loan to defer payment of his tax preparation fees. Defendant did not provided Mr. Reynolds with any disclosures regarding the APR or finance charges for his ERC in violation of North Carolina RAL laws, N.C. Gen. Stat. §53-249.

   **I.**     **WISCONSIN.**

          **TERRANCE PATTERSON**

209.     Terrance Patterson has been a customer of Defendant since at least the 2010 tax year. Defendant prepared tax returns for Mr. Patterson and also facilitated a RAL at one of Defendant's offices. Specifically, Defendant facilitated an ERD for Mr. Patterson in the 2010 tax year.

210.    Defendant charged Mr. Patterson $327 for tax preparation in the 2010 tax year. Mr. Patterson did not pay these fees at the time of service, but deferred payment to be taken out of his tax refund.

211.    In tax year 2010, Defendant also charged Mr. Patterson a "Tax Refund Administration Fee" of $29.95 to set up a Deposit Account into which the IRS deposited his tax refund.  After the IRS deposited Mr. Patterson's tax refund into his Deposit Account, Defendant then made a deposit into Mr. Patterson's personal bank account for his refund minus all fees and charges due to Defendant and Republic Bank.

212.    Therefore, Mr. Patterson paid Defendant $29.95 in finance charges for a loan to defer payment of his tax preparation fees.  Defendant did not provide Mr. Patterson with any disclosures regarding the APR or finance charges for his ERD in violation of Wisconsin RAL laws (§421.101, Wis. Stats., *et. Seq.*)

213.    Defendant received a portion of the loan fees and finance charges on Mr. Patterson's ERD in violation of §422.310(2), Wis. Stats.

## VII.    CLASS ACTION ALLEGATIONS.

### A.    CLASS DEFINITION.

214.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs seek certification of the following Classes (or alternative Classes) defined as follows:

### NATIONAL CLASS (SANTA BARBARA BANK & TRUST PERIOD)

215.    The National Class is defined as follows:  All natural persons residing in the United States who after January 18, 2008 received an SBBT RAL Product facilitated by Defendant, and Defendant's tax preparation fees were deducted from the Temporary Deposit Account established for the RAL Product.

216.    Specifically excluded from the Class are:  (a) all federal court judges who preside over this case and their spouses; (b) all persons who elect to exclude themselves from the Class; (c) all persons who have previously executed and delivered to Defendant releases for all of their Class claims; and (d) Defendant's employees, officers, directors, agents, and representatives and their family members.

217.    Plaintiff Douglas Glover is an adequate class representative for the National Class.

### ARKANSAS CLASS

218.    The Arkansas Class is defined as follows:  All natural persons residing in the State of Arkansas who after December 2, 2006 (a) received an ERC or ERD facilitated by Defendant and Defendant's tax preparation fees were deducted from the Deposit Account established for the ERC or ERD, or (b) received a Republic RAL facilitated by Defendant.

219.    Specifically excluded from the Class are:  (a) all federal court judges who preside over this case and their spouses; (b) all persons who elect to exclude themselves from the Class; (c) all persons who have previously executed and delivered to Defendant releases for all of their Class claims; and (d) Defendant's employees, officers, directors, agents, and representatives and their family members.

220.    Plaintiffs Zaneta Houston and Daphne Shorter are adequate class representatives for the Arkansas Class.

### CALIFORNIA CLASS

221.    The California Class is defined as follows:  All natural persons residing in the State of California who after November 17, 2007 (a) received an Electronic Refund Check ("ERC") or Electronic Refund Deposit ("ERD") facilitated by Defendant and Defendant's tax

preparation fees were deducted from the Deposit Account established for the ERC or ERD, or (b) received a Republic RAL facilitated by Defendant.

222.    Specifically excluded from the Class are:  (a) all federal court judges who preside over this case and their spouses; (b) all persons who elect to exclude themselves from the Class; (c) all persons who have previously executed and delivered to Defendant releases for all of their Class claims; and (d) Defendant's employees, officers, directors, agents, and representatives and their family members.

223.    Plaintiffs Charles Madubuike, George Washington, Jr. and Margaret Washington are adequate class representatives for the California Class.

## FLORIDA CLASS

224.    The Florida Class is defined as follows:  All natural persons residing in the State of Florida who after November 17, 2007 (a) received an Electronic Refund Check ("ERC") or Electronic Refund Deposit ("ERD") facilitated by Defendant and Defendant's tax preparation fees were deducted from the Deposit Account established for the ERC or ERD, or (b) received a Republic RAL facilitated by Defendant.

225.    Specifically excluded from the Class are:  (a) all federal court judges who preside over this case and their spouses; (b) all persons who elect to exclude themselves from the Class; (c) all persons who have previously executed and delivered to Defendant releases for all of their Class claims; and (d) Defendant's employees, officers, directors, agents, and representatives and their family members.

226.    Plaintiff Pamela Patterson is an adequate class representative for the Florida Class.

**ILLINOIS CLASS**

227.    The Illinois Class is defined as follows:  All natural persons residing in the State of Illinois who after November 17, 2006 (a) received an Electronic Refund Check ("ERC") or Electronic Refund Deposit ("ERD") facilitated by Defendant and Defendant's tax preparation fees were deducted from the Deposit Account established for the ERC or ERD, or (b) received a Republic RAL facilitated by Defendant.

228.    Specifically excluded from the Class are:  (a) all federal court judges who preside over this case and their spouses; (b) all persons who elect to exclude themselves from the Class; (c) all persons who have previously executed and delivered to Defendant releases for all of their Class claims; and (d) Defendant's employees, officers, directors, agents, and representatives and their family members.

229.    Plaintiff Timothy Rowden is an adequate class representative for the Illinois Class.

**MARYLAND CLASS**

230.    The Maryland Class is defined as follows:  All natural persons residing in the State of Maryland who after January 3, 2009 (a) received an Electronic Refund Check ("ERC") or Electronic Refund Deposit ("ERD") facilitated by Defendant and Defendant's tax preparation fees were deducted from the Deposit Account established for the ERC or ERD, or (b) received a Republic RAL facilitated by Defendant.

231.    Specifically excluded from the Class are:  all federal court judges who preside over this case and their spouses; all persons who elect to exclude themselves from the Class; all persons who have previously executed and delivered to Defendant releases for all of their Class

claims; and Defendant's employees, officers, directors, agents, and representatives and their family members.

232. Plaintiff Keonna Brown is an adequate class representative for the Maryland Class.

## MINNESOTA CLASS

233. The Minnesota Class is defined as follows: All natural persons residing in the State of Minnesota who after February 1, 2006 (a) received an Electronic Refund Check ("ERC") or Electronic Refund Deposit ("ERD") facilitated by Defendant and Defendant's tax preparation fees were deducted from the Deposit Account established for the ERC or ERD, or (b) received a Republic RAL facilitated by Defendant.

234. Specifically excluded from the Class are: (a) all federal court judges who preside over this case and their spouses; (b) all persons who elect to exclude themselves from the Class; (c) all persons who have previously executed and delivered to Defendant releases for all of their Class claims; and (d) Defendant's employees, officers, directors, agents, and representatives and their family members.

235. Plaintiff Heather Reyes is an adequate class representative for the Minnesota Class.

## NEW YORK CLASSES

236. **<u>New York State Class</u>**: All natural persons residing in the State of New York who after February 1, 2009 (a) received an Electronic Refund Check ("ERC") or Electronic Refund Deposit ("ERD") facilitated by Defendant and Defendant's tax preparation fees were deducted from the Deposit Account established for the ERC or ERD, or (b) received a Republic RAL facilitated by Defendant.

237. **New York State Sub-Class:** All natural persons residing in the State of New York, in an area with a population of less than one million, who after February 1, 2009 (a) received an Electronic Refund Check ("ERC") or Electronic Refund Deposit ("ERD") facilitated by Defendant and Defendant's tax preparation fees were deducted from the Deposit Account established for the ERC or ERD, or (b) received a Republic RAL facilitated by Defendant.

238. **New York City Sub-Class:** All natural persons residing in the City of New York who after February 1, 2009 (a) received an Electronic Refund Check ("ERC") or Electronic Refund Deposit ("ERD") facilitated by Defendant and Defendant's tax preparation fees were deducted from the Deposit Account established for the ERC or ERD, or (b) received a Republic RAL facilitated by Defendant.

239. Specifically excluded from each Class are: (a) all federal court judges who preside over this case and their spouses; (b) all persons who elect to exclude themselves from the Class; (c) all persons who have previously executed and delivered to Defendant releases for all of their Class claims; and (d) Defendant's employees, officers, directors, agents, and representatives and their family members.

240. Plaintiffs Ronald Topping and Kevin and Yolanda Goodwin are adequate class representatives for the New York Classes.

### NORTH CAROLINA CLASS

241. The North Carolina Class is defined as follows: All natural persons residing in the State of North Carolina who after January 12, 2008 (a) received an Electronic Refund Check ("ERC") or Electronic Refund Deposit ("ERD") facilitated by Defendant and Defendant's tax preparation fees were deducted from the Deposit Account established for the ERC or ERD, or (b) received a Republic RAL facilitated by Defendant.

242.     Specifically excluded from the Class are:  (a) all federal court judges who preside over this case and their spouses; (b) all persons who elect to exclude themselves from the Class; (c) all persons who have previously executed and delivered to Defendant releases for all of their Class claims; and (d) Defendant's employees, officers, directors, agents, and representatives and their family members.

243.     Plaintiffs Douglas Glover, Shamira Jones, and William Reynolds are adequate class representatives for the North Carolina Class.

### WISCONSIN CLASS

244.     The Wisconsin Class is defined as follows:  All natural persons residing in the State of Wisconsin who after December 20, 2009 (a) received an Electronic Refund Check ("ERC") or Electronic Refund Deposit ("ERD") facilitated by Defendant and Defendant's tax preparation fees were deducted from the Deposit Account established for the ERC or ERD, or (b) received a Republic RAL facilitated by Defendant.

245.     Specifically excluded from the Class are:  (a) all federal court judges who preside over this case and their spouses; (b) all persons who elect to exclude themselves from the Class; (c) all persons who have previously executed and delivered to Defendant releases for all of their Class claims; and (d) Defendant's employees, officers, directors, agents, and representatives and their family members.

246.     Plaintiff Terrance Patterson is an adequate class representative for the Wisconsin Class.

### MULTI-STATE CLASS

247.     The Multi-State Class is defined as follows:  All natural persons residing in one of the Multi-States who (a) received an Electronic Refund Check ("ERC") or Electronic Refund

Deposit ("ERD") facilitated by Defendant and Defendant's tax preparation fees were deducted from the Deposit Account established for the ERC or ERD, or (b) received a Republic RAL facilitated by Defendant.

248.    Specifically excluded from the Class are:  (a) all federal court judges who preside over this case and their spouses; (b) all persons who elect to exclude themselves from the Class; (c) all persons who have previously executed and delivered to Defendant releases for all of their Class claims; and (d) Defendant's employees, officers, directors, agents, and representatives and their family members.

249.    The Multi-States are the following states which have statutes which were enacted and designed to protect consumers from deceptive and unconscionable practices and  unfair, deceptive and/or fraudulent business practices prevalent in the for-profit tax preparer industry: Alaska, Arizona, Colorado, Connecticut, Delaware, District of Columbia, Hawaii, Idaho, Indiana, Kansas, Kentucky, Louisiana, Maine, Massachusetts, Michigan, Missouri, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Dakota, Texas, Utah, Vermont, Washington, West Virginia and Wyoming (herein referred to as the "Multi-States").[9]

---

[9]The relevant statutes are as follows: Alas. Stat. §45.50.471 *et seq.*, A.R.S. § 44-1521 *et seq.*, C.R.S. 6-1-101 *et seq.*, Conn. Gen. Stat. § 42-110(a) *et seq.*, 6 Del. C. § 2501 *et seq.*, D.C. Code Ann. §28-3901 *et seq.*, HRS § 481A-1 *et seq.*, Idaho Code § 48-601 *et seq.*,  Burns Ind. Code Ann. § 24-5-0.5-1 *et seq.*, K.S.A. § 50-623 *et seq.*, KRS § 367.110 *et seq.*, La.R.S. § 51:1405 *et seq.*, 5 M.R.S. § 205-A *et seq.*, ALM GL ch. 93A, § 1 *et seq.*, MCLS § 445.901 *et seq.*, R.S.Mo. *et seq.*, R.R.S. Neb. § 87-301 *et seq.*, Nev. Rev. Stat. Ann. § 598.0903 *et seq.*, N.H. Rev. Stat. Ann. § 358-A:1 *et seq.*, N.J. Stat. § 56:8-1 *et seq.*, N.M. Stat. Ann. § 57-12-1 *et seq.*, N.D. Cent. Code, § 51-10-01 *et seq.*, ORC Ann. 4165.01 *et seq.*; ORC Ann. 1345.01 *et seq.*, 15 Okl. St. § 751 *et seq.*, ORS § 646.605 *et seq.*, 73 P.S. § 201-1 *et seq.*, R.I. Gen. Laws § 6-13.1-1 *et seq.*, S.D. Codified Laws § 37-24-1 *et seq.*, Tex. Bus. & Com. Code § 17.41 *et seq.*, Utah Code Ann. § 13-11-1 *et seq.*, 9 V.S.A. § 2451 *et seq.*, Rev. Code Wash. (ARCW) § 19.86.010 *et seq.*, W. Va. Code § 46A-6-101 *et seq.*,Wyo. Stat. § 40-12-101 *et seq.*

250.     The Class Period for each of the classes defined above continues to run until the resolution of this action.  Plaintiffs reserve the right to revise or refine the definition of each class based upon information learned from discovery.

**B.     RULE 23(A) PREREQUISITES.**

251.     **Numerosity.**    Each Class is so numerous that joinder of all members is impracticable.  At this time, Plaintiffs do not know the exact size of each Class.  Based on information and belief, each Class is comprised of at least thousands of members so as to render joinder of all Class Members impracticable.

252.     **Commonality.**  Common questions of law and fact predominate over individual issues.  There is a well-defined community of interest in the questions of law and fact involved affecting members of each Class.  The questions of law and fact common to each Class predominate over questions affecting only individual Class members, and include, but are not limited to, the following:

(a)     For the National Class, whether Defendant disclosed to consumers for which it facilitated SBBT RAL Products the interest rate, calculated as required by TILA, and if not, whether such failure violated California RAL laws and California's consumer protection laws;

(b)     For the National Class, whether Defendant included the $30.95 charge for the Account Handling Fee as part of the finance charge calculation when it disclosed the interest rate for the SBBT RAL Products it facilitated in the United States during the Class Period, and if not, whether such failure violated California RAL laws and California's consumer protection laws;

(c)     For the National Class, whether Defendant provided any disclosures of the interest rate for Refund Transfers (which included deferral of payment of the tax preparation fees) it facilitated to consumers in the United States during the Class Period, and if not, whether such failure violated California RAL laws and California's consumer protection laws;

(d)     For the National Class, whether Defendant provided the specific multiple disclosures required by California RAL laws when it facilitated RALs in the United States, and if not, whether such failure violated California RAL laws and California's consumer protection laws;

61

(e)    For the National Class, whether the $30.95 charge for the Account Handling Fee constitutes interest under California's usury laws;

(f)    For the National Class, whether Defendant's conduct regarding the SBBT RAL Products violated California's usury laws;

(g)    For the National Class, whether Defendant's violations of California's usury laws constitute violations of Cal. Bus. & Prof. Code §17200, *et seq.*;

(h)    For each state Class, whether Defendant disclosed to consumers for which it facilitated and/or made Republic RALs, ERCs, or ERDs the interest rate, calculated as required by TILA, and if not, whether such failure violated state RAL and consumer protection laws;

(i)    For each state Class, whether Defendant included the $29.95 or $32.95 charge for the Tax Refund Administration Fee as part of the finance charge calculation when it disclosed the interest rate for the Republic RALs it facilitated and/or made during the Class Period, and if not, whether such failure violated state RAL and consumer protection laws;

(j)    For each state Class, whether Defendant provided any disclosure of the interest rate for ERCs or ERDs and Tax Refund Administration Fees it facilitated and  made to consumers during the Class Period, and if not, whether such failure violated state RAL and consumer protection laws;

(k)    For each state Class, whether Defendant provided the specific disclosures required by the applicable state RAL laws when it facilitated and made Republic RALs, ERCs, or ERDs, and if not, whether such failure violated state RAL and consumer protection laws;

(l)    For the Arkansas, Maryland, New York, and Wisconsin Classes, whether Defendant received a portion of the finance charge or other loan fees for Republic RALs, ERCs, or ERDs that it facilitated and made in Arkansas, Maryland, New York, and Wisconsin during the Class Period, and if so, whether the receipt of such fee violated Arkansas, Maryland, New York, and Wisconsin RAL and consumer protection laws;

(m)    For the Minnesota Class, whether the Republic RAL, ERC, or ERD facilitation agreements that Defendant entered into with its clients in Minnesota contained mandatory arbitration clauses; whether Defendant provided the specific disclosures required by the Minnesota RAL laws regarding mandatory arbitration clauses in Republic RAL, ERC, or ERD facilitation agreements; and if Defendant did not provide such disclosures, whether such failure violated the Minnesota RAL laws, the UTPA, and the UDTPA;

62

(n)     For the Multi-State Class, whether Defendant calculated interest rates using the guidelines established under TILA;

(o)     For the Multi-State Class, whether Defendant failed to abide by the written disclosure requirements of TILA as relates to interest rates;

(p)     For the Multi-State Class, whether violations of TILA constitute violations of the consumer protection statutes of the Multi-States;

(q)     For the Multi-State Class, whether Defendant disclosed to consumers for which it facilitated Republic RALs, ERCs, or ERDs the interest rate, calculated as required by TILA, and if not, whether such failure violated the consumer protection statutes of the Multi-States;

(r)     For the Multi-State Class, whether Defendant included the Tax Refund Administration Fee as part of the finance charge calculation when it disclosed the interest rate for Republic RALs, ERCs, or ERDs it facilitated in the Multi-States during the Class Period, and if not, whether such failure violated the consumer protection statutes of the Multi-States; and

(s)     For the Multi-State Class, whether Defendant provided any disclosure of the interest rate for ERCs or ERDs it facilitated to consumers in the Multi-States during the Class Period, and if not, whether such failure violated the consumer protection statutes of the Multi-States.

253.    **Typicality.**  Plaintiffs' claims are typical of the other Class Members' claims.  As described above, Defendant uses common practices, applications, forms and disclosures in committing the conduct that Plaintiffs allege damaged them and the Class Members.  Defendant uniformly violated state Refund Anticipation Loan laws and consumer protection statutes by engaging in the conduct as described above, and these violations had the same effect on each member of each Class.

254.    **Adequacy.**  Plaintiffs are adequate representatives of each Class because they fit within each class definition and their interests do not conflict with the interests of the members of each Class they seek to represent.  Plaintiffs will prosecute this action vigorously for the benefit of the entire Class.  Plaintiffs are represented by experienced and able attorneys.  Class

counsel have litigated numerous class actions and complex cases, and Plaintiffs' counsel intend to prosecute this action vigorously for the benefit of the entire Class. Plaintiffs and class counsel can and will fairly and adequately protect the interests of all of the members of each Class.

### C.     RULE 23(B) PREREQUISITES.

255.     Questions of law and fact common to the Class predominate over questions affecting only individual Members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The statutory damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for the members of the proposed Classes to effectively redress the wrongs done to them on an individual basis. Even if the members of each Class themselves could afford such individual litigation, it would be an unnecessary burden on the courts.

256.     Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by Defendant's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in just one case.

## VIII.   CAUSES OF ACTION.

### A.     NATIONAL CLASS.

#### 1.     First Cause of Action: Violation of California Refund Anticipation Loan Laws (Cal. Bus. & Prof. Code, §22250, *et seq.*).

257.     Plaintiffs incorporate by reference each of the foregoing allegations.

258.     The named plaintiffs and all Class Members are "clients" as defined by Cal. Bus. & Prof. Code § 22251(e).

259. Defendant is a "tax preparer" as defined by Cal. Bus. & Prof. Code § 22251(a).

260. The SBBT RAL Products marketed, facilitated and made by Defendant are RALs as defined by Cal. Bus. & Prof. Code § 22251(f).

261. Defendant violated Cal. Bus. & Prof. Code §§ 22253.1(d)(1)-(2) and Cal. Bus. & Prof. Code § 22253.1(f)(2) by failing to disclose, at multiple points throughout the RAL facilitation process, forms separate from the RAL application articulating the interest rate "using the guidelines established under the federal Truth in Lending Act *(15 U.S.C. Sec. 1601* and following)" for each SBBT RAL Product it facilitated for a Class Member. For each Refund Transfer, Defendant failed to disclose any interest rate or finance charge. For each SBBT RAL or RAL Advance, Defendant failed to accurately disclose the interest rate, as it did not include the Account Handling Fee as part of the finance charge.

262. Defendant violated Cal. Bus. & Prof. Code §§ 22253.1(d)(1)-(2), and Cal. Bus. & Prof. Code § 22253.1(f)(2) by failing to disclose first on a *clear* written document, and second in a written or electronic form, the specified, multiple disclosures required by Cal. Bus. & Prof. Code §§ 22253.1(d)(1)-(2) to each Class Member who received a SBBT RAL Product. The disclosures were not clear. The disclosures did not include all the specific disclosures in the format specified by California RAL laws.

263. Defendant violated Cal. Bus. & Prof. Code §§ 22253.1(b)-(c) and Cal. Bus. & Prof. Code § 22253.1(f)(2) by not prominently posting the interest rate, accurately calculated consistent with TILA, in each office where Defendant facilitated a SBBT RAL Product for a Class Member.

264. Each of Defendant's violations set forth above was willful.

65

265.    For each violation set forth herein Defendant is liable under Cal. Bus. & Prof. Code § 22257 for (a) statutory damages of $1,000, and (b) reasonable attorney's fees and costs of prosecution.  Cal. Bus. & Prof. Code § 22257.

**2.      Second Cause of Action:  Violation of Cal. Bus. & Prof. Code §17500, *et seq*. – False Advertising.**

266.    Plaintiffs incorporate by reference each of the foregoing allegations.

267.    Defendant is a "person" for the purposes of Cal. Bus. & Prof. Code §17506.

268.    Pursuant to Cal. Bus. & Prof. Code §17500, it is unlawful for any person or business to make untrue or misleading representations with regard to the services they advertise, with the intent of inducing consumers to purchase services, among other things.

269.    Each of Defendant's violations of California RAL laws set forth above in the First Cause of Action is also a violation of Cal. Bus. & Prof. Code §17500.

270.    In addition, Defendant violated Cal. Bus. & Prof. Code §17500, *et seq*. by not accurately disclosing the finance charge for each RAL product purchased by a Class Member within the Class Period.  For each Refund Transfer, Defendant failed to disclose any interest rate or finance charge.   For each SBBT RAL or RAL Advance, Defendant failed to accurately disclose the interest rate, as it did not include the Account Handling Fee as part of the finance charge.  Each of these acts constitutes a violation of Cal. Bus. & Prof. Code §17500, *et seq*., in that Defendant, with the intent to induce California consumers to purchase loan products and tax preparation services, has made and disseminated untrue and misleading statements, which it knew or reasonably should have known were untrue or misleading at the time the statements were made.

271.    Plaintiffs and the Class Members have suffered injury in fact and have lost money as a result of Defendant's untrue and misleading representations.  Indeed, Plaintiff and members

of the putative class purchased Defendant's RAL products in reliance on the untrue and misleading representations set forth herein. If Plaintiffs had known of the untrue and misleading nature of Defendant's representations, they would not have purchased the SBBT RAL Products. As such, they are entitled to injunctive relief and restitution, in an amount to be proven at trial.

### 3. Third Cause of Action: Violation of Cal. Bus. & Prof. Code §17200, *et seq*. -- Unlawful, Fraudulent, and Unfair Business Acts and Practices.

272. Plaintiffs incorporate by reference each of the foregoing allegations.

273. Each of Defendant's violations of the California RAL Laws and Cal. Bus. & Prof. Code §17500, *et seq*., set forth above is an "unlawful" act providing the basis for a finding of liability under the "unlawful" prong of Cal. Bus. & Prof. Code §17200, *et seq*.

274. Each of Defendant's violations of the California usury laws set forth in the Fourth Cause of Action is an "unlawful" act providing the basis for a finding of liability under the "unlawful" prong of Cal. Bus. & Prof. Code §17200, *et seq*.

275. In addition, each of Defendant's violations of TILA set forth in Section 6 of this Complaint is an "unlawful" act providing the basis for a finding of liability under the "unlawful" prong of Cal. Bus. & Prof. Code §17200, *et seq*.

276. In addition, Defendant violated Cal. Bus & Prof. Code §17200, *et seq*. by not accurately disclosing the finance charge for each RAL product purchased by a Class Member within the Class Period. For each Refund Transfer, Defendant failed to disclose any interest rate or finance charge. For each SBBT RAL and RAL Advance, Defendant failed to accurately disclose the interest rate, as it did not include the Tax Refund Administration Fee as part of the finance charge. Each of these acts constitutes an unfair, unlawful, and deceptive business act and practice in violation of Cal. Bus. & Prof. Code §17200, *et seq*.

277.     Defendant's unfair, unlawful, and deceptive acts and practices alleged herein are objectively material to a reasonable consumer and have deceived and/or are likely to deceive Plaintiffs, the Class Members and other reasonable consumers.

278.     Plaintiffs and the Class Members have suffered injury in fact and have lost money as a result of Defendant's untrue and misleading representations.  Indeed, Plaintiff and members of the putative class purchased Defendant's RAL products in reliance on the untrue and misleading representations set forth herein.  If Plaintiffs had known of the untrue and misleading nature of Defendant's representations, they would not have purchased the SBBT RAL Product. As such, they are entitled to injunctive relief and restitution, in an amount to be proven at trial.

**4.     Fourth Cause of Action:  Violation of California Usury Laws.**

279.     Plaintiffs incorporate by reference each of the foregoing allegations.

280.     Cal. Const., art. XV, § 1 states that "[t]he rate of interest upon the loan or forbearance of any money ... shall be 7 percent per annum but it shall be competent for the parties ... to contract in writing for a rate of interest ... at a rate not exceeding 10 percent per annum."  Each SBBT RAL Product facilitated and made by Defendant during the Class Period is a "contract" for purposes of Cal. Const., art. XV, § 1.  The interest rate, properly calculated, for each of the SBBT RAL Products facilitated and made by Defendant during the Class Period was greater than 7% and 10%.  Accordingly, each and every SBBT RAL Product facilitated and made by Defendant during the Class Period violated the maximum lawful rate of interest established by Cal. Const., art. XV, § 1.

281.     Cal. Civ. Code §1916.12-1 provides that "[t]he rate of interest upon the loan or forbearance of any money ... shall be seven dollars upon the one hundred dollars for one year ...." The interest, properly calculated, for each of the SBBT RAL Products facilitated and made by Defendant during the Class Period was greater than 7%.  Accordingly, each and every SBBT

RAL Product facilitated and made by Defendant during the Class Period violated the maximum lawful rate of interest established by Cal. Civ. Code §1916.12-1. Pursuant to Cal. Civ. Code §1916.12-3, each Plaintiff and Class Member is entitled to damages equal to 1) the amount of the usurious interest exacted by Defendant, and 2) three times the usurious interest exacted by Defendant.

282.    Additionally, Cal. Civ. Code §1916.12-1 also states that "it shall be competent for parties to contract for the payment and receipt of a rate of interest not exceeding twelve dollars on the one hundred dollars for one year." Each SBBT RAL Product facilitated and made by Defendant during the Class Period is a "contract" for purposes of Cal. Civ. Code §1916.12-1. The interest rate, properly calculated, for each of the Republic RALs, ERCs, and ERDs facilitated and made by Defendant during the Class Period was greater than 12%. Accordingly, each and every SBBT RAL Product facilitated and made by Defendant during the Class Period violated the maximum lawful rate of interest established by Cal. Civ. Code §1916.12-1. Pursuant to Cal. Civ. Code §1916.12-3, each Plaintiff and Class Member is entitled to damages equal to 1) the amount of the usurious interest exacted by Defendant, and 2) three times the usurious interest exacted by Defendant.

283.    Pursuant to Cal. Civ. Code §1916.12-2, "[n]o person, company, association or corporation shall directly or indirectly take or receive in money ... any greater sum or any greater value for the loan or forbearance of money ... than at the rate of twelve dollars upon one hundred dollars for one year." Each of the SBBT RAL Products facilitated and made by Defendant includes a "loan or forbearance" for the purposes of Cal. Civ. Code §1916.12-2. The interest rate, properly calculated, for each of the SBBT RAL Products facilitated and made by Defendant during the Class Period was greater than 12%. Accordingly, each and every SBBT RAL Product

facilitated and made by Defendant during the Class Period violated Cal. Civ. Code §1916.12-2. For each violation set forth herein, Defendant is liable under Cal. Civ. Code §1916.12-2 establishing that the agreement to pay interest is void.

**B.    ARKANSAS.**

**1.    First Cause of Action:  Violation of Arkansas Refund Anticipation Loan Act (Ark. Code Ann. §§ 4-116-101, *et seq*.).**

284.    Plaintiffs incorporate by reference each of the foregoing allegations.

285.    The named plaintiffs and all Class Members are "consumers" for the purposes of the Arkansas Refund Anticipation Loan Act ("ARALA") as defined by Ark. Code Ann. §4-116-102(1).

286.    Defendant is a "facilitator" as defined by Ark. Code Ann. §4-116-102(3).

287.    The Republic RALs, ERCs, and ERDs facilitated and made by Defendant are RALs as defined by Ark. Code Ann. §4-116-102(4) & (5).

288.    Defendant violated Ark. Code Ann. §4-116-107(2) and Ark. Code Ann. §4-116-103(1) &(2) by receiving a portion of the loan fees and finance charge on each Republic RAL, ERC, and ERD it facilitated and made for a Class Member.

289.    Defendant violated Ark. Code Ann. §4-116-105(a)(4)(B), Ark. Code Ann. §4-116-103(1) &(2) and Ark. Code Ann. §4-116-107(5) by failing to disclose on a colored-paper form separate from the RAL application in 14-point type face the interest rate as "calculated utilizing the guidelines established under the federal Truth in Lending Act, 15 U.S.C. §1601, *et seq*., as it existed on January 1, 2009" for each Republic RAL, ERC, and ERD it facilitated and made for a Class Member.  For each ERC and ERD, Defendant failed to disclose any interest rate or finance charge.  For each Republic RAL, Defendant failed to accurately disclose the

70

interest rate, as it did not include the Tax Refund Administration Fee as part of the finance charge.

290.    Defendant violated Ark. Code Ann. §4-116-105(a), Ark. Code Ann. §4-116-103(1) &(2) and Ark. Code Ann. §4-116-107(5) by failing to disclose on a *colored-paper* form *separate* from the RAL application in *14-point type face* the specified disclosures required by Ark. Code Ann. §4-116-105(a) to each Class Member who received a Republic RAL, ERC, and ERD.  The disclosures were not on colored paper.  The disclosures were not on a form separate from the RAL application.  The disclosures were not in 14-point type face.  The disclosures did not include all the specific disclosures in the format specified by ARALA.

291.    Defendant violated Ark. Code Ann §4-116-104, Ark. Code Ann. §4-116-103(1)&(2) and Ark. Code Ann. §4-116-107(5) by not prominently posting the interest rate, accurately calculated consistent with TILA, in each office where Defendant facilitated and made a Republic RAL, ERC, and ERD for a Class Member.

292.    Each of Defendant's violations set forth above was willful.

293.    For each violation set forth herein Defendant is liable under Ark. Code Ann. §4-116-108(b) for (a) actual and compensatory damages; (b) statutory damages of $1,000; and (c) reasonable attorney's fees and costs of prosecution.  Ark. Code Ann. §4-116-108(b).

## 2.    Second Cause of Action:  Violation of the Arkansas Deceptive Trade Practices Act.

294.    Plaintiffs incorporate by reference each of the foregoing allegations.

295.    Defendant is a "person" for the purposes of the Arkansas Deceptive Trade Practices Act (ADTPA) pursuant to Ark. Code Ann. §4-88-102(5).

71

296.     Pursuant to Ark. Code Ann. §4-116-108(a), a facilitator who violates any provision of ARALA also violates the ADTPA.  Accordingly, each of Defendant's violations of ARALA set forth above is also a violation of the ADTPA.

297.     In addition, each of Defendant's violations of the Arkansas Usury laws set forth in the Third Cause of Action is also a violation of the ADTPA.

298.     In addition, pursuant to Ark. Code Ann. §4-88-107(a)(10), it is unlawful for any person to engage in any unconscionable, false, or deceptive act or practice in business, commerce or trade.  *See* AMI 3400.  Throughout the Class Period, Defendant has engaged and continues to engage in unconscionable, unfair, and/or deceptive acts or practices harming Plaintiffs and the Classes, as described herein.  Defendant violated the ADTPA by not accurately disclosing the finance charge for each RAL product purchased by a Class Member within the Class Period.  For each ERC and ERD, Defendant failed to disclose any interest rate or finance charge.  For each Republic RAL, Defendant failed to accurately disclose the interest rate, as it did not include the Tax Refund Administration Fee as part of the finance charge.  Each of these acts constitutes unconscionable, unfair, and/or deceptive acts or practices harming Plaintiffs and the Classes in violation of the ADTPA.

299.     In addition to protecting individuals from unfair competition and/or deceptive trade practices, the ADTPA has an additional goal of making each state's consumer protection and enforcement consistent with the established policies of federal law relating to consumer protection.

300.     The federal Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601-1666j, and its implementing Regulation Z, 12 C.F.R. Part 226, are laws and regulations proscribing unfair,

deceptive, or unconscionable acts or practices, and a violation thereof is a violation of the ADTPA.

301.    By violating TILA in the manner described in Section VI of this Complaint, Defendant violated laws and regulations proscribing unfair, deceptive, or unconscionable acts or practices, therefore violating the ADTPA.

302.    Plaintiffs and the Class Members have a cause of action against Defendant pursuant to Ark. Code Ann. § 4–88-113 to recover damages as well as reasonable attorney's fees and costs.

### 3.    Third Cause of Action:  Violation of Arkansas Usury Laws.

303.    Plaintiffs incorporate by reference each of the foregoing allegations.

304.    Prior to repeal (effective January 1, 2011), Ark. Const. Art. 19, § 13(a)(i) provided that "the maximum lawful rate of interest on any contract . . . shall not exceed five percent (5%) per annum above the Federal Reserve Discount Rate at the time of the contract." Each transaction for a Republic RAL, ERC, and ERD facilitated and made by Defendant during the Class Period is a "contract" for the purposes of Ark. Const. Art. 19, § 13.  During the Class Period, the Federal Reserve Discount Rate has not exceeded 5.75%.  *See Historical Changes of the Target Federal Funds and Discount Rate*, http://www.newyorkfed.org/markets/statistics/dlyrates/fedrate.html.  The interest rate, properly calculated, for each of the Republic RALs, ERCs, and ERDs facilitated and made by Defendant during the Class Period was greater than 11.75%.  Accordingly, each and every transaction for a Republic RAL, ERC, and ERD facilitated and made by Defendant during the Class Period prior to January 1, 2011 violated the maximum lawful rate of interest established by Ark. Const. Art. 19, § 13(a)(ii).  Pursuant to Ark. Const. Art. 19, § 13(a)(ii) each Class Member is entitled to damages equal to twice the amount of interest paid.

305.     Prior to repeal (effective January 1, 2011), Ark. Const. Art. 19, § 13(b) provided that "[a]ll contracts for consumer loans and credit sales having a greater rate of interest than seventeen percent (17%) per annum shall be void as to principal and interest."  Each of the Republic RALs, ERCs, and ERDs facilitated and made by Defendant is a "contract for consumer loan or credit sale" for the purposes of Ark. Const. Art. 19, § 13(b).  *See* Ark. Const. Art. 19, § 13(c)(i); *Sloan v. Sears, Roebuck & Co.,* 228 Ark. 464, 308 S.W.2d 802 (1957).  The interest rate, properly calculated, for each of the Republic RALs, ERCs, and ERDs facilitated and made by Defendant during the Class Period was greater than 17%.  Accordingly, each and every transaction for a Republic RAL, ERC, and ERD facilitated and made by Defendant during the Class Period prior to January 1, 2011 violated Ark. Const. Art. 19, § 13(b).  Pursuant to Ark. Const. Art. 19, § 13(b), each such RAL is void as to principal and interest.

306.     Pursuant to Ark. Const. Amendment 89, § 3 (effective January 1, 2011), the maximum lawful rate of interest on loans or contracts (other than government bonds and loans and loans by certain federally insured depository institutions) shall not exceed seventeen percent (17%) per annum.  Each Republic RAL, ERC, and ERD facilitated and made by Defendant during the Class Period is a "loan or contract" for the purposes of Ark. Const. Amendment 89, § 3.  The interest rate, properly calculated, for each of the Republic RALs, ERCs, and ERDs facilitated and made by Defendant during the Class Period was greater than 17%.  Accordingly, each and every Republic RAL, ERC, and ERD facilitated and made by Defendant during the Class Period on or after January 1, 2011 violated the maximum lawful rate of interest established by Ark. Const. Amendment 89, § 3.  Pursuant to Ark. Const. Amendment 89, § 6 (b) each such RAL is void as to principal and interest, and each Class Member is entitled to attorney's fees and costs.

307.     Pursuant to Ark. Code Ann. §4-57-105, "no person or corporation shall, directly or indirectly, take or receive in money, goods, things in action, or any other valuable thing, any greater sum or value for loan or forbearance of money or goods, things in action, or any other valuable thing, than is prescribed in §4-57-104."  Ark. Code Ann. §4-57-104 established the maximum rate of interest permitted as that amount set forth in the Arkansas Constitution.  Each of the Republic RALs, ERCs, and ERDs facilitated and made by Defendant includes a "loan or forbearance" for the purposes of Ark. Code Ann. §4-57-105.  The interest rate, properly calculated, for each of the Republic RALs, ERCs, and ERDs facilitated and made by Defendant during the Class Period was greater than the maximum interest rate established by the Arkansas Constitution, as set forth above.  Accordingly, each and every Republic RAL, ERC, and ERD facilitated and made by Defendant during the Class Period violated Ark. Code Ann. §4-57-105. For each violation set forth herein, Defendant is liable under Ark. Code Ann. §4-57-108 for reasonable attorney's fees and costs of prosecution.

## C.     CALIFORNIA.

### 1.     First Cause of Action:  Violation of California Refund Anticipation Loan Laws (Cal. Bus. & Prof. Code § 22250, *et seq.*).

308.     Plaintiffs incorporate by reference each of the foregoing allegations.

309.     The named plaintiffs and all Class Members are "clients" as defined by Cal. Bus. & Prof. Code § 22251(e).

310.     Defendant is a "tax preparer" as defined by Cal. Bus. & Prof. Code § 22251(a).

311.     The Republic RALs, ERCs, and ERDs marketed, facilitated and made by Defendant are RALs as defined by Cal. Bus. & Prof. Code § 22251(f).

312.     Defendant violated Cal. Bus. & Prof. Code §§ 22253.1(d)(1)-(2) and Cal. Bus. & Prof. Code § 22253.1(f)(2) by failing to disclose, at multiple points throughout the RAL

facilitation process, forms separate from the RAL application articulating the interest rate "using the guidelines established under the federal Truth in Lending Act *(15 U.S.C. Sec. 1601* and following)" for each Republic RAL, ERC, and ERD it facilitated for a Class Member. For each ERC and ERD, Defendant failed to disclose any interest rate or finance charge. For each Republic RAL, Defendant failed to accurately disclose the interest rate, as it did not include the Tax Refund Administration Fee as part of the finance charge.

313.    Defendant violated Cal. Bus. & Prof. Code §§ 22253.1(d)(1)-(2), and Cal. Bus. & Prof. Code § 22253.1(f)(2) by failing to disclose first on a *clear,* written document, and second, in a written or electronic form, the specified multiple disclosures required by Cal. Bus. & Prof. Code §§ 22253.1(d)(1)-(2) to each Class Member who received a Republic RAL, ERC, and ERD. The disclosures were not clear. The disclosures did not include all the specific disclosures in the format specified by California RAL laws.

314.    Defendant violated Cal. Bus. & Prof. Code §§ 22253.1(b)-(c) and Cal. Bus. & Prof. Code § 22253.1(f)(2) by not prominently posting the interest rate, accurately calculated consistent with TILA, in each office where Defendant facilitated a Republic RAL, ERC, and ERD for a Class Member.

315.    Each of Defendant's violations set forth above was willful.

316.    For each violation set forth herein Defendant is liable under Cal. Bus. & Prof. Code § 22257 for (a) statutory damages of $1,000, and (b) reasonable attorney's fees and costs of prosecution. Cal. Bus. & Prof. Code § 22257.

**2.    Second Cause of Action:  Violation of Cal. Bus. & Prof. Code §17500, *et seq.* – False Advertising.**

317.    Plaintiffs incorporate by reference each of the foregoing allegations.

318.    Defendant is a "person" for the purposes of Cal. Bus. & Prof. Code §17506.

319.     Pursuant to Cal. Bus. & Prof. Code §17500, it is unlawful for any person or business to make untrue or misleading representations with regard to the services they advertise, with the intent of inducing consumers to purchase services, among other things.

320.     Each of Defendant's violations of California RAL laws set forth above in the First Cause of Action is also a violation of Cal. Bus. & Prof. Code §17500.

321.     In addition, Defendant violated Cal. Bus. & Prof. Code §17500, *et seq.* by not accurately disclosing the finance charge for each RAL product purchased by a Class Member within the Class Period.  For each ERC or ERD, Defendant failed to disclose any interest rate or finance charge.  For each Republic RAL, Defendant failed to accurately disclose the interest rate, as it did not include the Tax Refund Administration Fee as part of the finance charge.  Each of these acts constitutes a violation of Cal. Bus. & Prof. Code §17500, *et seq.*, in that Defendant, with the intent to induce California consumers to purchase loan products and tax preparation services, has made and disseminated untrue and misleading statements, which it knew or reasonably should have known were untrue or misleading at the time the statements were made.

322.     Plaintiffs and the Class Members have suffered injury in fact and have lost money as a result of Defendant's untrue and misleading representations.  Indeed, Plaintiff and members of the putative class purchased Defendant's RAL products in reliance on the untrue and misleading representations set forth herein.  If Plaintiffs had known of the untrue and misleading nature of Defendant's representations, they would not have purchased the Republic RAL, ERC, and/or ERD.  As such, they are entitled to injunctive relief and restitution, in an amount to be proven at trial.

       **3.**       **Third Cause of Action:  Violation of Cal. Bus. & Prof. Code §17200, *et seq*. -- Unlawful, Fraudulent, and Unfair Business Acts and Practices.**

323.     Plaintiffs incorporate by reference each of the foregoing allegations.

324.     Each of Defendant's violations of the California RAL Laws and Cal. Bus. & Prof. Code §17500, *et seq.*, set forth above is an "unlawful" act providing the basis for a finding of liability under the "unlawful" prong of Cal. Bus. & Prof. Code §17200, *et seq*.

325.     Each of Defendant's violations of the California usury laws set forth in the Fourth Cause of Action is an "unlawful" act providing the basis for a finding of liability under the "unlawful" prong of Cal. Bus. & Prof. Code §17200, *et seq*.

326.     In addition, each of Defendant's violations of TILA set forth in Section 6 of this Complaint is an "unlawful" act providing the basis for a finding of liability under the "unlawful" prong of Cal. Bus. & Prof. Code §17200, *et seq*.

327.     In addition, Defendant violated Cal. Bus. & Prof. Code §17200, *et seq.* by not accurately disclosing the finance charge for each RAL product purchased by a Class Member within the Class Period.  For each ERC or ERD, Defendant failed to disclose any interest rate or finance charge.  For each Republic RAL, Defendant failed to accurately disclose the interest rate, as it did not include the Tax Refund Administration Fee as part of the finance charge.  Each of these acts constitutes an unfair, unlawful, and deceptive business act and practice in violation of Cal. Bus. & Prof. Code §17200, *et seq*.

328.     Defendant's unfair, unlawful, and deceptive acts and practices alleged herein are objectively material to a reasonable consumer and have deceived and/or are likely to deceive Plaintiffs, the Class Members and other reasonable consumers.

329.     Plaintiffs and the Class Members have suffered injury in fact and have lost money as a result of Defendant's untrue and misleading representations.  Indeed, Plaintiff and members of the putative class purchased Defendant's RAL products in reliance on the untrue and misleading representations set forth herein.  If Plaintiffs had known of the untrue and misleading

Case: 1:12-cv-02949 Document #: 20 Filed: 06/22/12 Page 86 of 124 PageID #:238

nature of Defendant's representations, they would not have purchased the Republic RAL, ERC, and/or ERD.  As such, they are entitled to injunctive relief and restitution, in an amount to be proven at trial.

**4.      Fourth Cause of Action:  Violation of California Usury Laws.**

330.    Plaintiffs incorporate by reference each of the foregoing allegations.

331.    Cal. Const., art. XV, § 1 states that "[t]he rate of interest upon the loan or forbearance of any money ... shall be 7 percent per annum but it shall be competent for the parties ... to contract in writing for a rate of interest ... at a rate not exceeding 10 percent per annum."  Each Republic RAL, ERC, and ERD facilitated and made by Defendant during the Class Period is a "contract" for purposes of Cal. Const., art. XV, § 1.  The interest rate, properly calculated, for each of the Republic RALs, ERCs, and ERDs facilitated and made by Defendant during the Class Period was greater than 7% and 10%.  Accordingly, each and every Republic RAL, ERC, and ERD facilitated and made by Defendant during the Class Period violated the maximum lawful rate of interest established by Cal. Const., art. XV, § 1.

332.    Cal. Civ. Code §1916.12-1 provides that "[t]he rate of interest upon the loan or forbearance of any money ... shall be seven dollars upon the one hundred dollars for one year…."  The interest, properly calculated, for each of the Republic RALs, ERCs, and ERDs facilitated and made by Defendant during the Class Period was greater than 7%.  Accordingly, each and every Republic RAL, ERC, and ERD facilitated and made by Defendant during the Class Period violated the maximum lawful rate of interest established by Cal. Civ. Code §1916.12-1. Pursuant to Cal. Civ. Code §1916.12-3, each Plaintiff and Class Member is entitled to damages equal to 1) the amount of the usurious interest exacted by Defendant, and 2) three times the usurious interest exacted by Defendant.

333.    Additionally, Cal. Civ. Code §1916.12-1 also states that "it shall be competent for parties to contract for the payment and receipt of a rate of interest not exceeding twelve dollars on the one hundred dollars for one year."  Each Republic RAL, ERC, and ERD facilitated and made by Defendant during the Class Period is a "contract" for purposes of Cal. Civ. Code §1916.12-1.  The interest rate, properly calculated, for each of the Republic RALs, ERCs, and ERDs facilitated and made by Defendant during the Class Period was greater than 12%.  Accordingly, each and every Republic RAL, ERC, and ERD facilitated and made by Defendant during the Class Period violated the maximum lawful rate of interest established by Cal. Civ. Code §1916.12-1.  Pursuant to Cal. Civ. Code §1916.12-3, each Plaintiff and Class Member is entitled to damages equal to 1) the amount of the usurious interest exacted by Defendant, and 2) three times the usurious interest exacted by Defendant.

334.    Pursuant to Cal. Civ. Code §1916.12-2, "[n]o person, company, association or corporation shall directly or indirectly take or receive in money ... any greater sum or any greater value for the loan or forbearance of money ... than at the rate of twelve dollars upon one hundred dollars for one year."  Each of the Republic RALs, ERCs, and ERDs facilitated and made by Defendant includes a "loan or forbearance" for the purposes of Cal. Civ. Code §1916.12-2.  The interest rate, properly calculated, for each of the Republic RALs, ERCs, and ERDs facilitated and made by Defendant during the Class Period was greater than 12%.  Accordingly, each and every Republic RAL, ERC, and ERD facilitated and made by Defendant during the Class Period violated Cal. Civ. Code §1916.12-2.  For each violation set forth herein, Defendant is liable under Cal. Civ. Code §1916.12-2, establishing that the agreement to pay interest is void.

### D.    FLORIDA.

### 1.    First Cause of Action:  Violations of Consumer Protection Statutes.

335.    Plaintiffs incorporate by reference each of the foregoing allegations.

80

336.    Plaintiffs and each member of the Classes are "consumers" within the meaning of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").

337.    Pursuant to FDUTPA, unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful.

338.    Throughout the Class Period, Defendant, in the course of trade and commerce, has engaged and continues to engage in unconscionable, unfair, and/or deceptive acts or practices harming Plaintiffs and the Classes, as described herein.  Defendant violated FDUTPA by not accurately disclosing the finance charge for each RAL product purchased by a Class Member within the Class Period.  For each ERC or ERD, Defendant failed to disclose any interest rate or finance charge.  For each Republic RAL, Defendant failed to accurately disclose the interest rate, as it did not include the Tax Refund Administration Fee as part of the finance charge.  Each of these acts constitutes unconscionable, unfair, and/or deceptive acts or practices harming Plaintiffs and the Classes in violation of FDUTPA.

339.    In addition to protecting individuals from unfair competition and/or deceptive trade practices, FDUTPA has an additional goal of making each state's consumer protection and enforcement consistent with the established policies of federal law relating to consumer protection.

340.    The federal Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601-1666j, and its implementing Regulation Z, 12 C.F.R. Part 226, are laws and regulations proscribing unfair, deceptive, or unconscionable acts or practices, and a violation thereof is a violation of FDUTPA.

341.    By violating TILA in the manner described in Section VI of this Complaint, Defendant violated laws and regulations proscribing unfair, deceptive, or unconscionable acts or practices, therefore violating FDUTPA.

342.    In addition, by violating Florida's usury laws as described in the Second Cause of Action of this Complaint, Defendant violated laws and regulations proscribing unfair, deceptive, or unconscionable acts or practices, therefore violating FDUTPA.

343.    As a direct and proximate result of the aforementioned acts, Defendant unfairly and improperly received monies and continues to hold the monies belonging to Plaintiffs.

344.    The harm to Plaintiffs outweighs the utility of Defendant's policies, acts and/or practices, and consequently Defendant's conduct herein constitutes an unlawful business act or practice within the meaning of FDUTPA.

345.    The unfair, deceptive and/or fraudulent business practices of Defendant, as fully described herein, present a continuing threat to members of the public to be misled and/or deceived by Defendant's Refund Products as described herein.

346.    As a direct and proximate result of Defendant's unfair and/or fraudulent conduct alleged herein, Plaintiffs and Class Members have lost money.  Plaintiffs and members of the Class are direct victims of Defendant's unlawful conduct, and each have suffered injury in fact, and have lost money and/or property as a result of Defendant's unfair and deceptive acts and practices.

### 2.    Second Cause of Action:  Violation of Florida Usury Laws.

347.    Plaintiffs incorporate by reference each of the foregoing allegations.

348.    Fla. Stat. § 687.02(1) provides that "[a]ll contracts for the payment of interest upon any loan, advance of money, line of credit, or forbearance to enforce the collection of any debt, or upon any obligation whatever, at a higher rate of interest than the equivalent of 18

percent ... are hereby declared usurious." Each Republic RAL, ERC, and ERD facilitated and made by Defendant during the Class Period is a "contract" for the purposes of Fla. Stat. § 687.02(1). Accordingly, each and every Republic RAL, ERC, and ERD facilitated and made by Defendant during the Class Period violated the maximum lawful rate of interest established by Fla. Stat. § 687.02.

349. Defendant violated Florida's usury laws when it knowingly and intentionally facilitated and made Republic RALs, ERCs, and ERDs with an interest greater than what is allowed by law.

350. Fla. Stat. §687.03(1) provides that:

[i]t shall be usury and unlawful for any person, or for any agent, officer, or other representative of any person, to reserve, charge, or take for any loan, advance of money, line of credit, forbearance to enforce the collection of any sum of money, or other obligation a rate of interest greater than the equivalent of 18 percent per annum simple interest, either directly or indirectly, by way of commission for advances, discounts, or exchange, or by any contract, contrivance, or device whatever whereby the debtor is required or obligated to pay a sum of money greater than the actual principal sum received, together with interest at the rate of the equivalent of 18 percent per annum simple interest.

351. The interest rate, properly calculated, for each Republic RAL, ERC, and ERD facilitated and made by Defendant during the Class Period was greater than 18%, the maximum lawful rate. Defendant knowingly reserved, charged, and took interest over the maximum lawful rate on each Republic RAL, ERC, and ERD that it made and facilitated for Plaintiffs and Class Members.

352. Moreover, §687.03 clearly states that any "contrivance, or device whatever whereby the debtor is required or obligated to pay" a particular rate of interest greater than 18% is a violation of the usury laws of Florida. Each Republic RAL, ERC, and ERD that Defendant

facilitated and made for Plaintiffs and Class Members during the Class Period constitutes a contrivance or device for purposes of §687.03.

353.    In addition, Florida courts have long held that devices, contrivances, and schemes used to evade the state's usury laws frustrate the purpose of those laws. *Beacham v. Carr*, 122 Fla. 736, 742 (Fla. 1936). In order to determine if such a transaction is merely a scheme used to avoid usury limitations, "courts have been compelled to look beyond the form of a transaction to its substance, and they have laid it down as an inflexible rule that the mere form is immaterial, but that it is the substance which must be considered. 27 R.C.L. 211 § 12." *Gilbert v. Doris R. Corp.*, 111 So. 2d 682, 684 (Fla. Dist. Ct. App. 3d Dist. 1959). The relationship between Defendant and the banks used to facilitate and make each Republic RAL, ERC, and ERD for Plaintiffs and Class Members during the Class Period was merely a scheme, device, and contrivance created by Defendant in an attempt to circumvent Florida's usury laws.

354.    Pursuant to Fla. Stat. §687.04, because Defendant violated Fla. Stat. §687.03, Plaintiffs and Class Members are entitled to damages equal to 1) the "entire interest so charged, or contracted to be charged or reserved", and 2) twice the amount of interest already paid by Plaintiffs and Class Members.

355.    Additionally, under Fla. Stat. §687.147(1), Plaintiffs and Class Members are entitled to damages equal to 1) "actual damages, but in no case less than the amount paid" by Plaintiffs plus reasonable attorney's fees and costs.

E.    **ILLINOIS.**

1.    **First Cause of Action:  Violation of Illinois Tax Refund Anticipation Loan Disclosure Act (815 ILCS 177/1, *et seq*.).**

356.    Plaintiff incorporates by reference each of the foregoing allegations.

84

357.    The named Plaintiff and all Class Members are "borrowers" for the purposes of the Illinois Tax Refund Anticipation Loan Act ("TRALDA") as defined by 815 ILCS 177/5.

358.    Defendant is a "facilitator" as defined by 815 ILCS 177/5.

359.    The Republic RALs, ERCs, and ERDs facilitated and made by Defendant are RALs as defined by 815 ILCS 177/5.

360.    Defendant violated 815 ILCS 177/10 by failing to disclose on a document separate from the RAL application "the Annual Percentage Rate utilizing a 10-day time period" for each Republic RAL, ERC, and ERD it facilitated and made for a Class Member.  For each ERC and ERD, Defendant failed to disclose any interest rate or finance charge.  For each Republic RAL, Defendant failed to accurately disclose the interest rate, as it did not include the Tax Refund Administration Fee as part of the finance charge.

361.    For each violation set forth herein Defendant is liable under 815 ILCS 177/15 for (a) an amount equal to three times the RAL fee, and (b) reasonable attorney's fees and costs of prosecution.  815 ILCS 177/15.

### 2.    Second Cause of Action:  Violation of the Illinois Uniform Deceptive Trade Practices Act (815 ILCS 510/1, *et seq.*).

362.    Plaintiff incorporates by reference each of the foregoing allegations.

363.    Defendant is a "person" for the purposes of the Illinois Uniform Deceptive Trade Practices Act ("IUDTPA") pursuant to 815 ILCS 510/1.

364.    Pursuant to 815 ILCS 510/2(5), it is unlawful for any person to represent that "goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have."

365.    Pursuant to 815 ILCS 510/2(9), it is unlawful for any person to advertise goods or services "with intent not to sell them as advertised."

366.    Pursuant to 815 ILCS 510/2(12), it is unlawful for any person to engage in any "conduct which similarly creates a likelihood of confusion or misunderstanding."

367.    Each of Defendant's violations of TRALDA set forth in the First Cause of Action is also a violation of the IUDTPA.

368.    In addition, Defendant violated the foregoing sections of the IUDTPA by not accurately disclosing the finance charge for each RAL product purchased by a Class Member within the Class Period.  For each ERC and ERD, Defendant failed to disclose any interest rate or finance charge.  For each Republic RAL, Defendant failed to accurately disclose the interest rate, as it did not include the Tax Refund Administration Fee as part of the finance charge.

369.    In so doing, Defendant acted with intent to sell the foregoing RAL products not as advertised, and instead, sold RAL products with hidden interest rate and finance charge qualities that, as alleged herein, in no way mirrored how they were sold to Plaintiff and members of the Class.  Consequently, there was a great likelihood of confusion and misunderstanding on the part of Plaintiff and Class as to the true nature of the RAL products they purchased from Defendant.

370.    Plaintiff and the Class Members have a cause of action against Defendant pursuant to 815 ILCS 510/3 for injunctive relief and are entitled to recover reasonable attorney's fees and costs for each willful violation of the IUDTPA.

### 3.    Third Cause of Action:  Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1, *et seq*.).

371.    Plaintiff incorporates by reference each of the foregoing allegations.

372.    Plaintiff and the Class Members are consumers within the meaning and coverage of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), and Defendant is a "person" under the Act pursuant to 815 ILCS 505/1, *et seq*.

373.    The ICFA provides in relevant part:

>Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act," approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

815 ILCS 505/2.

374.   Because of the material facts alleged herein, Defendant deceived and continues to deceive Plaintiff and the members of the Class within the meaning of the ICFA.

375.   Defendant's deceptive conduct occurred in the course of trade or commerce.

376.   As set forth herein, by not accurately disclosing the finance charge for each RAL product purchased by Plaintiff or a Class Member within the Class Period, Defendant has intended that Plaintiff and members of the Class rely on the validity of such a charge.

377.   Specifically, for each ERC and ERD, Defendant failed to disclose any interest rate or finance charge. Additionally, for each Republic RAL, Defendant failed to accurately disclose the interest rate, as it did not include the Tax Refund Administration Fee as part of the finance charge. In all such instances, Defendant's omitted and/or concealed facts regarding the true nature of its interest rates and finance charges constitute material facts under the ICFA.

378.   The unfair and deceptive act of Defendant not accurately disclosing the finance charge for each RAL product purchased by a Class Member within the Class Period has directly and proximately caused damages to Plaintiff and the members of the Class.

379.   Moreover, each of Defendant's violations of TRALDA set forth in the First Cause of Action and IUDTPA set forth in the Second Cause of Action constitutes a material violation of the ICFA.

380.     In addition, by violating TILA in the manner described in Section VI of this Complaint, Defendant violated 815 ILCS 505/2.

381.     Accordingly, pursuant to 815 ILCS 505/10a, Plaintiff and the Class Members have a cause of action against Defendant for damages, injunctive relief and to recover attorney's fees and costs.

### 4.     Fourth Cause of Action:  Violation of Illinois Usury Laws.

382.     Plaintiffs incorporate by reference each of the foregoing allegations.

383.     Pursuant to §815 ILCS 205/1, "[t]he rate of interest upon the loan or forbearance of any money ... shall be five dollars ($5) upon one hundred dollars ($100)."  The interest rate, properly calculated, for each of the Republic RALs, ERCs, and ERDs facilitated and made by Defendant during the Class Period was greater than 5%.  Accordingly, each and every Republic RAL, ERC, and ERD facilitated and made by Defendant during the Class Period violated the maximum lawful rate established by §815 ILCS 205/1.  Pursuant to §815 ILCS 205/6, Plaintiff and the Class Members are entitled to damages equal to 1) twice the amount of all interest, discount, or charges paid, and 2) reasonable attorney's fees and court costs.

384.     §815 ILCS 205/4 provides that "in all written contracts it shall be lawful for the parties to stipulate or agree that 9% per annum ... shall be taken and paid upon every $100 of money loaned."  Each Republic RAL, ERC, and ERD facilitated and made by Defendant during the Class Period is a "contract" for the purposes of §815 ILCS 205/4.  The interest rate, properly calculated, for each of the Republic RALs, ERCs, and ERDs facilitated and made by Defendant during the Class Period was greater than 9%.  Accordingly, each and every Republic RAL, ERC, and ERD facilitated and made by Defendant during the Class Period violated the maximum lawful rate established by §815 ILCS 205/4.  Pursuant to §815 ILCS 205/6, Plaintiff and the

Class Members are entitled to damages equal to 1) twice the amount of all interest, discount, or charges paid, and 2) reasonable attorney's fees and court costs.

385.    Pursuant to §815 ILCS 205/5, "[n]o person or corporation shall directly or indirectly accept or receive, in money ... any greater sum or greater value for the loan, forbearance, or discount of any money ... than is expressly authorized by this Act or other laws of this State."  §815 ILCS 205/1 and §815 ILCS 205/4 establish the maximum rate of interest permitted as either 5% or 9%, if there is a written contract.  Each of the Republic RALs, ERCs, and ERDs facilitated and made by Defendant includes a "loan, forbearance, or discount of money" for the purposes of §815 ILCS 205/5.  The interest rate, properly calculated, for each of the Republic RALs, ERCs, and ERDs facilitated and made by Defendant during the Class Period was greater than the maximum interest rate established by §815 ILCS 205/1 and §815 ILCS 205/4, as set forth above.   Accordingly, each and every Republic RAL, ERC, and ERD facilitated and made by Defendant during the Class Period violated §815 ILCS 205/1 and §815 ILCS 205/4.  For each violation set forth herein, Defendant is liable under §815 ILCS 205/6 for 1) twice the amount of all interest, discount, or charges paid, and 2) reasonable attorney's fees and court costs.

F.    **MARYLAND.**

1.    **First Cause of Action:  Violation of Maryland Refund Anticipation Loan and Check Act (MD. Commercial Law Code § 14-3801, *et seq.*).**

386.    Plaintiffs incorporate by reference all other portions and paragraphs of this Complaint as if fully set forth herein at length.  The allegations in this cause of action are brought on behalf of proposed Class Members who received a RAL on or after October 1, 2010 (the effective date of Maryland RAL Act) and are limited to Plaintiffs' allegations on or after that date.

89

387. The named plaintiffs and all proposed Class Members are "consumers" as defined by MD. CODE ANN. COM. LAW § 14-3801(b) (West 2011) because they were solicited for, applied for, and received a RAL.

388. Defendant is a "facilitator" as defined by MD. CODE ANN. COM. LAW § 14-3801(d) (West 2011) because Defendant processed, received, and accepted applications and agreements for RALs, serviced and collected on RALs, and facilitated the making of RALs, and is neither a bank, savings and loan association, or credit union, nor an intermediary that did not deal with the public in making a RAL.

389. The tax refund products facilitated by Defendant are RALs as defined by MD. CODE ANN. COM. LAW § 14-3801(e), (f) (West 2011).

390. Defendant violated MD. CODE ANN. COM. LAW § 14-3806(a)(2) (West 2011) and MD. CODE ANN. COM. LAW §14-3802(1), (2) (West 2011) by receiving a portion of the loan fees and finance charge (including the Tax Refund Administration Fee) on each RAL it facilitated for a Class Member.

391. Defendant violated MD. CODE ANN. COM. LAW § 14-3804 (West 2011); MD. CODE ANN. COM. LAW § 14-3802(1), (2) (West 2011), and MD. CODE ANN. COM. LAW § 14-3806(a)(5) (West 2011) by failing to disclose on a paper form separate from the RAL application in 14-point type face the interest rate "using the guidelines established under the federal Truth in Lending Act" for each RAL it facilitated for a Class Member. For each ERC and ERD Defendant failed to disclose any interest rate or finance charge. For each Republic RAL Defendant failed to accurately disclose the interest rate, as it did not include the Tax Refund Administration Fee as part of the finance charge.

90

392.     Defendant violated MD. CODE ANN. COM. LAW § 14-3804 (West 2011); MD. CODE ANN. COM. LAW § 14-3802(1), (2) (West 2011); and MD. CODE ANN. COM. LAW § 14-3806(a)(5) (West 2011) by failing to disclose on a paper form *separate* from the RAL application in 18-point type face the specified disclosures required by MD. CODE ANN. COM. LAW §§ 14-3804(a)(4), (c)(4) (West 2011) to each Class Member who received a RAL. The disclosures were not on a form separate from the RAL application. The disclosures were not in 18-point type face. The disclosures did not include all the specific disclosures in the format specified by Maryland's RAL law.

393.     Defendant violated MD. CODE ANN. COM. LAW § 14-3803 (West 2011); MD. CODE ANN. COM. LAW § 14-3802(1), (2) (West 2011); and MD. CODE ANN. COM. LAW § 14-3806(a)(5) (West 2011) by not prominently displaying required information including the interest rate, accurately calculated consistent with the TILA, in each office where Defendant facilitated a RAL for a Class Member.

394.     Each of Defendant's failures to comply with Maryland RAL Law, MD. CODE ANN. COM. LAW § 14-3801, *et seq.* (West 2011), is an unfair or deceptive trade practice within the meaning of the Maryland Consumer Protection Act, MD. CODE ANN. COM. LAW § 14-3807(a) (West 2011), and Defendant is therefore liable for the remedies provided under that Act, including attorney's fees and costs. MD. CODE ANN. COM. LAW § 13-408(b) (West 2011).

395.     In addition to the remedies provided under the Maryland Consumer Protection Act, for each violation set forth herein, Defendant is liable under MD. CODE ANN. COM. LAW § 14-3807(b) (West 2011) for: (1) actual and compensatory damages; (2) $1,000 statutory damages; and (3) reasonable attorney's fees and costs. *Id.*

91

## 2. Second Cause of Action: Violation of the Maryland Consumer Protection Act (MD. Commercial Law Code § 13-301, *et seq.*).

396. Plaintiffs incorporate by reference all other portions and paragraphs of this Complaint as if fully set forth herein at length.

397. Defendant is a "person" for the purposes of the Maryland Consumer Protection Act pursuant to MD. CODE ANN. COM. LAW § 13-101(h) (West 2011).

398. Pursuant to MD. CODE ANN. COM. LAW § 14-3807(a) (West 2011), a facilitator who violates any provision of Maryland's RAL law also violates the Maryland Consumer Protection Act.

399. Additionally, pursuant to MD. CODE ANN. COM. LAW § 13-303(1) (West 2011), it is unlawful for any person to engage in any unfair or deceptive trade practice in the sale, lease, rental, loan, or bailment of any consumer goods, consumer realty, or consumer services. Defendant violated the Maryland Consumer Protection Act by not accurately disclosing the finance charge for each RAL product purchased by a Class Member within the Class Period. For each ERC and ERD, Defendant failed to disclose any interest rate or finance charge. For each Republic RAL, Defendant failed to accurately disclose the interest rate and did not include the Tax Refund Administration Fee as part of the finance charge.

400. Defendant's failure to disclose its fees, accurate interest rates, the true nature and character of its product as a loan, and the alternative options available for obtaining tax refunds, constituted an unfair and deceptive trade practice.

401. In addition, by violating TILA in the manner described in Section VI of this Complaint, Defendant violated laws and regulations proscribing unfair, deceptive, or unconscionable acts or practices, therefore violating the Maryland Consumer Protection Act.

402.     In addition, by violating Maryland's usury laws in the manner described in the Third Cause of Action of this Complaint, Defendant violated laws and regulations proscribing unfair, deceptive, or unconscionable acts or practices, therefore violating the Maryland Consumer Protection Act.

403.     The Maryland Credit Services Businesses Act (MCSBA) applies to tax preparers that facilitate refund anticipation loans.

404.     Under the MCSBA, a credit services business is a person who, with respect to the extension of credit by others, represents that the person can or will, in exchange for payment, obtain an extension of credit for a consumer.  Credit services businesses must obtain licenses from the Commissioner of Financial Regulation.

405.     Defendant assists consumers in obtaining extensions of credit and is compensated for assisting consumers in obtaining a refund anticipation loan from third-party lenders.

406.     The MCSBA prohibits a credit services business from:  (1) receiving payment for referring a customer to a credit grantor who will or may extend credit to the consumer, if the credit is extended on substantially similar terms available to the general public; (2) making, assisting, or advising a consumer to make false statements connected with a credit application; (3) making or using false or misleading representations in offering or selling its services; (4) engaging in an act, practice, or course of business that operates as a fraud or deception in connection with offering or selling its services; (5) accepting payment before rendering full and complete performance of the contracted services; (6) creating or assisting a consumer in creating a new consumer credit report by obtaining and using a different name, address, telephone number, Social Security number, or employer tax identification number; or (7) assisting a

consumer in obtaining an extension of credit at an interest rate which, except for federal preemption, would be prohibited under the State's consumer credit provisions.

407.    A violation of the MCSBA is an unfair or deceptive trade practice under the Maryland Consumer Protection Act, subject to the Maryland Consumer Protection Act's civil penalties.

408.    As a direct and proximate result of the aforementioned acts, Defendant unfairly and improperly received monies and continues to hold the monies belonging to Plaintiff.

409.    The harm to Plaintiffs outweighs the utility of Defendant's policies, acts and/or practices, and consequently Defendant's conduct herein constitutes an unfair or deceptive trade practice within the meaning of Maryland Consumer Protection Act.

410.    The unfair, deceptive and/or fraudulent business practices of Defendant, as fully described herein, present a continuing threat to members of the public to be misled and/or deceived by Defendant's RAL products as described herein.

411.    As a direct and proximate result of Defendant's unfair and/or fraudulent conduct alleged herein, Plaintiffs and proposed Class Members are direct victims of Defendant's unlawful conduct who have suffered injury in fact and lost money and/or property as a result of Defendant's unfair and deceptive acts and Practices.

### 3.    Third Cause of Action:  Violation of Maryland Usury Laws.

412.    Plaintiffs incorporate by reference each of the foregoing allegations.

413.    MD. CODE ANN. COM. LAW §12-102 (West 2011) provides that "a person may not charge interest in excess of an effective rate of simple interest of 6 percent per annum on the unpaid principal balance of a loan."  Defendant is a "person" for purposes of MD. CODE ANN. COM. LAW §12-102 (West 2011) as defined by MD. CODE ANN. COM. LAW §12-101(g) (West 2011).  Accordingly, each Republic RAL, ERC, and ERD facilitated and made by Defendant

94

during the Class Period violated the maximum lawful rate of interest, properly calculated, established by MD. CODE ANN. COM. LAW §12-102 (West 2011).

414.     As stated in MD. CODE ANN. COM. LAW §12-103(a)(1) (West 2011), if a written agreement exists, then "a lender may charge interest at an effective rate of simple interest not in excess of 8 percent per year ..." For purposes of MD. CODE ANN. COM. LAW §12-103(a)(1) (West 2011), Defendant is a "lender" as defined by MD. CODE ANN. COM. LAW §12-101(f) (West 2011).   Accordingly, each Republic RAL, ERC, and ERD facilitated and made by Defendant during the Class Period violated the maximum lawful rate of interest, properly calculated, established by MD. CODE ANN. COM. LAW §12-103(a)(1) (West 2011).

415.     MD. CODE ANN. COM. LAW §12-103(a)(3) (West 2011) provides that if a written agreement exists and "is secured by the pledge of collateral which is other than a savings account or if such loan is unsecured, the lender may charge rate of interest not in excess of 18 percent" and if the loan was made after July 1, 1982, then a "lender may charge an effective rate of simple interest not in excess of 24 percent per year on the unpaid principal balance."   For purposes of MD. CODE ANN. COM. LAW §12-103(a)(3) (West 2011), Defendant is a "lender" as defined by MD. CODE ANN. COM. LAW §12-101(f) (West 2011).   The interest rate, properly calculated, for each of the Republic RALs, ERCs, and ERDs facilitated and made by Defendant during the Class Period violated the maximum lawful rate of interest established by MD. CODE ANN. COM. LAW §12-103(a)(3) (West 2011).

416.     When making and facilitating Republic RALs, ERCs, and ERDs, Defendant is required to "furnish to the borrower a written statement which sets forth:  (i) the total principal amount and the total amount of finance charge as defined in the federal Truth in Lending Act ...; (ii) The annual effective rate of simple interest charged, stated in percentage calculated to the

nearest 0.2 percent ...;" and "(iii) The itemized amount of payments in addition to interest payable to the lender in connection with the loan at the time the loan is made, stated in dollars," as mandated by MD. CODE ANN. COM. LAW §12-106(b)(1) (West 2011). Defendant violated MD. CODE ANN. COM. LAW §12-106(b)(1) (West 2011) by providing inaccurate disclosures for its Republic RALs and by providing no disclosures for its ERCs and ERDs.

417.    Pursuant to MD. CODE ANN. COM. LAW §12-108(a) (West 2011), "a lender may not charge a borrower or any other person any point or fraction of a point." A "point" as defined by MD. CODE ANN. COM. LAW §12-101(h) (West 2011) "means a fee, premium, bonus, loan origination fee, service charge, or any other charge ... charged by the lender at or before the time the loan is made as additional compensation for the loan." For purposes of MD. CODE ANN. COM. LAW §12-108(a) (West 2011), Defendant's Tax Refund Administration Fees are considered "points" as defined by MD. CODE ANN. COM. LAW §12-101(h) (West 2011). Defendant violated MD. CODE ANN. COM. LAW §12-108(a) (West 2011) by charging Plaintiffs and Class Members "points" in conjunction with its Republic RALs, ERCs, and ERDs.

418.    Defendant violated Maryland usury laws for each ERC and ERD it issued within the last six months pursuant to MD. CODE ANN. COM. LAW §12-111 (West 2011).

419.    For each ERC and ERD issued within the last six months, Plaintiffs and Class Members are entitled to damages equal to the greater of either 1) three times the amount of interest and charges collected in excess of the interest authorized by Maryland usury laws, or 2) $500. MD. CODE ANN. COM. LAW §12-114(a)(1) (West 2011).

## G.    MINNESOTA.

### 1.    First Cause of Action:  Violation of the Minnesota Refund Anticipation Loan Laws (Minn. Stat. § 270c.445, *et seq.*).

420.    Plaintiffs incorporate by reference each of the foregoing allegations.

421.    The allegations in this cause of action are brought on behalf of Class Members who received a Republic RAL, ERC, or ERD facilitated by Defendant.

422.    The named plaintiffs and all Class Members are "clients" as defined by Minn. Stat. § 270C.445, subd 2(c).

423.    Defendant is a "tax preparer" as defined by Minn. Stat. § 270C.445, subd 2(h)(i).

*424.*    The Republic RALs, ERCs, and ERDs facilitated by Defendant are RALs as defined by Minn. Stat. § 270C.445, subd 2(g).

425.    Defendant violated Minn. Stat. § 270C.445, subd 3a(a) by inserting into each RAL facilitation agreement a provision that arranges for a deduction from the RAL for a loan fee for each Republic RAL it facilitated for a Class Member.

426.    Defendant violated Minn. Stat. § 270C.445, subd 4a(2)(i) by failing to disclose, on a document separate from the loan materials, "[t]he annual percentage rate (APR), based on the estimated payment period" of the loan for each Republic RAL, ERC, and ERD it facilitated for a Class Member.  For each ERC and ERD, Defendant failed to disclose any interest rate or finance charge.  For each Republic RAL, Defendant failed to accurately disclose the interest rate, as it did not include the Tax Refund Administration Fee as part of the finance charge.

427.    Defendant violated Minn. Stat. § 270.445, subd 3a(b) by failing to provide a separate written notice stating that arbitration was the exclusive means of dispute resolution, that Defendant's clients had the right to opt out of arbitration within thirty days, and that the arbitration clause would not apply to violations of the Minnesota RAL laws, notwithstanding that Defendant's ERC and ERD facilitation agreements and Republic RAL facilitation agreements contained mandatory arbitration clauses.

428.     Defendant violated Minn. Stat. § 270C.445, subd. 3 and the standards of conduct required for tax preparers.

429.     For each violation set forth herein, Defendant is liable under Minn. Stat. § 270C.445, subd 7 for (1) actual damages, (2) incidental and consequential damages, (3) statutory damages of twice the sum of the tax preparation fees charged to the client and all interest and fees for the refund anticipation loans it facilitated, (4) reasonable attorney's fees, (5) court costs, and (6) any other equitable relief this Court considers appropriate.

**2.     Second Cause of Action:  Violation of Unlawful Trade Practices Act (Minn. Stat. § 325D.09, *et seq.*).**

430.     Plaintiffs incorporate by reference each of the foregoing allegations.

431.     Pursuant to Minn. Stat. § 270C.445 Subd. 7(a), any violation of the Minnesota RAL laws is an unfair, deceptive, and unlawful trade practice within the meaning of Minn. Stat. § 8.31, and any action for violations of the Minnesota RAL laws is in the public interest.

432.     Defendant is a "person" for the purposes of the Unlawful Trade Practices Act ("UTPA"), pursuant to Minn. Stat. §325D.10(a).

433.     Defendant's sales of refund anticipation loans are "sales of merchandise at retail" for the purposes of the purposes of the UTPA.  Minn. Stat. §325D.10(d).

434.     Pursuant to Minn. Stat. § 325D.12(2), it is unlawful when, in connection with the sale of merchandise at retail, any person misrepresents the true nature of such sale.

435.     Each of Defendant's violations of the Minnesota RAL laws set forth above in the First Cause of Action is also a violation of the UTPA.

436.     In addition, Defendant violated the UTPA, including Minn. Stat. § 325D.12(2), by not accurately disclosing the finance charge for each RAL product purchased by a Class Member within the Class Period.  For each ERC and ERD, Defendant failed to disclose any interest rate

98

or finance charge. For each Republic RAL Defendant failed to accurately disclose the interest rate, as it did not include the Tax Refund Administration Fee as part of the finance charge.

437. In addition, by violating TILA in the manner described in Section VI of this Complaint, Defendant violated laws and regulations proscribing unfair, deceptive, or unconscionable acts or practices, therefore violating the UTPA.

438. In addition, by violating Minnesota's usury laws in the manner described in Fourth Cause of Action of this Complaint, Defendant violated laws and regulations proscribing unfair, deceptive, or unconscionable acts or practices, therefore violating the UTPA.

439. Plaintiffs and the Class Members have a cause of action against Defendant pursuant to Minn. Stat. § 325D.12(2), and Minn. Stat.§ 8.31 Subd. 3a to recover damages as well as reasonable attorney's fees and costs.

### 3. Third Cause of Action: Violation of the Uniform Deceptive Trade Practices Act (Minn. Stat. § 325D.43, *et seq.*).

440. Plaintiffs incorporate by reference each of the foregoing allegations.

441. Pursuant to Minn. Stat. § 325D.44, a corporation violates the UDTPA when it "represents that . . . services have . . . characteristics . . . that they do not have," or "engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding." Minn. Stat. § 325D.44, subd 1(5) & (13).

442. Each of Defendant's violations of the Minnesota RAL laws set forth above in the First and Second Causes of Action is also a violation of the UDTPA.

443. In addition, Defendant violated the UDTPA, Minn. Stat. § 325D.43, *et seq.* by not accurately disclosing the finance charge for each RAL product purchased by a Class Member within the Class Period. For each ERC and ERD, Defendant failed to disclose any interest rate

or finance charge. For each Republic RAL Defendant failed to accurately disclose the interest rate, as it did not include the Tax Refund Administration Fee as part of the finance charge.

444.    In addition, by violating TILA in the manner described in Section VI of this Complaint, Defendant violated laws and regulations proscribing unfair, deceptive, or unconscionable acts or practices, therefore violating the UDTPA.

445.    In addition, by violating Minnesota's usury laws in the manner described in the Fourth Cause of Action of this Complaint, Defendant violated laws and regulations proscribing unfair, deceptive, or unconscionable acts or practices, therefore violating the UDTPA.

446.    Plaintiffs and the Class Members have a cause of action against Defendant pursuant to Minn. Stat. § 325F.69 to enjoin these deceptive practices by Defendant as described in this Complaint.

### 4.    Fourth Cause of Action:  Violation of Minnesota Usury Laws.

447.    Plaintiffs incorporate by reference each of the foregoing allegations.

448.    Minn. Stat. §334.01 provides that "no person shall directly or indirectly take or receive in money, goods, or things in action, or in any other way, any greater sum, or any greater value, for the loan or forbearance of money, goods, or things in action, than $8 on $100 for one year."  The interest rate, properly calculated, for each of the Republic RALs, ERCs, and ERDs facilitated and made by Defendant during the Class Period was greater than 8%.  Accordingly, each and every Republic RAL, ERC, and ERD facilitated and made by Defendant during the Class Period violated the maximum lawful rate of interest established by Minn. Stat. §334.01.

449.    Defendant loaned money to Plaintiff that was absolutely repayable at an amount of interest greater than allowed by Minnesota law.  Plaintiffs were harmed when they paid the excessive interest rates and fees on these loans.

450.     Pursuant to Minn. Stat. §334.02 each Plaintiff and Class Member is entitled to the "full amount of interest or premium so paid, with costs."   Additionally, the Republic RALs, ERCs, and ERDs, as well as the Application Agreements, facilitated and made by Defendant are void due to their usurious nature as proscribed in Minn. Stat. §334.03.

**H.     NEW YORK.**

**1.     First Cause of Action:  Violation of N.Y. CLS Tax § 32 (On Behalf of the New York State Class).**

451.     Plaintiffs incorporate by reference each of the foregoing allegations.

452.     The allegations in this cause are brought on behalf of all Plaintiffs and the members of the New York State Class.

453.     Defendant is a "facilitator" as defined by N.Y. CLS Tax § 32(a)(6).

454.     The Republic RALs, ERCs, and ERDs facilitated by Defendant are RALs as defined by N.Y. Tax Law §§ 32(a)(10)-(11).

455.     Defendant violated N.Y. CLS Tax §32(f)(1)(A) by receiving a portion of the bank's fees and finance charge on each RAL it facilitated for a Class Member.

456.     Defendant violated N.Y. CLS Tax §32(f)(1)(B), prohibiting unfair or deceptive acts or practices in the facilitation of RALs, by failing to make the required written disclosures, on a piece of paper separate from the tax preparation and loan materials, in the requisite font size, detailing the APR and additional fees associated with its RALs.

457.     Defendant also violated N.Y. CLS Tax §32(f)(1)(B), prohibiting unfair or deceptive acts or practices in the facilitation of RALs, by not accurately disclosing the finance charge for each RAL product purchased by a member of the New York State Class within the Class Period.  For each ERC and ERD, Defendant failed to disclose any interest rate or finance

charge.  For each Republic RAL Defendant failed to accurately disclose the interest rate, as it did not include the Tax Refund Administration Fee as part of the finance charge.

458.    For each violation set forth herein, Defendant is liable under N.Y. CLS Tax §32 for statutory damages of $500.  N.Y. CLS Tax § 32(f)(2).

### 2.    <u>Second Cause of Action:  Violation of N.Y. CLS Gen Bus § 372 (On Behalf of the New York State Subclass).</u>

459.    Plaintiffs incorporate by reference each of the foregoing allegations.

460.    The allegations in this cause of action are brought on behalf of Plaintiff Hernandez and members of the New York State Subclass.

461.    Defendant is a "facilitator" as defined by N.Y. CLS Gen Bus § 371(a).

462.    The Republic RALs, ERCs, and ERDs facilitated by Defendant are RALs as defined by N.Y. CLS Gen Bus §§ 371(c)-(d).

463.    Defendant violated N.Y. CLS Gen Bus § 372(e)(2) by failing to disclose on a form separate from the RAL application in 14-point type face the interest rate, expressed as the estimated annual percentage rate (APR) based upon the amount of time that the loan would be outstanding, for each RAL it facilitated for a Class Member.  For each ERC and ERD, Defendant failed to disclose any interest rate or finance charge.  For each Republic RAL, Defendant failed to accurately disclose the interest rate, as it did not include the Tax Refund Administration Fee as part of the finance charge.

464.    Defendant violated N.Y. CLS Gen Bus § 372(d) by failing to provide Class Members with a Consumer's Bill of Rights prior to any discussion of tax preparation or facilitation of a RAL.

465. Defendant violated N.Y. CLS Gen Bus § 372(d) by failing to verbally review with the Class Members the Consumer's Bill of Rights prior to any discussion of tax preparation or facilitation of any of the various RALs.

466. Defendant violated N.Y. CLS Gen Bus § 372(f) by failing to provide the specified, requisite oral disclosures to each Class Member who received a Republic RAL, ERC, and ERD. Defendant failed to adequately orally disclose the interest rate and the fees associated with the RAL.

467. For each violation set forth herein, Defendant is liable under N.Y. CLS Gen Bus § 372 for statutory damages of not less than $250 nor more than $500 for the first violation and for each succeeding violation not less than $500 dollars nor more than $750. N.Y. CLS Gen Bus § 372(g).

**3.    Third Cause of Action:  Violation of New York City Administrative Code §20-739, *et seq*., (On Behalf of the New York City Subclass).**

468. Plaintiffs incorporate by reference each of the foregoing allegations.

469. The allegations in this cause of action are brought on behalf of the members of the New York City Subclass.

470. Defendant is a "tax preparer" as defined by New York City Administrative Code § 20-739.

471. The Republic RALs, ERCs, and ERDs facilitated by Defendant are RALs as defined by New York City Administrative Code § 20-739.

472. Defendant violated New York City Administrative Code § 20-741.1(2) by failing to disclose on a form separate from the RAL application in 14-point type face the interest rate, expressed as the estimated annual percentage rate (APR) based upon the amount of time that the loan would be outstanding, for each RAL it facilitated for a Class Member. For each ERC and

103

ERD, Defendant failed to disclose any interest rate or finance charge. For each Republic RAL, Defendant failed to accurately disclose the interest rate, as it did not include the Tax Refund Administration Fee as part of the finance charge.

473. Defendant violated New York City Administrative Code § 20-740.1(b) by failing to provide a Consumer's Bill of Rights, on a sheet of paper separate from the RAL application and in 14-point type face, calling to the taxpayer's attention the interest rate, expressed as the estimated annual percentage rate (APR) based upon the amount of time that the loan would be outstanding, for each RAL it facilitated for a Class Member. For each ERC and ERD, Defendant failed to disclose any interest rate or finance charge. For each Republic RAL, Defendant failed to accurately disclose the interest rate, as it did not include the Tax Refund Administration Fee as part of the finance charge.

474. For each violation set forth herein Defendant is liable under New York City Administrative Code § 20-743.1 for (a) compensatory damages, (b) injunctive and declaratory relief, (c) attorney's fees and costs, and (d) such other relief as a court may deem appropriate.

**4.**     **Fourth Cause of Action: Violation of New York's Deceptive Trade Practices Laws (NY CLS Gen Bus § 349, *et seq.*,) (On Behalf of New York State Class).**

475. Plaintiffs incorporate by reference each of the foregoing allegations.

476. The allegations in this cause of action are brought on behalf of all Plaintiffs and members of the New York State Class.

477. Pursuant to NY CLS Gen Bus § 349, it is unlawful for any person to engage in any "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service" in the state of New York.

478. Each of Defendant's violations of the New York State RAL law and New York City RAL set forth above is also a violation NY CLS Gen Bus § 349.

479.  In addition, Defendant violated NY CLS Gen Bus § 349 by not accurately disclosing the finance charge for each RAL product purchased by a member of the New York State Class within the Class Period.  For each ERC and ERD, Defendant failed to disclose any interest rate or finance charge.  For each Republic RAL, Defendant failed to accurately disclose the interest rate, as it did not include the Tax Refund Administration Fee as part of the finance charge.

480.  In addition, by violating TILA in the manner described in Section VI of this Complaint, Defendant violated laws and regulations proscribing "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service," therefore, violating NY CLS Gen Bus § 349.

481.  In addition, by violating New York's usury laws in the manner described in the Fifth Cause of Action of this Complaint, Defendant violated laws and regulations proscribing "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service," therefore violating NY CLS Gen Bus § 349.

482.  Plaintiffs and the Class Members have a cause of action against Defendant pursuant to NY CLS Gen Bus § 349(h) to recover, for each violation, (a) actual damages or $50, whichever is greater; (b) treble damages, at the court's discretion, not to exceed $1,000; and (c) reasonable attorney's fees and costs.

### 5.  Fifth Cause of Action:  Violation of New York Usury Laws.

483.  Plaintiffs incorporate by reference each of the foregoing allegations.

484.  NY CLS Gen Oblig §5-501 provides that the "rate of interest ... shall be six per centum per annum unless a different rate is prescribed in section fourteen-a of the banking law." Indeed, Section 14-a of the banking law does set a new rate:  "The maximum rate of interest ... shall be sixteen per centum per annum."  NY CLS Bank §14-a(1).  The interest rate, properly

105

calculated, for each of the Republic RALs, ERCs, and ERDs facilitated and made during the Class Period was greater than 16%. Accordingly, each and every Republic RAL, ERC, and ERD facilitated and made by Defendant during the Class Period violated the maximum lawful rate of interest established by NY CLS Gen Oblig §5-501 and NY CLS Bank §14-a(1). Pursuant to NY CLS Gen Oblig §5-513, each Class Member is entitled to damages equal to the amount of money paid above the lawful rate of interest.

485.    Additionally, the Republic RALs, ERCs, and ERDs facilitated and made by Defendant during the Class Period are void pursuant to NY CLS Gen Oblig §5-511(1).

**I.    NORTH CAROLINA.**

**1.    First Cause of Action:  Violation of North Carolina Refund Anticipation Loan Act (N.C. Gen. Stat. § 53-245, *et seq.*).**

486.    Plaintiff incorporates by reference each of the foregoing allegations.

487.    The named plaintiff and all Class Members are "debtors" as defined by N.C. Gen. Stat. § 53-246(5).

488.    Defendant is a "facilitator" as defined by N.C. Gen. Stat. § 53-246(6).

489.    The Republic RALs, ERCs, and ERDs facilitated by Defendant are RALs as defined by N.C. Gen. Stat. § 53-246(8).

490.    Defendant violated N.C. Gen. Stat. § 53-249(d) and N.C. Gen. Stat. §§ 53-250(1) by failing to disclose on a document separate from the RAL application the specified disclosures required by N.C. Gen. Stat. § 53-249(d) for each RAL it facilitated for a Class Member.  For each ERC and ERD, Defendant failed to disclose any interest rate or finance charge.  For each Republic RAL, Defendant failed to accurately disclose the interest rate, as it did not include the Tax Refund Administration Fee as part of the finance charge.

106

491.    Defendant violated N.C. Gen. Stat. § 53-249(d) and N.C. Gen. Stat. §§ 53-250(1) by failing to disclose on a form *separate* from the RAL application the specified disclosures required by N.C. Gen. Stat. § 53-249(d) to each Class Member who received a Republic RAL, ERC, and ERD.  The disclosures were not on a form separate from the RAL application.  The disclosures did not include all the specific disclosures in the format specified by NC RALA.

492.    Defendant violated N.C. Gen. Stat. § 53-249(c) and N.C. Gen. Stat. §§ 53-250(1) by not prominently posting the interest rate, accurately calculated consistent with TILA, in each office where Defendant facilitated a Republic RAL, ERC, and ERD for a Class Member.

493.    For each violation of N.C. Gen. Stat. § 53-250 set forth herein Defendant is liable under N.C. Gen. Stat. § 53-251(c) for (a) damages of three times the amount of the refund anticipation loan fee, (b) any other, unauthorized charges related to the RAL, and (c) reasonable attorney's fees.  N.C. Gen. Stat. § 53-251(c).

###       2.    Second Cause of Action:  Violation of North Carolina's Consumer Protection Laws.

494.    Plaintiff incorporates by reference each of the foregoing allegations.

495.    Plaintiff and the members of the proposed Classes are "consumers" within the meaning of the North Carolina consumer protection laws.

496.    Pursuant to the North Carolina consumer protection statute unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful.

497.    Defendant, in the course of trade and commerce, has engaged and continues to engage in unconscionable, unfair, and/or deceptive acts or practices harming Plaintiff and the members of the proposed Classes, as described herein.

498.    Each of Defendant's violations of the North Carolina RAL laws set forth above in the First Cause of Action is also a violation of the North Carolina consumer protection statutes.

499.    In addition, Defendant violated the North Carolina consumer protection statutes by not accurately disclosing the finance charge for each RAL product purchased by a Class Member within the Class Period.  For each ERC and ERD, Defendant failed to disclose any interest rate or finance charge.  For each Republic RAL, Defendant failed to accurately disclose the interest rate, as it did not include the Tax Refund Administration Fee as part of the finance charge.  Each of these acts constitutes unconscionable, unfair, and/or deceptive acts or practices harming Plaintiffs and the Classes in violation of the North Carolina consumer protection statutes.

500.    In addition, by violating TILA in the manner described in Section VI of this Complaint, Defendant violated laws and regulations proscribing unfair, deceptive, or unconscionable acts or practices, therefore violating the North Carolina consumer protection statutes.

501.    In addition, by violating North Carolina's usury laws in the manner described in the Third Cause of Action of this Complaint, Defendant violated laws and regulations proscribing unfair, deceptive, or unconscionable acts or practices, therefore violating the North Carolina consumer protection statutes.

502.    As a direct and proximate result of the aforementioned acts, Defendant unfairly and improperly received monies and continues to hold the monies belonging to Plaintiff and members of the proposed Classes.

503.    The harm to Plaintiff and members of the proposed Classes outweigh the utility of Defendant's policies, acts and/or practices, and consequently Defendant's conduct herein

108

constitutes an unlawful business act or practice within the meaning of the North Carolina consumer protection statutes.

504.    The unfair, deceptive and/or fraudulent business practices of Defendant, as fully described herein, present a continuing threat to members of the public to be misled and/or deceived by Defendant's RAL products as described herein.

505.    As a direct and proximate result of Defendant's unfair and/or fraudulent conduct alleged herein, Plaintiff and members of the proposed Classes have lost money.  Plaintiff and members of the proposed Classes are direct victims of Defendant's unlawful conduct, and each have suffered injury in fact, and have lost money and/or property as a result of Defendant's unfair and deceptive acts and practices.

### 3.    Third Cause of Action:  Violation of North Carolina Usury Laws.

506.    Plaintiffs incorporate by reference each of the foregoing allegations.

507.    N.C. Gen. Stat. §24-1 allows for a legal rate of interest of 8%.  The interest rate, properly calculated, for each of the Republic RALs, ERCs, and ERDs facilitated and made by Defendant during the Class Period was greater than 8%.  Accordingly, each and every Republic RAL, ERC, and ERD facilitated and made by Defendant during the Class Period violated the maximum lawful rate of interest established by N.C. Gen. Stat. §24-1.  Pursuant to N.C. Gen. Stat. §24-2, each Plaintiff and Class Member is entitled to damages equal to 1) the forfeiture of the entire interest, and 2) twice the amount of interest paid.

508.    N.C. Gen. Stat. §24-1.1(c) provides that "the Commissioner of Banks will announce and publish the maximum interest of permitted" by the fifteenth of each month. During the Class Period, the Commissioner of Banks set the maximum rate of interest at 16%. *See Maximum Rate of Interest Permitted on Certain Loans*, http://www.nccob.gov/Public/docs/ News/Pub%20And%20Research/Maximum_Rate_of_Interest.pdf.  Accordingly, each and every

Republic RAL, ERC, and ERD facilitated and made by Defendant during the Class Period violated the maximum lawful rate of interest established by N.C. Gen. Stat. §24-1.1. Pursuant to N.C. Gen. Stat. §24-2, each Plaintiff and Class Member is entitled to damages equal to 1) the forfeiture of the entire interest, and 2) twice the amount of interest paid.

### J. WISCONSIN.

#### 1. First Cause of Action: Violation of Wisconsin Refund Anticipation Loan Laws (Wis. Stat. §422.310).

509. Plaintiff incorporates by reference each of the foregoing allegations.

510. Plaintiff and all Class Members are "customers" as defined by Wis. Stat. §421.301(17).

511. Defendant is a "creditor" as defined by Wis. Stat.§421.301(16).

512. The Republic RALs, ERCs, and ERDs facilitated by Defendant are RALs as defined by Wis. Stat. §421.301(37m).

513. Defendant violated Wis. Stat. §422.310(2) by receiving a portion of the loan fees and finance charge on each Republic RAL, ERC, and ERD it facilitated for a Class Member.

514. Defendant violated Wis. Stat. §422.310(1)(h) by failing to disclose the interest rate as calculated under the federal Truth in Lending Act, 15 U.S.C. §1601, *et seq*. for each Republic RAL, ERC, and ERD it facilitated for a Class Member. For each ERC and ERD, Defendant failed to disclose any interest rate or finance charge. For each Republic RAL, Defendant failed to accurately disclose the interest rate, as it did not include the Tax Refund Administration Fee as part of the finance charge.

515. For each violation set forth herein Defendant is liable under Wis. Stat. §425.304 "in an amount equal to the greater of: (1) Twice the amount of the finance charge in connection with the transaction, except that the liability under this subsection shall not be less than 100 nor

greater than 1,000; or (2) The actual damages, including any incidental and consequential damages, sustained by the customer by reason of the violation." Wis. Stat. §425.304.

**2. Second Cause of Action: Violation of the Wisconsin Consumer Act.**

516. Plaintiff incorporates by reference each of the foregoing allegations.

517. Defendant is a "creditor" for the purposes of the Wisconsin RAL laws and Wisconsin Consumer Act pursuant to Wis. Stat. §421.301(16).

518. Pursuant to Wis. Stat. §422.310(3), a creditor who violates any provision of the Wisconsin RAL laws also violates the Wisconsin Consumer Act. Each of Defendant's violations of the Wisconsin RAL laws set forth above is also a violation of the Wisconsin Consumer Act.

519. Pursuant to Wis. Stat. §421.102(2)(b), it is unlawful for any merchant to engage in unfair, deceptive, false, misleading and unconscionable practices. Defendant violated Wis. Stat. §421.102(2)(b) by not accurately disclosing the finance charge for each RAL product purchased by a Class Member within the Class Period. For each Republic RAL, Defendant failed to accurately disclose the interest rate, as it did not include the Tax Refund Administration Fee as part of the finance charge. Each of these acts constitutes a violation of Wis. Stat. §421.102(2)(b).

520. In addition, by violating TILA in the manner described in Section VI of this Complaint, Defendant violated laws and regulations proscribing unfair, deceptive, or unconscionable acts or practices, therefore violating Wis. Stat. §421.102(2)(b).

**3. Third Cause of Action: Fraudulent Representations and Deceptive Trade Practices in Violation of §100.18(1), Wis. Stats.**

521. Plaintiff incorporates by reference each of the foregoing allegations.

522. Pursuant to Wis. Stat. §100.18(1), it is unlawful for any person, firm, corporation or association, or agent or employee thereof, to make untrue, deceptive or misleading

representations with regard to the services they advertise, with the intent of inducing the public to purchase services, among other things.

523. Each of Defendant's violations of the Wisconsin RAL laws set forth above is also a violation of Wis. Stat. §100.18(1).

524. In addition, Defendant violated Wis. Stat. §100.18(1) by not accurately disclosing the finance charge for each RAL product purchased by a Class Member within the Class Period. For each ERC and ERD, Defendant failed to disclose any interest rate or finance charge. For each Republic RAL, Defendant failed to accurately disclose the interest rate, as it did not include the Tax Refund Administration Fee as part of the finance charge. Each of these acts constitutes a violation of Wis. Stat. §100.18(1) in that Defendant, with the intent to induce Wisconsin consumers to purchase loan products and tax preparation services, has made and disseminated untrue and misleading statements, which it knew or reasonably should have known were untrue or misleading at the time the statements were made.

525. In addition, by violating TILA in the manner described in Section VI of this Complaint, Defendant violated laws and regulations proscribing unfair, deceptive, or unconscionable acts or practices, therefore violating Wis. Stat. §100.18(1).

526. After, in reliance on, and due to Defendant's untrue and misleading statements, which Plaintiff reasonably believed to be true and Plaintiff and the Class Members were reasonably likely to believe to be true, Plaintiff and the Class Members were induced to purchase Defendant's RAL products.

527. Plaintiff and the Class Members would not have purchased Defendant's RAL products altogether, or would have paid less for these products, had Defendant not misrepresented the interest rate, finance charge and Tax Refund Administration Fee.

528.     Plaintiff and the Class Members have been damaged as a result of Defendant's unfair, unlawful and deceptive conduct alleged herein, and have a cause of action against Defendant to recover damages as well as reasonable attorney's fees and costs.

### K.     MULTI-STATE CLASS CLAIMS.

529.     Plaintiff incorporates by reference each of the foregoing allegations.

530.     Under the consumer protection statutes[10] for each of the Multi-States, it is unlawful for any person to engage in any unconscionable, false, or deceptive act or practice in business, commerce or trade.    Throughout the Class Period, Defendant has engaged and continues to engage in unconscionable, unfair, and/or deceptive acts or practices harming Plaintiffs and the Classes, as described herein.    Defendant violated each of the consumer protection statutes by not accurately disclosing the finance charge for each RAL product purchased by a Class Member within the Class Period.    For each ERC and ERD, Defendant failed to disclose any interest rate or finance charge.    For each Republic RAL, Defendant failed to accurately disclose the interest rate, as it did not include the Tax Refund Administration Fee as part of the finance charge.    Each of these acts constitutes unconscionable, unfair, and/or deceptive acts or practices harming Plaintiffs and the Classes in violation of each of the consumer protection statutes.

---

[10]The relevant statutes are as follows: Alas. Stat. §45.50.471 *et seq.*, A.R.S. § 44-1521 *et seq.*, C.R.S. 6-1-101 *et seq.*, Conn. Gen. Stat. § 42-110(a) *et seq.*, 6 Del. C. § 2501 *et seq.*, D.C. Code Ann. §28-3901 *et seq.*, HRS § 481A-1 *et seq.*, Idaho Code § 48-601 *et seq.*,  Burns Ind. Code Ann. § 24-5-0.5-1 *et seq.*, K.S.A. § 50-623 *et seq.*, KRS § 367.110 *et seq.*, La.R.S. § 51:1405 *et seq.*, 5 M.R.S. § 205-A *et seq.*, ALM GL ch. 93A, § 1 *et seq.*, MCLS § 445.901 *et seq.*, R.S.Mo. *et seq.*, R.R.S. Neb. § 87-301 *et seq.*, Nev. Rev. Stat. Ann. § 598.0903 *et seq.*, N.H. Rev. Stat. Ann. § 358-A:1 *et seq.*, N.J. Stat. § 56:8-1 *et seq.*, N.M. Stat. Ann. § 57-12-1 *et seq.*, N.D. Cent. Code, § 51-10-01 *et seq.*, ORC Ann. 4165.01 *et seq.*; ORC Ann. 1345.01 *et seq.*, 15 Okl. St. § 751 *et seq.*, ORS § 646.605 *et seq.*, 73 P.S. § 201-1 *et seq.*, R.I. Gen. Laws § 6-13.1-1 *et seq.*, S.D. Codified Laws § 37-24-1 *et seq.*, Tex. Bus. & Com. Code § 17.41 *et seq.*, Utah Code Ann. § 13-11-1 *et seq.*, 9 V.S.A. § 2451 *et seq.*, Rev. Code Wash. (ARCW) § 19.86.010 *et seq.*, W. Va. Code § 46A-6-101 *et seq.*,Wyo. Stat. § 40-12-101 *et seq.*

531.    In addition to protecting individuals from unfair competition and/or deceptive trade practices, each of the consumer protection statutes has an additional goal of making each state's consumer protection and enforcement consistent with the established policies of federal law relating to consumer protection.

532.    The federal Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601-1666j, and its implementing Regulation Z, 12 C.F.R. Part 226, are laws and regulations proscribing unfair, deceptive, or unconscionable acts or practices, and a violation thereof is a violation of each of the consumer protection statutes

533.    By violating TILA in the manner described in Section V of this Complaint, Defendant violated laws and regulations proscribing unfair, deceptive, or unconscionable acts or practices, therefore violating each of the consumer protection statutes.

534.    Plaintiffs and the Class Members have a cause of action against Defendant pursuant to each of the consumer protection statutes to recover damages as well as reasonable attorney's fees and costs.

## IX.    PRAYER FOR RELIEF.

**WHEREFORE**, Plaintiffs seek judgment in favor of themselves and the Classes for the following:

A.    That the Court determine that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure; that Plaintiffs are proper class representatives; and that the best practicable notice of this action be given to members of the Class represented by Plaintiffs;

B.    That judgment be entered against Defendant and in favor of Plaintiffs and the Classes on the Causes of Action in this Complaint, for disgorgement, compensatory damages and

statutory damages under state Refund Anticipation Loan laws and consumer protection statutes

and injunctive relief for the Florida, Illinois, Maryland, New York, and North Carolina Classes;

      C.      That Defendant be permanently enjoined from its unfair, fraudulent and deceitful

activity;

      D.      That judgment be entered imposing interest on damages;

      E.      That judgment be entered imposing litigation costs and attorneys' fees under state

Refund Anticipation Loan laws and consumer protection statutes; and

      F.      For all other and further relief as this Court may deem necessary and appropriate.

Respectfully submitted,

**CARNEY WILLIAMS BATES PULLIAM**
  **& BOWMAN, PLLC**
Darrin L. Williams (ABN 94069)
Hank Bates (ABN 98063)
S. Rebecca Kaufman (ABN 2012071)
11311 Arcade Drive, Suite 200
Little Rock, AR 72212
Tel: (501) 312-8500
Fax: (501) 312-8505

**GOLOMB & HONIK, P.C.**
Kenneth J. Grunfeld (PA Bar No. 84121)
Richard M. Golomb (PA Bar No. 42845)
Ruben Honik (PA Bar No. 33109)
1515 Market Street, Suite 1100
Philadelphia, PA 19102
Telephone: (215) 985-9177
Fax: (215) 985- 4169

**JACKSON & MCGEE, LLP**
Gary Jackson
225 E. Worthington Avenue, Suite 200
Charlotte, NC 28203
Tel: (704) 377-6680
Fax: (704) 377-6690

**ADEMI & O'REILLY LLP**
Guri Ademi (SBN: 1021729)
Shpetim Ademi (SBN: 1026973)
David J. Syrios (SBN: 1045779)
Corey Mather (SBN: 1046210)
3620 East Layton Ave.
Cudahy, Wisconsin 53110
Telephone:     (414) 482-8000
Facsimile:      (414) 482-8001
gademi@ademilaw.com
sademi@ademilaw.com
dsyrios@ademilaw.com
cmather@ademilaw.com


**JANET, JENNER & SUGGS, LLC**
Robert K. Jenner (04165)
Justin A. Browne (29164)
Jason B. Penn (28974)
1777 Reisterstown Road
Baltimore, MD 21208
Tel: (410) 653-3200
Fax: (410) 653-6903
RJenner@MyAdvocates.com
JBrowne@MyAdvocates.com
JPenn@MyAdvocates.com

**GERSOWITZ, LIBO & KOREK, P.C.**
Jeff S. Korek, Esquire, State Bar No.
jkorek@lawyertime.com
111 Broadway, 12th Floor
New York, NY 10006
Tel: (212) 385-4410
Fax: (212) 385-4417

**CAFFERTY FAUCHER LLP**
Jennifer W. Sprengel
Daniel O. Herrera
30 N. LaSalle Street, Suite 3200
Chicago, IL 60602
Tel:  (312) 782-4880
Fax:  (312) 782-4485

116

**KU & MUSSMAN, P.A.**
Brian T. Ku, Esq. (Fla. # 610461)
Louis I. Mussman, Esq. (Fla. # 597155)
M. Ryan Casey, Esq.
12550 Biscayne Blvd., Suite 406
Miami, Florida 33181
Tel:  (305) 891-1322
Fax:  (305) 891-4512
ryan@kumussman.com

**MILSTEIN ADELMAN, LLP**
Gillian L. Wade, State Bar No. 229124
gwade@milsteinadelman.com
M. Isaac Miller, State Bar No. 266459
imiller@milsteinadelman.com
2800 Donald Douglas Loop North
Santa Monica, CA 90405
Telephone:  (310) 396-9600
Fax:          (310) 396-9635

**Robins, Kaplan, Miller & Ciresi L.L.P.**
Kathleen Flynn Peterson (#130382)
Stacey P. Slaughter (#296971)
Matthew R. Veenstra (#0392517)
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402
T: 612-349-8500
F: 612-339-4181

BY:  /s/ Hank Bates
       HANK BATES, ABN 98063

*Counsel for Proposed Plaintiff Class*

## CERTIFICATE OF SERVICE

     I, Hank Bates, an attorney, certify that on June 22, 2012, I filed the foregoing document via the Court's ECF system, which will cause a true and correct copy of the same to be served electronically on all ECF-registered counsel of record.

            /s/ Hank Bates
            Hank Bates